IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INGENIO, FILIALE DE LOTO-QUEBEC, INC.,

Plaintiff,

v.

GAMELOGIC, INC. and SCIENTIFIC GAMES
CORPORATION,

Defendants.

Civil Action No. 04-1532 (KAJ)

## DEFENDANT GAMELOGIC, INC.'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM

I.    INTRODUCTION

Defendant GameLogic, Inc. ("GameLogic") requests leave to file an Amended Answer and Counterclaim asserting state law causes of action against Plaintiff Ingenio, Filiale de Loto-Quebec, Inc. ("Ingenio") for abuse of process and unfair competition. This Motion for Leave to Amend is made pursuant to Federal Rule of Civil Procedure 15(a) and D. Del. LR 15.1. In compliance with the Court's Local Rules, the Amended Answer and Counterclaim, a copy of the Amended Answer and Counterclaim, and a black-lined comparison to the original Answer, are attached as Exs. A, B, and C, respectively.

II.    STATEMENT OF FACTS

A.    Ingenio's Refusal to Pursue its Claims

Ingenio filed suit on December 20, 2004, accusing defendants GameLogic, Inc. and Scientific Games Corporation of willfully infringing United States Patent Nos. 5,569,082 and 5,709,603. Ingenio specifically accuses GameLogic's HomePlay Lottery game of infringing the patents-in-suit. However, Ingenio's patents do not on their face apply to GameLogic's products.

On March 8, 2005, in the hope of resolving this case quickly and

efficiently, GameLogic filed a Motion for Summary Judgment, pointing out that its products clearly do not infringe either of the asserted patents. *See* Docket Nos. 17-20. Two days later, during the Court's March 10, 2005 status conference, Ingenio described the Motion as "premature" and made an oral Rule 56(f) motion to be temporarily relieved of the obligation to respond to the motion pending discovery. The Court granted the motion, while also making clear that it would entertain a request that Ingenio be required to respond to the Motion once it had the opportunity to take discovery. In the seven months since GameLogic filed the Motion, Ingenio has had every chance to take all the discovery it could possibly need. It has done next to nothing.

On March 10, 2005—the same day Ingenio said it needed discovery to respond to the Motion—GameLogic wrote to ask what discovery it wanted. (GameLogic had already been more than forthcoming, producing almost two thousand pages of key documents before filing its Motion for Summary Judgment, and providing a detailed declaration from its Senior Vice President of Technical Operations.) *See* Ex. D hereto. Ingenio never responded. Manning Decl. ¶ 5.

Ingenio has taken no initiative whatsoever in discovery. It did not serve discovery in response to GameLogic's Motion, and to this day has never sought to depose anyone. It quickly became clear to GameLogic that Ingenio was content to let the case hang over GameLogic without actually pursuing its claims. In April, GameLogic therefore served its own discovery. Only then—as a reactive, and defensive, measure— did Ingenio serve any discovery. Although Ingenio served timely written initial disclosures (GameLogic having provided them two weeks early of its own accord), Ingenio then refused to produce its initial disclosure documents in response to a letter requesting them, instead insisting on a "formal" document request (and its attendant delays). Indeed, Ingenio didn't produce a single page until June 3, 2005, when it was forced to do so in response to GameLogic's Rule 34 request. *Id.* ¶ 6.

B.    Ingenio is using this litigation as a competitive weapon.

Ingenio is the plaintiff in this case, but it does not act like it. Instead of pursuing its claims, it has now become clear that Ingenio is using the mere fact of the litigation as a competitive weapon against GameLogic. While Ingenio is perfectly content to sit back and do nothing in the litigation, GameLogic has reason to believe that it is using the existence of the litigation to drive away GameLogic's potential customers. That is an unconscionable abuse of the litigation process.

