# EXHIBIT F

**BINGHAM McCUTCHEN**

Susan Baker Manning
Direct Phone: (202) 778-6172
Direct Fax:    (202) 778-6155
susan.manning@bingham.com
Our File No.: 3002767-0000312139

October 28, 2005

**Via Email**

Brian M. Buroker
Hunton & Williams LLP
1900 K Street NW, Suite 1200
Washington, DC  20006-1109

Re:  **Ingenio v. GameLogic—Amended Answer and Counterclaims**

Dear Brian:

GameLogic has prepared the attached Amended Answer and Counterclaim. The
Amended Answer is largely identical to the previously-filed answer, with extremely
minor changes such as GameLogic's new address in paragraph 7. The Counterclaim
asserts causes of action for abuse of process and unfair competition under Massachusetts
law.

I have also prepared a stipulation for your review and signature. Amendments to the
pleadings may be made "by leave of court or by written consent of the adverse party; and
leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Under the
Court's Scheduling Order, amendments are to be made by Monday, October 31, 2005. I
write to request Ingenio's stipulation to the filing of the Amended Answer and
Counterclaim. If Ingenio is amenable, please execute the attached stipulation and return
to me for filing. If Ingenio is not willing to enter into a stipulation, GameLogic will
make a motion for leave to file the Amendment next Monday. We hope, however, this
will not be necessary, particularly in light of the oft-repeated view of federal courts that
the policy favoring amendment "should be applied with 'extreme liberality.'" *DCD
Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). *See also Foman v. Davis*,
371 U.S. 178, 182 (1962) (the mandate of Rule 15(a) "is to be heeded").

I would appreciate hearing from you on this matter no later than 11:00 am on October 31,
2005. I will be in the office this afternoon and Monday morning, and am available to
discuss these matters at your convenience.

Sincerely yours,

Susan Baker Manning

Enclosures

Bingham McCutchen LLP
Suite 800
1120 20th Street, NW
Washington, DC
20036-3406

202 778 6150
202 778 6155 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INGENIO, FILIALE DE LOTO-QUEBEC, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>GAMELOGIC, INC. and SCIENTIFIC GAMES<br>CORPORATION,<br>          Defendants. | Civil Action No. 04-1532 (KAJ) |
| GAMELOGIC, INC.,<br><br>          Counter-Plaintiff,<br><br>     v.<br><br>INGENIO, FILIALE DE LOTO-QUEBEC, INC.<br><br>          Counter-Defendant. | |

**AMENDED ANSWER AND COUNTERCLAIM**
**OF DEFENDANT AND COUNTER-PLAINTIFF GAMELOGIC, INC.**

**Demand for Jury Trial**

## AMENDED ANSWER

1.      Defendant GameLogic, Inc. ("GameLogic" or "Defendant") hereby answers Plaintiff Ingenio, Filiale de Loto-Quebec, Inc.'s ("Ingenio" or "Plaintiff") Complaint and Jury Demand ("Complaint") as follows:

### Nature Of The Action

2.      GameLogic admits that Plaintiff has filed this action against GameLogic alleging patent infringement, and admits that this action arises under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq.* GameLogic admits that Plaintiff seeks to enjoin and obtain damages resulting from what Plaintiff alleges to be GameLogic's unauthorized manufacture, use, sale, offer to sell and/or importation into the United States for subsequent use or sale of products, methods, processes, services and/or systems that infringe one or more claims of United States Patent No. 5,569,082 (the "'082 Patent"), entitled "Personal Computer Lottery Game" and United States Patent No. 5,709,603 (the "'603 Patent"), also entitled "Personal Computer Lottery Game." GameLogic admits that copies of these patents are attached to Plaintiff's Complaint. GameLogic admits that Plaintiff seeks injunctive relief and monetary damages but denies that Plaintiff is entitled to such relief. GameLogic denies the remaining allegations of Paragraph 2 of the Complaint.

3.      GameLogic admits that Plaintiff filed this action alleging that GameLogic's conduct constitutes patent infringement. GameLogic denies the remaining allegations of Paragraph 3 of the Complaint.

### The Parties

4.      GameLogic lacks sufficient knowledge or information to form a belief as to the truth and correctness of the allegations in Paragraph 4 of the Complaint and therefore

denies the allegations.

5.    GameLogic admits that Perry Kaye was named as sole inventor on the face of the issued '082 patent and '603 patent. GameLogic denies that the patents were lawfully issued, and lacks sufficient knowledge or information to form a belief as to the truth and correctness of the other allegations in Paragraph 5 of the Complaint and therefore denies the allegations.

6.    GameLogic lacks sufficient knowledge or information to form a belief as to the truth and correctness of the allegations in Paragraph 6 of the Complaint and therefore denies the allegations.

7.    GameLogic admits that it is a corporation organized and existing under the laws of the State of Delaware. GameLogic denies the remaining allegations of Paragraph 7 of the Complaint. GameLogic maintains its principal place of business at 880 Winter Street, Waltham, Massachusetts 02451.

8.    GameLogic lacks sufficient knowledge or information to form a belief as to the truth and correctness of the allegations regarding the status of Scientific Games. GameLogic denies the remaining allegations of Paragraph 8 of the Complaint.

<u>**Jurisdiction and Venue**</u>

9.    GameLogic does not contest that this Court has subject matter jurisdiction, as alleged in Paragraph 9 of the Complaint.

10.    GameLogic admits that it is a Delaware corporation. For purposes of this litigation only, GameLogic does not contest that it is subject to personal jurisdiction in the State of Delaware, as alleged in Paragraph 10 of the Complaint.

11.    GameLogic lacks sufficient knowledge or information to form a belief as to

the truth and correctness of the allegations in Paragraph 11 of the Complaint and therefore denies the allegations.

12.    For the purposes of this litigation only, GameLogic does not contest that venue is proper in this District, as alleged in Paragraph 12 of the Complaint.

### Factual Background

13.    GameLogic lacks sufficient knowledge or information to form a belief as to the truth and correctness of the allegations in Paragraph 13 of the Complaint and therefore denies the allegations.

14.    GameLogic admits that it received a communication from Plaintiff's counsel regarding the '082 and '603 patents no later than October 2004 but denies that it was "in the context of the HomePlay™ game." GameLogic lacks sufficient knowledge or information to form a belief as to the truth and correctness of the remaining allegations in Paragraph 14 of the Complaint and therefore denies those allegations.

