# EXHIBIT B

**Westlaw.**

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 896002 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available
United States District Court,D. Delaware.
ARTHROCARE CORPORATION, Plaintiff,
v.
SMITH & NEPHEW, INC., Defendant.
No. Civ. 01-504-SLR.

March 10, 2004.

Jack B. Blumenfeld, Karen Jacobs Louden, and James W. Parrett, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Plaintiff, Matthew D. Powers, Jared Bobrow, and Perry Clark, of Weil, Gotshal & Manges LLP, Redwood Shores, California, of counsel.
William J. Marsden, Jr., and Keith A. Walter, Jr., of Fish & Richardson P.C., Wilmington, Delaware, for Defendant, Mark J. Hebert, and Kurtis D. MacFerrin, of Fish & Richardson P.C., Boston, Massachusetts, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On July 25, 2001, plaintiff Arthrocare Corporation ("Arthrocare") filed this action against defendant Smith & Nephew, Inc. ("Smith & Nephew") alleging willful infringement of certain claims of U.S. Patent Nos. 5,697,536 (the " '536 patent"), 5,697,882 (the " '882 patent") and 6,224,592 (the " '592 patent) directed to electrosurgery devices and methods. (D.I.1) Smith & Nephew answered the complaint on September 13, 2001 denying the infringement allegations and asserting five affirmative defenses including noninfringement, invalidity, misuse, unenforceability based upon inequitable conduct, and unclean hands. (D.I.10) Smith & Nephew also asserted counterclaims for declaratory judgment that the patents in suit are invalid and not infringed by any act of Smith & Nephew and that the '592 patent is unenforceable due to inequitable conduct. (D.I.10) On September 26, 2001, Arthrocare denied Smith & Nephew's counterclaims. (D.I.20) With the court's permission, Smith & Nephew amended their answer on November 27, 2002 to add counterclaims for antitrust violations under 15 U.S.C. § 1 of the Sherman Act. (D.I.219) Specifically, Smith & Nephew alleges that Arthrocare and Ethicon, Inc. violated antitrust law by bringing and maintaining the instant action to restrain trade "knowing the '536, '882, and/or '592 patents are invalid, unenforceable, and/or not infringed by any act of Smith & Nephew." (D.I. 219 at ¶ 27-37)

ArthroCare is organized under the laws of the State of Delaware with its principal place of business in California. (D.I. 1 at ¶ 2) Smith & Nephew is also organized under the laws of State of Delaware with its principal place of business in Massachusetts. (D.I. 1 at ¶ 3) Smith & Nephew manufactures and sells the following three allegedly infringing products: the Saphyre bipolar ablation probe ("Saphyre"), the Dyonics Control RF System ("Control RF"), and the ElectroBlade Resector ("ElectroBlade"). The court has jurisdiction over this case pursuant to 28 U.S.C. § § 1331, 1338(a) and 2201(a).

The court separated the issues raised by the parties into two phases pursuant to Smith & Nephew's motion to bifurcate the issues of willfulness and damages until a jury verdict on infringement and validity of the patents in suit. (See D.I. 206) The first phase, in turn, included the issues of infringement, validity, and inequitable conduct ("the patent litigation"). The parties tried these issues before a jury from April 30, 2003 through May 9, 2003. On May 12, 2003, the jury returned a verdict in favor of Arthrocare on all issues. (See D.I. 405) That is, the jury found that Smith & Nephew directly infringed, induced infringement, and contributed to the infringement of the following claims of the three patents in suit with its Saphyre, ElectroBlade, and Control RF products: claims 46, 47, and 56 of the '536 patent, claims 13, 17, and 54 of the '882 patent, and claims 1, 3, 4, 11, 21, 23, 26, 27, 32, and 42 of the '592 patent. (See id.) The jury also found that none of the patents were invalid on anticipation or lack of enablement grounds. (See id.)

*2 The second phase is presently pending before the court and includes the issues of willfulness, damages, and Smith & Nephew's antitrust counterclaims. Currently before the court is Arthrocare's motion to dismiss Smith & Nephew's antitrust counterclaims. FN1 (D.I.429) For the reasons that follow, the court grants said motion.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01532-KAJ    Document 60-3    Filed 11/22/2005    Page 3 of 4

Not Reported in F.Supp.2d                                                                                                   Page 2
Not Reported in F.Supp.2d, 2004 WL 896002 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

> FN1. Arthrocare filed this motion to dismiss on May 27, 2003. Smith & Nephew has not responded, despite mentioning its antitrust counterclaims in its answering brief opposing Arthrocare's motion for a permanent injunction in the patent litigation filed with the court on June 4, 2003. (See D.I. 436) The court, therefore, presumes that Smith & Nephew does not oppose the motion.

