IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGENIO, FILIALE DE LOTO-QUEBEC, INC., | ) ) ) | C.A. No. 04-1532 (KAJ) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | REDACTED VERSION |
| GAMELOGIC, INC. and SCIENTIFIC GAMES CORPORATION, | ) ) ) ) | |
| Defendants. | ) | |

**SCIENTIFIC GAMES' ANSWERING BRIEF IN OPPOSITION TO INGENIO'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT, AND ITS OPENING BRIEF IN SUPPORT OF ITS MOTION TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
   *Attorneys for Defendant*
   *Scientific Games Corporation*

Original Filing Date: November 30, 2005

Redacted Filing Date: December 6, 2005

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDING.......................................................... 1

SUMMARY OF ARGUMENT ......................................................................................... 2

STATEMENT OF FACTS ................................................................................................ 3

      A.     GameLogic's HomePlay Game ................................................................ 3

      B.     The Parties' Settlement Agreement .......................................................... 3

      C.     Ingenio's Proposed Amended Complaint ................................................. 7

ARGUMENT..................................................................................................................... 7

    I.    INGENIO'S CLAIMS AGAINST SCIENTIFIC GAMES SHOULD BE DISMISSED IN ACCORDANCE WITH THE PARTIES' SETTLEMENT AGREEMENT. ...................................................................... 7

    II.   INGENIO'S MOTION TO AMEND SHOULD BE DENIED IN ANY EVENT. ........................................................................................................ 9

          A.     Scientific Games' ScreenPlay Game Has Nothing To Do With GameLogic's HomePlay Game. ................................................... 10

          B.     Ingenio's Motion Is Untimely, And Will Prejudice Scientific Games. ................................................................................... 11

    III.  SCIENTIFIC GAMES SHOULD BE AWARDED ITS ATTORNEYS' FEES IN MOVING TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT AND IN OPPOSING INGENIO'S MOTION TO AMEND.................................................................................. 13

CONCLUSION ............................................................................................................... 14

## TABLE OF CITATIONS

Page(s)

### Cases

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ................................................................................................ 13

*Foman v. Davis*,
 371 U.S. 178 (1962) ............................................................................................... 12

*Green v. John H. Lewis & Co.*,
 436 F.2d 389 (3d Cir. 1970) .................................................................................... 8

*Gross v. Penn Mutual Life Ins. Co.*,
 396 F. Supp. 373 (E.D. Pa. 1975) ........................................................................... 9

*Hobbs & Co. v. Am. Investors Mgmt., Inc.*,
 576 F.2d 29 (3d Cir. 1978) ...................................................................................... 7

*Horton v. Flemings*,
 1989 WL 153399 (N.D. Ill. 1989) ......................................................................... 11

*In re Elonex Phase II Power Management Litigation*,
 2003 WL 21460391 (D. Del. 2003) ........................................................................ 8

*Interspiro USA, Inc. v. Figgie Int'l, Inc.*,
 815 F. Supp. 1488 (D. Del. 1993) ......................................................................... 14

*Liberate Techs. LLC v. Worldgate Communications, Inc.*,
 133 F. Supp. 2d 357 (D. Del. 2001) ........................................................................ 7

*Loppert v. Windsortech, Inc.*,
 865 A.2d 1282 (Del. Ch. 2004) ............................................................................... 8

*McCune v. First Judicial District of PA Probation Dep't*,
 99 F. Supp. 2d 565 (E.D. Pa. 2000) ........................................................................ 9

*McLean v. Scully*,
 1991 WL 274327 (S.D.N.Y. 1991) ....................................................................... 10

*Olmo v. State Ins. Fund of the Commonwealth of Puerto Rico*,
 206 F. Supp. 2d 226 (D.P.R. 2002) ......................................................................... 9

## TABLE OF CITATIONS (cont'd)

*Pennsylvania Coal Ass'n v. Babbitt*,
   63 F.3d 231 (3d Cir. 1995) ............................................................................ 7

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
   220 F.R.D. 415 (D. Del. 2004) ..................................................................... 11

*Tierman v. Devoe*,
   923 F.2d 1024 (3d Cir. 1991) ........................................................................ 7

*Wilcher v. City of Wilmington*,
   139 F.3d 366 (3d Cir. 1998) .......................................................................... 8

### STATUTES

Fed. R. Civ. P. 15(d) ............................................................................................ 9

Fed. R. Civ. P. 20 .............................................................................................. 10

1.