For example, GameLogic's contract negotiations with the Illinois State Lottery recently fell through because of outside interference, apparently from Ingenio. GameLogic and the Illinois State Lottery had reached a deal in principle, and Illinois provided a contract to GameLogic for execution. *See* Declaration of Dow K. Hardy in Support of GameLogic's Motion for Leave to File Amended Answer and Counterclaims ¶ 2, filed contemporaneously herewith. Then, Illinois suddenly changed its mind and refused to do a deal with GameLogic. *Id.* Illinois' stated reason for pulling out of the deal was that "we were once again made aware of the legal issues between GameLogic and Ingenio surrounding an access code technology patent." Ex. E (also refusing GameLogic's offer of indemnification). The Illinois Lottery therefore decided that it "will not be able to move forward with GameLogic until [its] outstanding legal issues with Ingenio have been resolved." *Id.* GameLogic is informed and believes that Ingenio, either directly or through persons as yet unknown, was responsible for blowing up the Illinois deal, and that it used the mere fact of this litigation—*not* the merits of its patent claims[1]—as the means of doing so. In other words, Ingenio is not using this suit to vindicate whatever patent rights it may or may not have; it is using this suit to gain competitive advantage over GameLogic.

---

[1]    As shown in GameLogic's Motion for Summary Judgment, Ingenio's patent claims are utterly lacking in merit.

C.    GameLogic's Abuse of Process and Unfair Competition
      Counterclaims.

Ingenio's wrongful use of this litigation as a mere marketing tool and competitive weapon is actionable. GameLogic therefore seeks leave to file its proposed Amended Answer and Counterclaims. The Amended Answer differs insubstantially from its previously-filed Answer, while the Counterclaims assert causes of action under Massachusetts law[2] for abuse of process, and violations of Massachusetts General Laws Ch. 93A, Massachusetts' unfair competition law. *See* Ex. A (proposed Amended Answer and Counterclaims) & Ex. C (blackline showing modifications over previously-filed Answer).

A plaintiff may not use litigation for an ulterior motive.[3] The Massachusetts Supreme Court has specifically found that use of process to inhibit a competitor's marketing abilities is an abuse of process. *DataComm Interface, Inc. v. Computerworld, Inc.*, 489 N.E.2d 185 (Mass. 1986) (finding that plaintiff's suit was not aimed at protecting the name of plaintiff's tradeshow as alleged, but rather at preventing defendant from marketing its own tradeshow). The Supreme Court stated, "[t]he fact that [DataComm]'s unfair competition action was instituted at least in part as a marketing tool shows a misuse of process." *Id. See also, e.g., Refuse & Env. Sys. v. Industrial Serv. of America*, 932 F.2d 37 (1st Cir. 1991) (where defendant's potential clients heard of the pending lawsuit and decided not to do business with defendant, the First Circuit upheld

---

[2]    GameLogic is a small, Massachusetts-based start up company, which is incorporated in Delaware. Ingenio is a subsidiary of Loto-Quebec, Inc., a Canadian corporation that is one of the largest gaming companies in the world. All of GameLogic's business operations and employees are located in Massachusetts, and it has been injured in Massachusetts.

[3]    This is true under Massachusetts law, *see above*, as well as the law of Delaware and other states. *See, e.g., Ferguson v. Wesley College, Inc.*, 99C-07-109 WTQ, 2000 WL 706833 (Del. Super. Ct. Mar. 23, 2000) (under Delaware law, an abuse of process claim requires proof of (1) a willful and improper act in the use of process; (2) any form of coercion; and (3) a collateral benefit to the abusing party arising from this coercion) (Ex. I hereto).

the trial court's finding that "[plaintiff] knowingly and intentionally used a baseless

lawsuit to attempt to drive [defendant] out of business") (applying Massachusetts law);

*Adams v. Whitman*, 822 N.E.2d 727, 730 (Mass. App. Ct. 2005) (abuse of process

requires a showing (1) that process was used; (2) for some ulterior purpose that does not

further the process employed; and (3) injury); *DataComm*, 489 N.E.2d at 197

(defendant's commencement of "an action on oath which misstated a fact and was used

as a marketing tool" among the unfair actions that supported a 93A violation); *Medford*

*Co-Operative Bank v. Skerry*, No. 9875, 2004 WL 1853343, *5 (Mass. App. Div. Aug.

12, 2004) (facts constituting an abuse of process may serve as the basis for a 93A claim)

(Ex. H hereto).

III.   THE COURT SHOULD GRANT GAMELOGIC LEAVE TO
       FILE THE AMENDED ANSWER AND COUNTERCLAIMS.

       A.    Leave to Amend is to be liberally granted.

              The Federal Rules of Civil Procedure provide that leave to amend a

pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The

underlying purpose of Rule 15(a) is "to facilitate decision on the merits, rather than on

the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.