15.    GameLogic denies the allegations in Paragraph 15 of the Complaint.

16.    GameLogic denies the allegations in Paragraph 16 of the Complaint.

17.    GameLogic denies the allegations of Paragraph 17 of the Complaint.

### Count I
### (Patent Infringement of United States Patent No. 5,569,082)

18.    Responding to Paragraph 18, GameLogic repeats its responses contained in Paragraphs 1 through 17 above.

19.    GameLogic denies the allegations of Paragraph 19 of the Complaint

20.    GameLogic denies the allegations of Paragraph 20 of the Complaint.

21.    GameLogic denies the allegations of Paragraph 21 of the Complaint

### Count II

**(Patent Infringement of United States Patent No. 5,709,603)**

22.     Responding to Paragraph 22, GameLogic repeats its responses contained in Paragraphs 1 through 21 above.

23.     GameLogic denies the allegations of Paragraph 23 of the Complaint.

24.     GameLogic denies the allegations of Paragraph 24 of the Complaint.

25.     GameLogic denies the allegations of Paragraph 25 of the Complaint.

**Count III**
**(Willful Patent Infringement of United States Patent No. 5,569,082)**

26.     Responding to Paragraph 26, GameLogic repeats its responses contained in Paragraphs 1 through 25 above.

27.     GameLogic admits that it received a communication from Plaintiff's counsel regarding the '082 and '603 patents no later than October 2004. GameLogic denies the remaining allegations of Paragraph 27 of the Complaint.

28.     GameLogic denies the allegations of Paragraph 28 of the Complaint.

**Count IV**
**(Willful Patent Infringement of United States Patent No. 5,709,603)**

29.     Responding to Paragraph 29, GameLogic repeats its responses contained in Paragraphs 1 through 28 above.

30.     GameLogic admits that it received a communication from Plaintiff's counsel regarding the '082 and '603 patents no later than October 2004. GameLogic denies the remaining allegations of Paragraph 30 of the Complaint.

31.     GameLogic denies the allegations of Paragraph 31 of the Complaint.

32.     GameLogic denies that Ingenio is entitled to any relief as requested in its Complaint.

33.    All allegations in the Complaint not specifically admitted as set forth above are hereby denied.

**DEFENSES**

34.    GameLogic has not infringed and is not infringing, directly or indirectly, any claim of the '082.

35.    GameLogic has not infringed and is not infringing, directly or indirectly, any claim of '603 Patent.

36.    The claims of the '082 Patent are invalid for failure to comply with one or more provisions of the Patent Act, Title 35, United States Code, § 101, *et seq*.

37.    The claims of the '603 Patent are invalid for failure to comply with one or more provisions of the Patent Act, Title 35, United States Code, § 101, *et seq*.

38.    The claims of the '082 and '603 patents are invalid based on statutory double patenting and/or the judicially created doctrine of obviousness-type double patenting.

39.    Plaintiff is estopped from arguing that any claims of the '082 and/or '603 patents are infringed by GameLogic.

40.    The '082 patent is unenforceable as a result of inequitable conduct.

(a)    On September 5, 1996, an international search report was issued by the European Patent Office in PCT/US96103320, the foreign counterpart application for the '082 patent. Four prior art references were cited in the search report, including International Patent Application WO A9106931 to Raha Automaattiyhdistys ("Raha") and U.S. Patent 5,373,440 to Cohen et al ("Cohen"). The search report indicated that Raha and Cohen were "of particular relevance" and that "the claimed invention cannot be considered novel or cannot be considered to involve an inventive step" in light of either of these references.

(b)    The '082 applicants, including Mr. Kaye, the named inventor of the '082 patent, and his attorney, failed to disclose the international search report and the Raha and Cohen references to the U.S. Patent Examiner considering the pending patent application that later matured into the '082 patent.

(c)    The applicants' failure to disclose the international search report and the Raha and Cohen references, which were highly material to the prosecution of the '082 patent, violated the duty of candor and good faith in dealing with the United States Patent Office set out in 37 CFR § 1.56.

(d)    Upon information and belief, the applicants failed to disclose the international search report and the Raha and Cohen references with an intent to deceive the patent examiner.

(e)    The applicants' violation of the duty of candor constituted inequitable conduct, rendering the '082 Patent unenforceable.

41.    The inequitable conduct committed in the prosecution of the '082 patent also renders the '603 patent, a continuation-in-part of the '082 patent, unenforceable. GameLogic reserves the right to assert additional grounds for the unenforceability of the '082 and '603 patents due to inequitable conduct as discovery proceeds in this action.

### Prayer for Relief

WHEREFORE, defendant GameLogic prays that the Court enter judgment:

(a)    Dismissing Plaintiff's Complaint against GameLogic with prejudice;

(b)    Declaring that Defendant GameLogic has not infringed and is not infringing any claim of United States Patent No. 5,569,082;

(c)    Declaring that Defendant GameLogic has not infringed and is not infringing any

7

claim of United States Patent No. 5,709,603;

      (d)    Declaring United States Patent No. 5,569,082 invalid;

      (e)    Declaring United States Patent No. 5,709,603 invalid;

      (f)    Declaring United States Patent No. 5,569,082 unenforceable;

      (g)    Declaring United States Patent No. 5,709,603 unenforceable;

      (h)    Declaring the case to be an exceptional case under 35 U.S.C. § 285 and awarding

Defendant GameLogic its reasonable attorneys' fees;

      (i)    Awarding Defendant GameLogic its costs; and

      (j)    Granting GameLogic such other and further relief as the Court determines is just

and proper.

## COUNTERCLAIM OF DEFENDANT AND
## COUNTER-PLAINTIFF GAMELOGIC, INC.

Defendant and Counter-Plaintiff GameLogic, Inc. ("GameLogic") hereby brings this

Counterclaim against Plaintiff and Counter-Defendant Ingenio, Filiale de Loto-Quebec, Inc.

("Ingenio") and states as follows:

### Parties and Jurisdiction

1.       GameLogic is informed and believes that Plaintiff and Counter-Defendant

Ingenio, Filiale de Loto-Quebec, Inc. is a corporation organized and existing under the laws of

Quebec, and having its principle place of business at 500 Sherbrooke Street West, Montreal,

Quebec, Canada H3A 3G6. Ingenio has submitted itself to the jurisdiction of the Court by filing

suit in the United States District Court for the District of Delaware.

2.       Defendant and Counter-Plaintiff GameLogic, Inc. is a corporation organized and

existing under the laws of a Delaware. GameLogic's primary place of business is located at 880

Winter Street, Waltham, Massachusetts 02451.

3.       The amount in controversy is believed to be in excess of $75,000.

4.       This Court has jurisdiction over this state law counterclaim pursuant to 28 U.S.C.

§§ 1332 and 1367.