## II. BACKGROUND

Arthrocare filed suit against Ethicon, Inc., Mitek Surgical Products, Inc., and Gynecare, Inc. in the Northern District of California on February 13, 1998, alleging infringement of eight claims in four patents. (*Arthrocare Corp. v. Ethicon, Inc.*, No. C-98-0609 WHO (N.D.Cal. Dec. 1, 1998); D.I. 321, ex. A at 1) The claims at issue included: (1) claims 40 and 44 of United States Patent No. 5,697,909 ("the '909 patent); (2) claim 45 of the '536 patent; (3) claim 101 of United States Patent No. 5,697, 281 ("the '281 patent); and (4) claims 1, 26, 28, and 32 of the '882 patent. (*Id.* at 2) On March 10, 1998, Arthrocare moved for a preliminary injunction against Ethicon and Mitek to enjoin the two from making, using, importing, selling, or offering for sale an electrosurgery system marketed and sold under the VAPR System name. (*Id.*) Senior Judge William H. Orrick issued a memorandum decision on December 1, 1998 denying Arthrocare's preliminary injunction motion. (*Id.* at 33) Judge Orrick found that the defendants raised substantial questions as to (1) whether claims 40 and 44 of the '909 patent and claims 26 and 28 of the '882 patent are invalid for obviousness; (2) whether claim 45 of the '536 patent and claim 101 of the '281 patent are invalid for anticipation and obviousness; and (3) whether claims 1 and 32 of the '882 patent are invalid for lack of enablement. (*Id.*) The parties settled the litigation in June 1999 prior to trial.

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). In analyzing a motion to dismiss under this rule, the court, therefore, must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998). The court, however, is not required to credit "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* The defendant has the burden of persuasion to show that no claim has been stated. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991).

## IV. DISCUSSION

*3 Smith & Nephew's antitrust counterclaims are premised on the idea that Arthrocare and Ethicon filed "sham" litigation against Smith & Nephew to prevent or to restrain it from entering the arthroscopic surgery market. FN2 Smith & Nephew appears to base this allegation on Judge Orrick's ruling that there were substantial questions concerning the validity of the '882 and '536 patents. In fact, Smith & Nephew particularly asserts that the "patent infringement action is objectively baseless in that no reasonable litigant could realistically expect success on the merits." (D.I. 219 at ¶ 36) Arthrocare argues in rebuttal that the jury's verdict in its favor on infringement and invalidity proves that the patent litigation was not a "sham."

> FN2. Arthrocare and Ethicon have a combined seventy-five percent share of the market in the United States for arthroscopic surgical devices. (D.I. 219 at ¶ 35)

A party who petitions the government for redress generally is immune from antitrust liability. *Eastern R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). Commonly referred to as the *Noerr-Pennington* doctrine, this immunity extends to persons who petition all types of government entities, including legislatures, administrative agencies, and courts. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). Although originally developed in the antitrust context, courts have applied this doctrine universally

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 896002 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

to business torts. *See Cheminor Drugs, Ltd. v. Ethyl Corp.,* 168 F.3d 119, 128-29 (3d Cir.1999) (applying the doctrine to common law claims of malicious prosecution, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition); *see also IGEN Int'l, Inc. v. Roche Diagnostics GmbH,* 335 F.3d 303, 310 (4th Cir.2003). Noerr-Pennington immunity, however, is subject to an exception for "sham" litigation. The Supreme Court has held that *Noerr-Pennington* immunity does not apply to petitions that are a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr,* 365 U.S. at 144. In this regard, the Supreme Court outlined a two-part definition for the term "sham litigation." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Ind.,* 508 U.S. 49 (1993). As an objective first part, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Id.* at 60. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, then the suit does not qualify as sham litigation and is immunized under the *Noerr-Pennington* doctrine. *Id.* In other words, the antitrust claim premised on the sham exception must fail. The subjective second part of the definition arises only if the challenged litigation is objectively meritless. In such case, the court must decide whether the "baseless lawsuit conceals 'an attempt to interfere directly with the business relationships of a competitor." ' *Id.* at 60-1.

*4 The court disagrees with Smith & Nephew and finds that Arthrocare instituted the patent litigation in a legitimate attempt to protect its patented inventions. The court rejects the notion that Judge Orrick's decision undermined Arthrocare's belief that its patents were valid, enforceable, and infringed by Smith & Nephew's Saphyre, ElectroBlade, and Control RF probes. Judge Orrick's opinion was based upon a partially developed record and was issued in response to Arthrocare's motion for a preliminary injunction. Under 35 U.S.C. § 282, a patent is presumed valid, and invalidity may be established only by clear and convincing evidence. *See* 35 U.S.C. § 282 (2003). Such is not the standard employed in a preliminary injunction proceeding.

Additionally, the court notes that in *Applera Corp. V. Micromass UK Ltd.,* 204 F.Supp.2d 724, 782 (D.Del.2002), antitrust counterclaims like those at bar were dismissed after a jury verdict of infringement and validity, based upon the reasoning that a jury verdict in plaintiff's favor proved the litigation had merit. Applying this reasoning to the instant case, the court likewise concludes that the objective threshold for "sham" litigation is not satisfied and that the *Noerr-Pennington* doctrine shields Arthrocare from liability for Smith & Nephew's antitrust counterclaims. Accordingly, the court grants Arthrocare's motion to dismiss Smith & Nephew's counterclaims.

V. CONCLUSION

For the reasons stated, the court grants Arthrocare's motions to dismiss Smith & Nephew's antitrust counterclaims. An order shall issue.

ORDER

At Wilmington, this 10th day of March, 2004, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that Arthrocare's motion to dismiss Smith & Nephew's antitrust counterclaims is granted. (D.I.429)

D.Del.,2004.
Arthrocare Corp. v. Smith & Nephew, Inc.
Not Reported in F.Supp.2d, 2004 WL 896002 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 22331340 (Trial Pleading) Preliminary Jury Instructions (May. 13, 2003)
• 2003 WL 22331339 (Trial Pleading) Charge to the Jury (May. 12, 2003)
• 2003 WL 22331341 (Trial Pleading) Joint Proposed Jury Instructions (May. 06, 2003)
• 1:01CV00504 (Docket) (Jul. 25, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.