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Ingenio, Filiale de Loto-Quebec, Inc. ("Ingenio") filed this patent infringement action against GameLogic, Inc. ("GameLogic") and Scientific Games Corporation ("Scientific Games") on December 20, 2004 (D.I. 1). Ingenio alleged that GameLogic's HomePlay Lottery Game infringes U.S. Patent Nos. 5,569,082 and 5,709,603. Scientific Games answered Ingenio's Complaint on January 24, 2005 (D.I. 9).

REDACTED

Ingenio has now reneged on the parties' agreement. Instead of dismissing its claims against Scientific Games, Ingenio has moved to amend the Complaint to accuse a new

product of infringement.[1]  Ingenio filed its motion to amend on November 10, 2006 (D.I. 53) --ten days after the Court-ordered October 31 deadline for filing such motions (D.I. 26, ¶ 2).

REDACTED                              there has been no document production between Ingenio and Scientific Games to date, and no depositions have taken place.  Expert reports are due in less than two months, and all discovery must be completed by March 31, 2006 (D.I. 26, ¶ 3).

This is Scientific Games' Answering Brief In Opposition To Ingenio's Motion To Amend and its Opening Brief In Support Of Its Motion To Enforce The Parties Settlement Agreement.

## SUMMARY OF ARGUMENT

1. Ingenio's claims against Scientific Games should be dismissed in accordance with the parties' settlement agreement.

2. Ingenio's motion to amend should be denied.  Ingenio agreed to dismiss its claims against Scientific Games.  Moreover, Ingenio's new allegations concerning the ScreenPlay game are completely unrelated to GameLogic's HomePlay game, and do not belong in the same lawsuit.  Ingenio's motion is also untimely.

3. Scientific Games should be awarded its attorneys' fees in moving to enforce the parties' settlement agreement and in opposing Ingenio's motion to amend.

---

[1] The ScreenPlay product that Ingenio seeks to accuse of infringement is actually marketed and offered for sale by MDI Entertainment LLC ("MDI"), not Scientific Games Corporation.

## STATEMENT OF FACTS

A. <u>GameLogic's HomePlay Game</u>

REDACTED

Ingenio sued GameLogic and Scientific Games based solely on their relationship with respect to GameLogic's HomePlay game. *See* D.I. 1 at ¶¶ 8, 14; D.I. 54 at 1 ("[T]he dispute between Ingenio and Scientific Games focused on Scientific Games' involvement with GameLogic and the HomePlay offering that was the subject of the original Complaint in this action.").

REDACTED

B. <u>The Parties' Settlement Agreement</u>

REDACTED

On August 24, 2005, the parties participated in a mediation with Magistrate Judge Thynge. As a result of the mediation, Scientific Games and Ingenio reached a settlement.

REDACTED

REDACTED

---

[2]    Citations to "Saferin Decl." refer to the Declaration of Steve Saferin filed herewith.

[3]    Citations to "Smith Decl." refer to the Declaration of Rodger D. Smith II filed herewith.

REDACTED

REDACTED

REDACTED

      C.    Ingenio's Proposed Amended Complaint

REDACTED

ARGUMENT

I. INGENIO'S CLAIMS AGAINST SCIENTIFIC GAMES SHOULD BE DISMISSED IN ACCORDANCE WITH THE PARTIES' SETTLEMENT AGREEMENT.

The Court has jurisdiction to enforce a settlement agreement in a case pending before it. *See Hobbs & Co. v. Am. Investors Mgmt., Inc.*, 576 F.2d 29, 33 & n.7 (3d Cir. 1978). Where the parties plainly intended to settle their dispute, public policy and considerations of judicial economy strongly favor enforcing the parties' agreement. *See, e.g., Liberate Techs. LLC v. Worldgate Communications, Inc.*, 133 F. Supp. 2d 357, 358 (D. Del. 2001) ("This authority to enforce a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the avoidance of costly and time-consuming litigation.").

Because a motion to enforce a settlement agreement resembles a motion for summary judgment, courts employ a similar standard of review. *See Tierman v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania*

*Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). A court may summarily enforce a settlement agreement where there are no material, disputed facts. *See In re Elonex Phase II Power Management Litigation*, 2003 WL 21460391, at *1 (D. Del. 2003).