1981). As the Supreme Court and the Courts of Appeal repeatedly have held, motions to

amend pleadings should be "liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3rd

Cir. 2004). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (the mandate of Rule

15(a) "is to be heeded"); *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3rd Cir. 1984) ("liberal

amendment philosophy [of Rule 15] limits district court's ability to deny motions to

amend a pleading"); *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3rd Cir. 1984)

(there is a presumption in favor of permitting amendment); *DCD Programs, Ltd. v.*

*Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (the policy favoring amendment "should be

applied with 'extreme liberality'").

In the Third Circuit, denial of a request to amend is proper only where the party's "delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Adams*, 739 F.2d at 864 (internal citations omitted). Despite the universally applied policy of liberal amendment, and the clear Supreme Court and Third Circuit case law described above, Ingenio refuses to stipulate to the proposed amendment. Exs. F & G.[4] Ingenio's refusal is misplaced. There are no grounds here that could justify denying leave to amend.

      1.    There Has Been No Undue Delay.

GameLogic has not unduly delayed bringing its claims against Ingenio. As explained above, it is Ingenio, *not* GameLogic, that has drug its feet throughout this litigation. Even though it is the defendant, GameLogic—and only GameLogic—has taken the initiative in this case. When it became immediately clear that the patents-in-suit do not apply to GameLogic's products, it laid its cards on the table and filed a prompt summary judgment motion. It produced thousands of pages of discovery documents without being asked. And it served discovery in an effort to move the litigation forward when Ingenio refused to do so.

GameLogic has promptly investigated the facts relevant to its Counterclaims. GameLogic obtained evidence of Ingenio's interference in the Illinois Lottery deal just two weeks ago, and it has served discovery seeking additional information. Ex. E & Manning Decl. ¶ 11. Moreover, GameLogic has sought leave to amend within the time frame established by this Court's Scheduling Order. GameLogic has been diligent.

---

[4]    This is yet another example of Ingenio's efforts to avoid the merits. Defendant Scientific Games Corporation does not object to the proposed amendment. Manning Decl. ¶ 9.

2.    GameLogic Has Acted in Good Faith.

GameLogic has no improper motive.  GameLogic's proposed counterclaims are well grounded in fact and law.  It has acted in good faith and with due diligence.  Since the inception of this action, GameLogic has pursued its claims, conducted proper investigation and discovery, and seeks to file the Amended Answer and Counterclaim based on solid, currently-available evidence.  Its actions are proper.  This factor, like the others, weighs heavily in favor of granting GameLogic's motion for leave to amend.

3.    Ingenio Will Not Be Unduly Prejudiced.

Though the Court may disallow a proffered amendment if it would unduly prejudice a party, the party opposing amendment bears the burden of showing prejudice. *Adams*, 739 F.2d at 870-71 (where opposing failed to prove undue delay, district court's denial of leave to amend was improper).  Here, Ingenio will not be unduly prejudiced by GameLogic's timely counterclaims.

IV.    CONCLUSION

        For the foregoing reasons, GameLogic respectfully requests that the Court grant this Motion for Leave to File Amended Answer and Counterclaims.  A proposed form of order is attached hereto as Ex. J for the Court's convenience.

                Respectfully submitted,

                POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Gary M. Hnath
Susan Baker Manning
BINGHAM MCCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC  10036
(202) 778-6150

Dated:  October 31, 2005

705660

By:  /s/ David E. Moore
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19899-0951
     Tel:  (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

*Attorneys for GameLogic Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 31, 2005, the attached

document was hand delivered to the following persons and was electronically filed with

the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following and the document is available for viewing and downloading from CM/ECF:

| | |
|---|---|
| Edmond D. Johnson | Jack B. Blumenfeld |
| Thomas H. Kovach | Roger D. Smith |
| The Bayard Firm | Morris Nichols Arsht & Tunnell |
| 222 Delaware Avenue, Suite 900 | Chase Manhattan Centre, 18th Floor |
| P.O. Box 25130 | 1201 North Market Street |
| Wilmington, DE 19899 | P.O. Box 1347 |
| | Wilmington, DE 19899-1347 |

I hereby certify that on October 31, 2005, I have Federal Expressed the

documents to the following non-registered participants:

Rodger L. Tate
Brian M. Buroker
Christopher J. Cuneo
Hunton & Williams LLP
1900 K Street, N.W., Suite 1200
Washington, DC 20006

By: */s/ David E. Moore*
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

672965