### Factual Background

5.       Ingenio has utilized process in initiating this lawsuit, and a court order

summoning GameLogic to appear in this matter has issued.

6.       Although Ingenio brought this action, it has failed to vigorously pursue its claims.

On information and belief, Ingenio has used this lawsuit to gain competitive advantage over

GameLogic, to discourage potential customers and/or potential partners from doing business

with GameLogic, and to harm GameLogic's business. Ingenio's failure to vigorously prosecute

its case is indicative of this ulterior motive for the lawsuit.

7.      On information and belief, following the commencement of this suit, Ingenio (or persons presently unknown acting at Ingenio's request, direction or for its benefit) identified and contacted one or more of GameLogic's potential customers and/or partners.

8.      On information and belief, such contact was made to discourage potential customers and/or partners from doing business with GameLogic.  On information and belief, one way potential customers and/or partners were discouraged from doing business with GameLogic was by discussing the pending litigation with them.

9.      As a result of this activity, GameLogic has been harmed.  Ingenio has benefited from these actions by eliminating, for some customers, GameLogic as a competitor.

### Count I
### (Abuse of Process—Massachusetts Common Law)

10.     GameLogic restates and incorporates paragraphs 1-9 as if fully alleged herein.

11.     Ingenio's contacts with GameLogic's potential customers and partners were not intended to further Ingenio's interests in this litigation, but rather to accomplish the collateral objectives of undermining GameLogic's business activities and causing financial and/or reputational harm to GameLogic.

12.     Ingenio's coercive actions in furtherance of its ulterior motive have harmed GameLogic, causing it to lose revenues and damaging its reputation in the marketplace.

13.     As a result, Ingenio has committed an abuse of process under Massachusetts law.

### Count II
### (Violation of Massachusetts General Laws Chapter 93A)

14.     GameLogic restates and incorporates paragraphs 1-13 as if fully alleged herein.

15.     Like Ingenio and companies affiliated with Ingenio, GameLogic develops and

markets certain gaming products. Their target consumer base overlaps.

16.    Ingenio's willful actions in using this litigation to deter potential customers and/or partners from doing business with GameLogic threatens GameLogic's ability to continue to operate in Massachusetts and contribute to the local economy in Massachusetts.

17.    Ingenio's willful actions as described above are oppressive, unconscionable, coercive or extortionate.

18.    As such, Ingenio's actions are unfair or deceptive.

19.    Furthermore, by Ingenio's willful actions as described above, Ingenio has engaged in unfair competition with GameLogic.

20.    Ingenio's actions have caused monetary harm to GameLogic in the form of lost revenues.

21.    As a result, Ingenio has committed a violation of Massachusetts General Laws Chapter 93A.

### Prayer for Relief

WHEREFORE, Defendant and Counter-Plaintiff GameLogic prays that the Court enter judgment:

(a)    Awarding damages to GameLogic for abuse of process, in an amount to be determined at trial;

(b)    Awarding punitive damages to GameLogic for abuse of process, in an amount to be determined at trial;

(c)    Awarding actual and treble damages to GameLogic for violation of Massachusetts General Laws Chapter 93A, in an amount to be determined at trial;

(d)    Dismissing Plaintiff's Complaint against GameLogic with prejudice;

(e)    Awarding Defendant GameLogic its costs and attorneys' fees; and

(f)    Granting GameLogic such other and further relief as the Court determines

is just and proper.

Dated:  October 31, 2005                              Respectfully submitted,


_____
Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
(302) 658-1192 (facsimile)

Gary M. Hnath
Susan Baker Manning
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC 20036
(202) 778-6150
(202) 778-6155 (facsimile)

Counsel for Defendant and Counter-Plaintiff
GameLogic, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INGENIO, FILIALE DE LOTO-QUEBEC, INC.,

             Plaintiff,

      v.

GAMELOGIC, INC. and SCIENTIFIC GAMES
CORPORATION,

             Defendants.

Civil Action No. 04-1532 (KAJ)

**STIPULATION AND [PROPOSED] ORDER RE
FILING OF AMENDED ANSWER AND COUNTERCLAIMS**

Defendant GameLogic, Inc. ("GameLogic"), and Plaintiff Ingenio, Filiale de

Loto-Quebec, Inc. ("Ingenio") stipulate as follows:

WHEREAS Ingenio filed a Complaint on December 20, 2004 alleging

infringement of U.S. Patent Nos. 5,569,082 and 5,709,603 by GameLogic and defendant

Scientific Games Corp.;

WHEREAS GameLogic filed a timely Answer denying Ingenio's claims and

asserting certain defenses; and

WHEREAS GameLogic wishes to amend its Answer to assert certain

counterclaims against Ingenio;

IT IS THEREFORE STIPULATED BY THE PARTIES that GameLogic shall file

and serve the Amended Answer and Counterclaims (attached as Exhibit A hereto). The

Amended Answer and Counterclaims shall be deemed filed and served by mail as of the date on

which the Court issues this Order.

**IT IS SO STIPULATED.**

Dated: October __, 2005

Attorneys for Defendant and Counter-Plaintiff
GameLogic, Inc.

_____

Gary Hnath
Susan Baker Manning
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC 20036-3406
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Dated: October __, 2005

Attorneys Plaintiff and Counter-Defendant
Ingenio, Filiale de Loto-Quebec, Inc.

_____

Rodger L. Tate
Brian M. Buroker
Hunton & Williams LLP
1900 K Street NW
Washington, DC 20006-1109
Telephone: (202) 995-1500
Facsimile: (202) 778-2201

**IT IS SO ORDERED.**

Dated: _____

_____
Hon. Kent A. Jordan
United States District Court Judge

- 2 -

# EXHIBIT G

**Manning, Susan Baker**

| | |
|---|---|
| **From:** | Buroker, Brian [bburoker@hunton.com] |
| **Sent:** | Monday, October 31, 2005 11:54 AM |
| **To:** | Manning, Susan Baker |
| **Cc:** | Tate, Rodger; Jack B. Blumenfeld |
| **Subject:** | RE: Ingenio v. GameLogic -- Amended Answer & Counterclaims |

Susan,
  Ingenio opposes such an amendment.

Brian

> -----Original Message-----
> **From:** Manning, Susan Baker [mailto:susan.manning@bingham.com]
> **Sent:** Friday, October 28, 2005 1:36 PM
> **To:** Buroker, Brian
> **Cc:** Tate, Rodger; Jack B. Blumenfeld
> **Subject:** Ingenio v. GameLogic -- Amended Answer & Counterclaims
>
> Dear Brian --
> Please see attached correspondence.
>
> regards,
> Susan
>
>
> Susan Baker Manning, Esq.
> **Bingham McCutchen LLP**
> 1120 20th Street NW, Suite 800
> Washington DC 20036
> 202.778.6172 (t)
> 202.778.6155 (f)
> susan.manning@bingham.com

Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.