"An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970). "[W]here all the substantial terms of a contract have been agreed on . . . the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a *positive agreement* that it should not be binding until so reduced to writing and formally executed." *Loppert v. Windsortech, Inc.*, 865 A.2d 1282, 1287 (Del. Ch. 2004).[4]

The crucial inquiry is whether the parties reached definite agreement on all essential terms:

> [If] a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations[, then an agreement has been formed]. . . .

*Id.* at 1285.

A settlement agreement is binding once it has been made, even if one of the parties has a later change of heart:

---

[4]  REDACTED
    *See Wilcher v. City of Wilmington*, 139 F.3d 366, 372 (3d Cir. 1998) ("A settlement agreement is a contract and is interpreted according to local law.").

> All of the evidence points to one conclusion: counsel agreed on a settlement proposal, the parties thereafter accepted its terms, and each party gave counsel authority to settle the case. It is not clear what happened afterwards -- or why -- but it is clear that Rivera's post-settlement change of heart cannot alter the fact that the parties reached a binding settlement agreement.

*Olmo v. State Ins. Fund of the Commonwealth of Puerto Rico*, 206 F. Supp. 2d 226, 230-31 (D.P.R. 2002); *see also McCune v. First Judicial District of PA Probation Dep't*, 99 F. Supp. 2d 565, 566 (E.D. Pa. 2000) ("The Settlement Agreement is still binding, even if it is clear that a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing."); *Gross v. Penn Mutual Life Ins. Co.*, 396 F. Supp. 373, 375 (E.D. Pa. 1975) ("It is obvious that plaintiff had a change of heart between the time he agreed to the terms of settlement and when they were reduced to writing. . . . Here, plaintiff acted too late. The bargain had already been struck on his terms.").

REDACTED

The parties' settlement agreement should be enforced, and Ingenio's claims against Scientific Games should be dismissed in accordance with the parties' agreement.

II.  **INGENIO'S MOTION TO AMEND SHOULD BE DENIED IN ANY EVENT.**

Ingenio's motion to amend should be denied as moot in light of the parties' settlement agreement. Ingenio's motion also should be denied because MDI's ScreenPlay game is unrelated to GameLogic's HomePlay game, and Ingenio's new allegations (if added) would have to be severed from Ingenio's existing case concerning Gamelogic's HomePlay game in any

event. Finally, Ingenio's motion should be denied because it is untimely, and will prejudice Scientific Games.

### A. Scientific Games' ScreenPlay Game Has Nothing To Do With GameLogic's HomePlay Game.

Ingenio's motion to amend is in reality a motion to supplement under Fed. R. Civ. P. 15(d), because it seeks to add new allegations concerning events that happened since Ingenio filed its Complaint. *See* D.I. 54 at 1, 3, 5. A motion to supplement should be denied unless the new allegations bear some relationship to the subject matter of the original pleading. *See, e.g., McLean v. Scully*, 1991 WL 274327, at *1 (S.D.N.Y. 1991) ("'Rule 15(d) limits a supplemental pleading to the presentation of subsequent matter related to the claim or defense presented in the original pleading.'"); *Horton v. Flemings*, 1989 WL 153399, at *1 (N.D. Ill. 1989) (denying motion to supplement because "the allegations in the new counts relate only indirectly, if at all, to the allegations in the original Complaint.").

The subject matter of Ingenio's original Complaint was the alleged infringement by GameLogic's HomePlay game. Scientific Games was named as a defendant because, at the time, it was working with GameLogic to promote the HomePlay game.

REDACTED

The subject matter of Ingenio's new allegations – MDI's ScreenPlay game -- is not related in any way to GameLogic or the HomePlay game. In its motion to amend, Ingenio acknowledges that the ScreenPlay game is "separate and apart from [Scientific Games'] activities with GameLogic on the HomePlay product" (D.I. 54 at 2).

Even if Ingenio's new allegations concerning the ScreenPlay game were added to this case, they would have to be severed under Fed. R. Civ. P. 20 from Ingenio's allegations concerning GameLogic's HomePlay game, because "[a]llegations of infringement against two

unrelated parties based on different acts do not arise from the same transaction." *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 220 F.R.D. 415, 417 (D. Del. 2004) ("[T]he only connection between CMT and Hango is that they may have infringed the same patents owned by Philips, . . . which is an insufficient basis to join unrelated parties as defendants in the same lawsuit.").