# EXHIBIT H

Westlaw.

2004 Mass.App.Div. 120                                          Page 1
Not Reported in N.E.2d, 2004 Mass.App.Div. 120, 2004 WL 1853343 (Mass.App.Div.)
**(Cite as: 2004 WL 1853343 (Mass.App.Div.))**

C

Massachusetts Appellate Division, District Court
Department, Northern District.
MEDFORD CO-OPERATIVE BANK
v.
David P. SKERRY.
No. 9875.

Heard May 19, 2004.
Opinion Certified Aug. 12, 2004.

**Background:** After bank repaid Social Security
Administration (SSA) to cover unauthorized deposits
into its deceased customer's account, it brought
conversion action against administrator for estate,
both in his official capacity and individually.
Administrator filed counterclaims for abuse of
process and unfair and deceptive practices. The
District Court Department, Somerville Division,
McGuinness, J., entered judgment for administrator
on his counterclaims, and bank appealed.

**Holdings:** The District Court Department,
Appellate Division, Merrick, J., held that:

(1) sufficient evidence supported determination that
bank's conversion action constituted an abuse of
process;

(2) administrator's allegations supported unfair and
deceptive practices claim;

(3) fact that administrator practiced law did not
preclude his counterclaim for unfair and deceptive
practices; and

(4) administrator was entitled to recover his
appellate attorney fees.
Affirmed.

**[1] Pretrial Procedure** ⬤682.1

307Ak682.1 Most Cited Cases
Plaintiff's motion for involuntary dismissal of
defendant's counterclaims for abuse of process and
unfair and deceptive practices was properly denied,
since record was not devoid of evidence probative of
defendant's counterclaims. Rules Civ.Proc., Rule
41(b)(2), 43A M.G.L.A.

**[2] Process** ⬤171
313k171 Most Cited Cases
Determination that bank's conversion action against
administrator for estate, individually, to recover
amounts it had paid to cover unauthorized social

security deposits into deceased customer's account
was pursued for an ulterior or illegitimate purpose, so
as to constitute an abuse of process, was supported by
evidence that bank officer did not think administrator
had misappropriated funds, that bank had not brought
individual actions in similar cases, and that bank's
mistaken handling of the repayment may have
jeopardized its ability to recover fully from the estate.

**[3] Consumer Protection** ⬤38
92Hk38 Most Cited Cases
Administrator for estate who had been sued by bank
in conversion in his individual capacity could recover
on his counterclaim for unfair and deceptive trade
practices based on bank's abuse of process, even
though his counterclaim referred specifically to a
violation of the Fair Debt Collection Practices Act,
since his allegations supported a claim for relief on
an abuse of process theory. 15 U.S.C.A. § 1692(a)-
(o); M.G.L.A. c. 93A.

**[4] Consumer Protection** ⬤1
92Hk1 Most Cited Cases
Fact that administrator for estate practiced law did
not preclude him from recovering on counterclaim
against bank for unfair and deceptive trade practices.
M.G.L.A. c. 93A, § 2, 9, 11.

**[5] Consumer Protection** ⬤42
92Hk42 Most Cited Cases
Where judgment in favor of administrator for estate
on his counterclaims against bank for abuse of
process and unfair and deceptive trade practices was
upheld on appeal, attorney was entitled to recover
appellate attorney fees upon motion, detailed
affidavit, and notice.

**[5] Costs** ⬤252
102k252 Most Cited Cases

**[5] Costs** ⬤264
102k264 Most Cited Cases
Where judgment in favor of administrator for estate
on his counterclaims against bank for abuse of
process and unfair and deceptive trade practices was
upheld on appeal, attorney was entitled to recover
appellate attorney fees upon motion, detailed
affidavit, and notice.
In the Somerville Division, McGuinness, J., No.
0010-CV-0828.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 Mass App. Div. 120
Not Reported in N.E.2d, 2004 Mass.App.Div. 120, 2004 WL 1853343 (Mass.App.Div.)
**(Cite as: 2004 WL 1853343 (Mass.App.Div.))**

Herbert William Boudreau, Jr., Medford, MA, for
Plaintiff.

Daniel J. Harrington, Melrose, MA, for Defendant.

Before MERRICK, P.J., COVEN & GRECO, JJ.

MERRICK, J.

*1 After a trial without a jury, judgment was entered
for the defendant on his counterclaims for abuse of
process and G.L. c. 93A unfair and deceptive
practices. The plaintiff filed this Dist./Mun. Cts.
R.A.D.A. 8C appeal of the denial of its Mass. R. Civ.
P. 41(b)(2) motion for involuntary dismissal of the
defendant's counterclaims. As the plaintiff challenges
the sufficiency of the evidence to support the court's
judgment, we view the evidence in the light most
favorable to the defendant for the purposes of this
appeal. _Edwards v. Sullivan and Cogliano Cos., 2002
Mass.App. Div. 43; Hale v. Building 19 1/6, 2002
Mass.App. Div. 38._

The defendant and plaintiff-in-counterclaim, David
P. Skerry ("Skerry"), has practiced law in the City of
Medford for 35 years. More than half of his practice
has involved serving as a fiduciary or representing
fiduciaries. In 1991, he was appointed conservator
for Mary J. Culkeen ("Culkeen") and served in that
capacity until her death on July 31, 1999. Culkeen,
confined to a nursing home, had received monthly
Social Security payments by direct deposit to an
account in the name of "David P. Skerry,
Conservator, Property of Mary Culkeen" at the
Medford Co-operative Bank (the "Bank"), the
plaintiff and defendant-in-counterclaim herein.
Skerry promptly notified the Social Security
Administration ("SSA") in August, 1999 of Culkeen's
death, forwarded a copy of her death certificate and
thereafter contacted SSA on numerous occasions to
terminate Culkeen's monthly benefits. Despite these
efforts, Social Security payments continued to be
deposited in the conservator account through
February, 2000. The total amount of these
overpayments after Culkeen's death, to which she and
her estate were not entitled, was $5,925.00.