> B. Ingenio's Motion Is Untimely, And Will Prejudice Scientific Games.

A motion to amend or supplement should be denied if the moving party acted with undue delay, bad faith or dilatory motive, or if the motion results in undue prejudice to the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Ingenio's motion to amend was filed on November 10 -- ten days after the Court-ordered October 31 deadline for filing such motions. Ingenio asks the Court to excuse its tardiness because it supposedly did not learn of the ScreenPlay game until "late October 2005, [when,] at an industry trade show, Ingenio representatives witnessed Scientific Games offering for sale another computer based lottery game called Screenplay" (D.I. 54 at 2). Ingenio claims that its infringement investigation was not complete until November, when it obtained a copy of an October 2005 *Public Gaming International* article (D.I. 54 at 2).

REDACTED

REDACTED

Moreover, the article that Ingenio cites reveals nothing more than what Ingenio already knew -- MDI was developing a new product:

> We need to continue to look for ways to develop lottery play on the Internet. We're developing a product we call Screenplay which allows a player to buy a lottery ticket at a brick and mortar retailer and go home and enter a code to reveal on the screen a predetermined result in some kind of a game play format. . . .

(D.I. 54, Ex. C). Ingenio's motion to amend should be denied as a result of Ingenio's delay in filing its motion.

Ingenio's motion to amend would also prejudice Scientific Games. Ingenio argues that there is "ample" time to pursue whatever additional discovery is necessary. In fact, expert reports are due in less than two months, and there has been no document productions by Ingenio or Scientific Games and no depositions to date. There is not sufficient time to take the requisite discovery concerning Ingenio's new infringement allegations.

13.

III. SCIENTIFIC GAMES SHOULD BE AWARDED ITS ATTORNEYS' FEES IN MOVING TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT AND IN OPPOSING INGENIO'S MOTION TO AMEND.

The Court has inherent discretionary power to award attorneys' fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation and citation omitted). This power serves the dual purpose of "vindicat[ing] the judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* at 46 (citation omitted). "[R]efusal to abide by the terms of a settlement agreement can constitute bad faith, entitling the wronged party to attorneys' fees." *Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 815 F. Supp. 1488, 1522 (D. Del. 1993) (citing *Hobbs*, 576 F.2d at 35-36 & n.18).

Scientific Games should be awarded its attorneys' fees in moving to enforce the parties' settlement agreement and in opposing Ingenio's motion to amend.

REDACTED

The parties settled their dispute, and Ingenio's claims against Scientific Games should have been dismissed. Ingenio should never have filed a motion to amend. Ingenio's refusal to abide by the terms of the parties' settlement agreement, Ingenio's filing of a motion to

amend, **REDACTED**

demonstrate Ingenio's bad faith. Scientific Games should be awarded its attorneys' fees in moving to enforce the parties' settlement agreement and in opposing Ingenio's motion to amend.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Ingenio's claims against Scientific Games in accordance with the parties' agreement. The Court should also deny Ingenio's motion to amend, and award Scientific Games its attorneys' fees in moving to enforce the settlement agreement and in opposing Ingenio's motion to amend.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Rodger D. Smith II

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Defendant*
  *Scientific Games Corporation*

Original Filing Date:  November 30, 2005

Redacted Filing Date:  December 6, 2005

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on December 6, 2005, I caused to be electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Edmond D. Johnson, Esquire
> The Bayard Firm
> 222 Delaware Avenue, Suite 900
> Wilmington, DE  19801
>
> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE  19801

I also certify that copies were caused to be served on December 6, 2005, upon the following in the manner indicated:

| BY HAND | BY FEDERAL EXPRESS |
|---|---|
| Edmond D. Johnson, Esquire<br>The Bayard Firm<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE  19801 | Brian M. Buroker, Esquire<br>Hunton & Williams LLP<br>1900 K Street, N.W., Suite 1200<br>Washington, DC  20006 |
| Richard L. Horwitz, Esquire<br>Potter Anderson & Corroon LLP<br>1313 N. Market Street<br>Wilmington, DE  19801 | Gary M. Hnath, Esquire<br>Bingham McCutchen LLP<br>1120 20th Street, N.W., Suite 800<br>Washington, DC  20036 |

> */s/ Rodger D. Smith II (#3778)*
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com