On August 31, 1999, Skerry was appointed
administrator of Culkeen's estate. The estate's
principal asset was a two-family house occupied by
elderly tenants. The house was in disrepair and the
heating system was not functioning. Skerry used
conservator account funds to pay for repairs and
insurance on the house. He also paid Culkeen's
funeral and final expenses as well as a very small

percentage of the fees due to him in the amount of
$1,098.00. An inventory filed by Skerry, as
administrator, in the Probate and Family Court on
December 29, 1999 reflected a balance in the
conservator account of $181.40. The estate's only
other assets were the house, valued at $175,000.00,
and the decedent's personal effects, worth only
$150.00. [FN1]

> FN1. No objection was ever filed to the
> inventory and accounts submitted by Skerry
> as conservator or administrator.

*2 At the end of February, 2000, the SSA made a
demand upon Skerry for repayment of the $5,925.00
in benefits deposited after Culkeen's death. Skerry
replied by letter dated March 1, 2000 that there was
very little cash in the estate and that it would be
needed to maintain the estate's principal asset. He
further stated that the house would be sold and
offered to pay the $5,925.00 out of the proceeds of
the sale. Skerry testified that in his 35 years of
experience, the SSA customarily agreed to such
arrangements for the correction of the very common
problem of continued automatic payments after the
death of a social security recipient. During the month
of March, 2000, Skerry transferred most of the
remaining funds in the conservator account at the
Bank to an estate account he had opened, as
Culkeen's administrator, at the Century Bank.

On March 2, 2000, Skerry was contacted by Henry
T. Sampson ("Sampson") of the plaintiff Bank about
the Bank's receipt of a U.S. Treasury Department
"Notice of Reclamation" of the overpayments. Skerry
advised Sampson that he was handling the matter
with the SSA and provided copies of his
correspondence with the SSA, including his March 1,
2000 letter outlining the proposed settlement. Skerry
testified that Sampson did not contact him again.
Sampson testified that he knew Skerry to be an
honest man, that Skerry had been on the list of
attorneys the Bank retained for real estate closings,
and that he would not have been on that list if he had
not had a reputation in the community for honesty.
Sampson was also aware that Skerry had sued
Sampson's boss, Robert Surabian ("Surabian"), the
president of the Bank, on behalf of Surabian's niece
over a family matter and had obtained a settlement in
the niece's favor against Surabian for a substantial
amount of money.

Sampson also testified that although he was the vice-
president of the Bank for residential lending and had
no knowledge of, or experience with, notices of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 Mass.App.Div. 120                                                                  Page 3
Not Reported in N.E.2d, 2004 Mass.App.Div. 120, 2004 WL 1853343 (Mass.App.Div.)
(Cite as: 2004 WL 1853343 (Mass.App.Div.))

reclamation or social security, he was asked to handle the Culkeen matter. The "Notice of Reclamation" received by the Bank clearly stated that the Bank's liability would be limited if it followed the instructions set forth in the Notice within 60 days. The Notice directed that if the account funds were less than the social security overpayment amount, the existing funds should be paid by the Bank. If the account balance was zero, the Bank should instead simply provide the names and addresses of all withdrawers. In either event, the Notice of Reclamation obligated the Bank to mail notice to the account holder of any action it had taken or planned to take in response to the Notice. Neither Sampson, nor anyone at the Bank, responded to the Notice of Reclamation. The Bank subsequently elected to pay the $5,925.00 in its entirety to the U.S. Treasury Department. Sampson testified that the Bank had no legal obligation to do so, and had never requested a return of the funds from the SSA after its voluntary payment. The Bank did not issue any notice to Skerry of either its intent to make such payment, or of the fact that it had done so.

**\*3** Unaware of the Bank's action, Skerry paid $2,500.00 to the SSA as the first repayment installment. [FN2] On July 10, 2000, the Bank filed suit against both "David P. Skerry, Administrator of the Estate of Mary J. Culkeen" and "David P. Kerry, Individually." Service of the complaint on July 27, 2000 was not only the first notice Kerry received that the Bank had paid the Treasury Department, but also the first demand upon him for reimbursement. The complaint set forth claims for unjust enrichment and money had and received, and further alleged that Skerry, both as administrator and individually, had converted the $5,925.00 to his own use. Sampson testified that he never believed Skerry had converted the funds to his personal use, and that the Bank's usual approach in such situations was to sue the estate and not the individual. There was further testimony that the Bank had obtained a lien on the Culkeen house and that such lien was senior to any lien by the Department of Medical Insurance for medicaid payments for the nursing home care of Culkeen.

> FN2. The record does not indicate whether the overpayment to the SSA was recovered.

Skerry retained two separate attorneys to represent him as administrator and individually, and filed separate answers and counterclaims. As administrator, he submitted a Mass. R. Civ. P. 68 offer of judgment in the amount of $6,083.30, [FN3]

which the Bank accepted. The parties executed a stipulation of dismissal of all claims and counterclaims in the case against Skerry as administrator. Despite full satisfaction of its claim, the Bank delayed for a year, until the eve of trial, before filing a voluntary dismissal of its action against Skerry individually. Skerry's counterclaims were tried without a jury, and the judge assessed $10,000.00 in damages on the abuse of process counterclaim and doubled that sum for an award of $20,000.00 on the G.L. c. 93A counterclaim. The Bank argues on this appeal that the denial of its motion for involuntary dismissal was error because the evidence was insufficient as a matter of law to support a finding for Skerry on either counterclaim.

> FN3. This figure was apparently the sum of the $5,925.00 overpayment amount and costs.

[1] 1. The Bank's Rule 41(b)(2) motion for involuntary dismissal was properly denied if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn" in favor of Skerry. *Sonogram of New England, Inc. v. Metropolitan Prop. & Cas. Ins. Co.,* 2002 Mass.App. Div. 68, 70-71, quoting *Raunela v. Hertz Corp.,* 361 Mass. 341, 343, 280 N.E.2d 179 (1972). See also *DeVito v. Cellular Mobile Communications, Inc.,* 1993 Mass.App. Div. 48, 48-49. As the record is not devoid of evidence probative of Skerry's counterclaims, the Bank was not entitled to judgment in its favor as a matter of law. The Bank's Rule 41(b)(2) motion was, therefore, properly denied.

2. Abuse of process is the use of legal process "to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Jones v. Brockton Public Markets, Inc.,* 369 Mass. 387, 389, 340 N.E.2d 484 (1975). It is "a form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money." *Vittands v. Sudduth,* 49 Mass.App.Ct. 401, 406, 730 N.E.2d 325 (2000), quoting from *Cohen v. Hurley,* 20 Mass.App.Ct. 439, 442, 480 N.E.2d 658 (1985). The essential elements of the tort are that "(1) process was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage." *Gutierrez v. Massachusetts Bay Transp. Auth.,* 437 Mass. 396, 407, 772 N.E.2d 552 (2002). There is no question here that the first and third elements were satisfied. Process was clearly

2004 Mass.App.Div. 120                                                                          Page 4
Not Reported in N.E.2d, 2004 Mass.App.Div. 120, 2004 WL 1853343 (Mass.App.Div.)
(Cite as: 2004 WL 1853343 (Mass.App.Div.))

used and Skerry suffered damage, including the legal fees he was compelled to incur to retain separate counsel to represent himself individually.

*4 [2] Skerry also points to the potential damage to his personal and professional reputation by the Bank's (or more properly, its executives') filing of what it knew to be groundless allegations that he had converted to his own use funds he held as a fiduciary. The "ulterior or illegitimate purpose" element has been found in cases where, e.g., supplementary process was used to collect a debt known to have been already paid, *Lorusso v. Bloom,* 321 Mass. 9, 71 N.E.2d 218 (1947) or where property has been attached to enforce a claim known to be groundless. *Reardon v. Sadd,* 262 Mass. 345, 159 N.E. 751 (1928). Proof of motive or intent ordinarily requires the drawing of an inference *Powers v. Leno,* 24 Mass.App.Ct. 381, 383-384, 509 N.E.2d 46 (1987). While the evidence is hardly overwhelming on this point, it would have permitted the trial judge to infer that the Bank proceeded with questionable intentions to level a groundless charge of conversion against Skerry. The responsible officer at the Bank regarded Skerry as a man of unquestioned probity and did not believe he had in any way misappropriated funds. The Bank, through this officer, knew that Skerry had repeatedly advised the SSA of the overpayments and had proposed a settlement plan for their return, and that Skerry handled the funds in the regular course of his administration of Culkeen's estate. The Bank had sued Skerry as administrator of that estate, and had secured its recovery on any judgment that may have entered in its favor by a lien on the estate's principal asset. The value of that asset far exceeded the $5,925.00 sought by the Bank. Yet the Bank departed from its customary practice of proceeding only against the estate and brought an additional, individual action against the very attorney who had prevailed in a costly lawsuit against the Bank's president.

While proof of ill will, bad intentions, or knowledge that a claim is groundless is not alone sufficient (or necessary) to establish liability for abuse of process, see *Beecy v. Pucciarelli,* 387 Mass. 589, 596, 441 N.E.2d 1035 (1982); *Bednarz v. Bednarz,* 27 Mass.App.Ct. 668, 673-674, 542 N.E.2d 300 (1989), it is relevant in proving ulterior or illegitimate purpose. *Ladd v. Polidoro,* 424 Mass. 196, 199-200, 675 N.E.2d 382 (1997); *Fishman v. Brooks,* 396 Mass. 643, 652, 487 N.E.2d 1377 (1986). See *Cady v. Marcella,* 49 Mass.App.Ct. 334, 342, 729 N.E.2d 1125 (2000). Further, where there is evidence that

process has been utilized as a "threat or a club" to coerce or extort some collateral advantage, *Cohen v. Hurley, supra* at 442, 480 N.E.2d 658, or to "put pressure upon the [defendant] to compel him ... to take some ... action," *Powers v. Leno, supra* at 384, 509 N.E.2d 46, the requisite ulterior purpose may be found. The trial judge may well have inferred that the Bank's negligence in failing to comply with the Notice of Reclamation, compounded by its embarrassing mistake in electing to make a complete payment to the U.S. Treasury, rendered it particularly anxious to recover the money. The Bank may have questioned its ability to recover fully from the Culkeen estate what a trial court might have viewed as a gratuitous Bank payment of social security benefits that the estate was already repaying directly to the SSA. Thus it could have been reasonably concluded that the Bank's conversion claim against Skerry individually, with its threat to Skerry's reputation and practice, was designed to pressure him into quickly concluding the action by reimbursing the Bank in his capacity as administrator. So viewed, the Bank's groundless conversion claim was tortiously used as an "instrument of persuasion rather than a means of satisfaction," *Koonce v. Aldo Realty Trust,* 8 Mass.App.Ct. 199, 201, 392 N.E.2d 549 (1979), and constituted an abuse of process.

*5 3. There was also no error in the denial of the Bank's motion for involuntary dismissal of Skerry's G.L. c. 93A counterclaim for unfair and deceptive practices. Conduct amounting to an abuse of process may also constitute a violation of G.L. c. 93A and serve as the basis for a recovery under that statute. See, e.g., *Wyler v. Bonnell Motors, Inc.,* 35 Mass.App.Ct. 563, 624 N.E.2d 116 (1993).

[3] The Bank argues that because Skerry's G.L. c. 93A counterclaim referred specifically to a violation of the Fair Debt Collection Practices Act, 15 U.S.C. 1692(a)-(o), Skerry cannot recover under G.L. c. 93A for unfair and deceptive practices based upon abuse of process. Such argument overstates Massachusetts "notice pleading" principles which do not require that a complaint or counterclaim state a correct substantive theory of recovery and which do not require dismissal when the claim would support relief on an alternative theory. *Gallant v. Worcester,* 383 Mass. 707, 709-710, 421 N.E.2d 1196 (1981); *Berish v. Bornstein,* 437 Mass. 252, 269, 770 N.E.2d 961 (2002). It is established that the scope of "unfair and deceptive acts or practices" actionable under G.L. c. 93A is broader than common law or other statutory bases of recovery. See, e.g., *U.S. Funding, Inc. of America v. Bank of Boston Corp.,* 28 Mass.App.Ct.

2004 Mass.App.Div. 120
Not Reported in N.E.2d, 2004 Mass.App.Div. 120, 2004 WL 1853343 (Mass.App.Div.)
(Cite as: 2004 WL 1853343 (Mass.App.Div.))

Page 5

404, 407, 551 N.E.2d 922 (1990). Moreover, Skerry's c. 93A counterclaim incorporated by reference the factual allegations of his first counterclaim  [FN4] asserting, *inter alia*, that despite the Bank's knowledge that Skerry had negotiated a settlement with the SSA and had no knowledge of the Bank's voluntary payment, the Bank engaged in conduct "to harass ... and abuse" Skerry in an attempt to obtain reimbursement. Such allegations supported Skerry's claim for relief on an abuse of process theory.

> FN4. Skerry's first counterclaim was captioned "Violation of Fair Debt Collection Practices Act." His voluntary dismissal of that counterclaim prior to trial should have been a clear signal to the Bank that his G.L. c. 93A counterclaim was based on grounds other than the Bank's alleged violation of the federal statute.

[4] There is also no merit in the Bank's final contention that because Attorney Skerry practices law, he could not recover on his counterclaim pursuant to G.L. c. 93A, § § 2 and 9 because § 9 excludes claims by persons engaged in "trade or commerce" who are entitled to recover under G.L. c. 93A, § 11. We need not decide whether the allegations of conversion of funds to his own use brought in a suit against Skerry as an individual amounted solely to an injury to him as one in trade or commerce. Given that Skerry's G.L. c. 93A claim was raised as a counterclaim and thus required no demand letter, and that there are no other differences between § § 9 and 11 which are pertinent to this case, the distinction is immaterial.

[5] 4. We authorize an award of appellate attorney's fees to Skerry to be assessed by a trial court judge upon motion, detailed affidavit and notice. *Patry v. Liberty Mobilehome Sales, Inc.,* 394 Mass. 270, 272, 475 N.E.2d 392 (1985).

Judgment affirmed.

So ordered.

Not Reported in N.E.2d, 2004 Mass.App.Div. 120, 2004 WL 1853343 (Mass.App.Div.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT I

Westlaw.

Not Reported in A.2d
Not Reported in A.2d, 2000 WL 706833 (Del.Super.)
**(Cite as: 2000 WL 706833 (Del.Super.))**

**C**
Only the Westlaw citation is currently available.

UNPLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.
Bettina C. **FERGUSON**
v.
**WESLEY** COLLEGE, INC., Reed M. Stewart, Dale
R. Dube, Esquire, Charlene D.
Davis, Esquire, Bayard Handleman & Murdoch t/a
The Bayard Firm, Charles P.
Roberts, III, Esquire and Haynesworth Baldwin
Johnson & Greaves
**No. C.A. 99C-07-109 WTQ.**

March 23, 2000.

Letter Opinion and Order on Defendant Reed M.
Stewart's Motion to Dismiss-- Motion Denied Except
to the Extent the Complaint Might be Viewed as
Stating a Claim for Abuse of Process.

Bettina C. Ferguson, Esquire, Dover.

Kevin J. Connors, Esquire, Marshall Dennehey
Warner, Coleman & Goggin, Wilmington.

Mason E. Turner, Jr. Esquire, Prickett Jones &
Elliot, Wilmington.

Louis J. Rizzo, Esquire, Reger & Rizzo,
Wilmington.

QUILLEN, J.

*1 Dear Ms. Ferguson, Mr. Connors, Mr. Rizzo, and
Mr. Turner:

This is the Court's Letter Opinion and Order on
Defendant Reed M. Stewart's Motion to Dismiss. For
the reasons stated herein, the Motion is DENIED as it
relates to the malicious prosecution claim and
GRANTED as it relates to any conceivable abuse of
process claim.

FACTS
This is a lawsuit for damages related to a prior law
suit filed by the now Defendant Wesley College

against Plaintiff Bettina Ferguson ("Ferguson").
[FN1] During the relevant time periods, Ferguson
was employed by Wesley College. The movant in the
current Motion, Reed M. Stewart ("Stewart"), was the
President of Wesley College at the initiation of the
first lawsuit.

> FN1. Ms. Ferguson was admitted to the
> Delaware Bar in 1997 and has held a
> Certificate of Retirement from active law
> practice since approximately March 1988.

Around the first of September 1995, Wesley
College, through its attorneys, filed suit against
Ferguson, along with Leslie Pitts and Keith Hudson,
in the United States Federal District Court for the
District of Delaware. The Complaint alleged
violations of Federal law regarding the unauthorized
interception and disclosure of electronic
communications under 18 U.S.C. § 2511 and
violations of State law regarding the misuse of
computer system information under 11 Del. C. §
935. Ferguson alleges that the Defendants or their
agents intentionally and willfully caused a news
release to be sent to the *Delaware Business Review*,
resulting in a Statewide newspaper article about the
Federal suit which mentioned her by name. On
August 11, 1997, the District Court granted Ferguson
Summary Judgment, which was subsequently
affirmed by the Third Circuit. In a second Count,
Ferguson charges the appeal was frivolous.

Ferguson alleges that due to the "cloud" created by
the Defendants lawsuit against her, she has been
effectively prevented from returning to the practice of
law and she has incurred additional financial
damages as a result of the lawsuit. She asserts that
there was no probable cause for the suit in the
District Court and that the allegedly frivolous appeal
was motivated by malice.

Defendant Stewart claims that Ferguson's Complaint
amounts to her seeking damages for malicious
prosecution and abuse of process with regard to the
civil proceedings initiated by Wesley College. [FN2]
Stewart contends that the underlying civil
proceedings were not instituted by him, and assuming
*arguendo* that he initiated the investigation into the
Plaintiffs' activities with the electronic
communications, such action by Stewart fails to
support the allegation that the underlying proceedings

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2000 WL 706833 (Del.Super.)
(Cite as: 2000 WL 706833 (Del.Super.))

Page 2

were instituted by, or at the insistence of, Stewart. Stewart further argues that Ferguson has failed to allege facts that could satisfy the elements of malicious prosecution.

> FN2. The terms "malicious prosecution" and "abuse of process" do not appear in the Complaint, but the allegations set forth in the Complaint appear to seek damages based on these theories.

As to any possible abuse of process allegations, Stewart argues that Ferguson has failed to allege that Stewart did a willful and improper act in using the process. Stewart also argues that Ferguson has not alleged the prerequisite elements of an abuse of process claim and urges this Court to dismiss all such claims against him.

STANDARD OF REVIEW

*2 In evaluating a Motion to Dismiss under Superior Court Civil Rule 12(b)(6), the Court must assume all well pleaded facts in the Complaint to be true. _Nix v. Sawyer,_ Del.Super., 466 A.2d 407, 410 (1983) (citing _Laventhol, Krekstein, Horwath & Horwath v. Tuckman,_ Del.Supr., 372 A.2d 168 (1976)). For purposes of a Motion under Rule 12(b)(6), all allegations in the Complaint must be accepted as true. _State Use of Certain-Teed Products Corp. v. United Pacific Ins. Co.,_ Del.Super., 389 A.2d 777, 778 (1978). A Complaint will not be dismissed unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. _Nix,_ 466 A.2d at 410 (citing _Diamond State Tel. Co. v. University of Del.,_ Del.Supr., 269 A.2d 52 (1970)). A Complaint may not be dismissed unless it is clearly without merit, which may be a matter of law or fact. _Diamond State,_ 269 A.2d at 58.

DECISION

It appears that the heart of Stewart's Motion is based on improper pleading by Ferguson. A pleading is "well pleaded" if it puts the opposing party on notice of the claim being brought against it. _Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.,_ Del.Supr., 654 A.2d 403, 406 (1995). Complaints generally are short plain statements of the claim, each averment therein being simple, concise and direct with technical forms of pleading being unnecessary. _Twin Coach Co. v. Chance Vought Aircraft Co.,_ Del.Super., 2 Storey 588, 163 A.2d 278, 283 (1960). Pleadings are usually for notice giving with the task of narrowing and clarifying the basic issues and ascertaining the relevant facts being left to the

deposition and discovery process. _Delaware Valley Drug Co. v. Kline,_ Del.Super., 1 Storey 242, 144 A.2d 403, 405 (1958).

Here, there are no facts to support Stewart's claim that the underlying civil proceedings were not instituted by him or at his insistence. The Complaint clearly states "the lawsuit was instigated by Defendants Stewart, Dube and Roberts." (Compl ¶ 19). At this early stage of the litigation, the allegations in the Complaint must be accepted as true and the suit cannot be dismissed on this ground without a factual record being developed.

Stewart also alleges that Ferguson has not pled the necessary elements for a malicious prosecution or an abuse of process claim. In Delaware, claims for malicious prosecution are viewed with disfavor and they are assessed with careful scrutiny. _Nix,_ 466 A.2d at 411. In order to establish a claim for malicious prosecution, the following elements must exist:

(1) There must have been a prior institution or continuation of some regular judicial proceedings against the plaintiff in this action for malicious prosection.
(2) Such former proceedings must have been instituted by, or at the instance of the defendant in this action for malicious prosecution.
(3) The former proceedings must have terminated in favor of the defendant therein, the plaintiff in the action for malicious prosecution.
*3 (4) There must have been malice in instituting the former proceedings.
(5) There must have been want of probable cause for the institution of the former proceedings.
(6) There must have been injury or damage resulting to the plaintiff from the former proceedings.

_Servino v. Medical Center of Delaware Inc.,_ Del.Super., C.A. No. 94C-08- 077, Quillen, J. (Feb. 11, 1997); _Stidham v. Diamond State Brewery,_ Del.Super., 2 Terry 330, 21 A.2d 283, 284 (1941).

It appears that the Plaintiff has pled adequately all of the elements necessary for a claim of malicious prosecution. There was a judicial proceeding commenced against her. Plaintiff claims that the Complaint in the Federal action was instigated by Stewart. (Compl ¶ 19). The former preceding terminated in favor of Ferguson. The Plaintiff alleges that the claim was brought with malice and impermissible motive because Defendants intentionally caused a news release to be sent about the Federal suit. (Compl ¶ ¶ 24, 25, 32). [FN3] Malice may be averred generally. Superior Court

© 2005 Thomson/West. No Claim to Orig. U.S Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2000 WL 706833 (Del.Super.)
**(Cite as: 2000 WL 706833 (Del.Super.))**

Page 3

Civil Rule 9(b). The Plaintiff alleges that the lawsuit was filed without probable cause. (Compl ¶ 23). And Ferguson alleges damages from the former proceedings. Therefore, Ferguson should at least be able to get discovery so that the parties can obtain the relevant facts.

> FN3. Ferguson also alleges malice in her second cause of action when she claims that the appeal of her action was frivolous and that during the continuation of the lawsuit, she was subject to accusations of lying and conspiracy as well as innuendo of other wrongdoing that caused loss of her reputation in the community (Compl.¶ ¶ 35, 36, 39).

Absent specific legal authority, it does not seem to the Court that a claim against a College President, who appears to be the functional equivalent of a Chief Operating Officer of a corporation, is foreclosed from suit merely because that officer does not have the legal authority by himself to institute the suit. What is required is "some affirmative action by way of advice, encouragement, pressure etc., in the institution, or causing the institution, of the proceeding." 54 C.J.S. *Malicious Prosecution* § 18 (1987).

Stewart cites the case of *Megenhardt v. Nolan,* Del.Supr., 583 A.2d 660, 1990 WL 169009 (1990) to argue that his actions do not support a claim for malicious prosecution because he did not institute the underlying action. *Megenhardt* is distinguishable, however, because: 1) the trial Court dismissed that claim at the directed verdict stage and not in a Motion to Dismiss, and 2) in that case, the police did an independent investigation into the criminal action before an arrest was made and charges were brought by the Attorney General. Here, there are no facts alleged at this stage of the proceedings that indicate that any independent investigation was made before the suit was commenced.

Under the current state of the record, the Court cannot state that the Complaint is clearly without merit as a matter of law or fact. *Diamond State,* 269 A.2d at 58. Thus, Stewart's Motion to Dismiss the malicious prosecution claims is DENIED.

Stewart has also filed a Motion to Dismiss what he describes as the abuse of process claim against him. The essential elements of a claim for abuse of process are: 1) a willful and improper act in the use of process; 2) any form of coercion; and 3) a collateral

advantage to Defendants arising from said coercion. *Read v. Carpenter,* Del.Super., C.A. No. 95C-03-171, Quillen, J. (June 8, 1995), *aff'd,* Del.Supr., 670 A.2d 1340 (1995); *Nix v. Sawyer,* Del.Super., 466 A.2d 407, 412 (1983). Ferguson agrees in her response that she has not alleged the elements for an abuse of process action. Thus, it is conceded that the Complaint is inadequate to allege an abuse of process claim and, to that limited extent, the record should be clear that no abuse of process claim is being pursued. Therefore, the Motion to Dismiss what could conceivably be construed as an abuse of process claim is GRANTED. The Complaint in its entirety survives, however, as a two Count claim for malicious prosecution.

CONCLUSION

*4 For the foregoing reasons, the Defendant Reed M. Stewart's Motion to Dismiss the malicious prosecution claim is DENIED and the Motion to Dismiss the abuse of process claim is GRANTED. IT IS SO ORDERED.

Not Reported in A.2d, 2000 WL 706833 (Del.Super.)

END OF DOCUMENT

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INGENIO, FILIALE DE LOTO-QUEBEC, INC.,

              Plaintiff,

        v.

GAMELOGIC, INC. and SCIENTIFIC GAMES
CORPORATION,

              Defendants.

Civil Action No. 04-1532 (KAJ)

## ORDER

The Court, having considered GameLogic's Motion for Leave to File Amended

Answer and Counterclaim, IT IS HEREBY ORDERED this _____ day of

_____, 2005, that:

    (i)     GameLogic's Motion is GRANTED; and

    (ii)    the Proposed Amended Answer and Counterclaim of GameLogic, in the

form attached as Exhibit A to its Motion, is deemed filed and served as of the date of this

Order.

                                        _____
                                        United States District Judge