IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INGENIO, FILIALE DE LOTO-QUEBEC,
INC.

        Plaintiff,

v.                                                    Civil Action No. 04-1532 (KAJ)

GAMELOGIC, INC. AND                                   REDACTED VERSION
SCIENTIFIC GAMES CORPORATION

        Defendants.

**PLAINTIFF INGENIO'S OPPOSITION TO DEFENDANT SCIENTIFIC GAME'S MOTION TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT AND REPLY BRIEF IN FURTHER SUPPORT OF INGENIO'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

                                                      Edmond M. Johnson (No. 2257)
                                                      Thomas H. Kovach (No. 3964)
                                                      THE BAYARD FIRM
                                                      222 Delaware Avenue, Suite 900
                                                      Wilmington, DE 19801

OF COUNSEL:

Rodger L. Tate
Brian M. Buroker
Christopher J. Cuneo
Hunton & Williams LLP
1900 K Street, N.W.; Suite 1200
Washington, DC 20006
(T) (202) 955-1500
(F) (202) 778-2201

Original Filing Date: December 12, 2005

Redacted Filing Date: December 16, 2005

611195v1

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................1

II. STATEMENT OF FACTS .........................................................................................1

    A.    Scientific Games' Activities With GameLogic ................................................1

    B.    Ingenio's Mediation Efforts..............................................................................1

III. ARGUMENT ............................................................................................................5

    A.    Scientific Games' Motion To Enforce The Settlement Agreement Should Be Denied Because The Parties Never Agreed To Settle. .............................5

    B.    Any Oral Agreement To Settle Should Not Be Enforced...............................5

        1.    Express Reservation.................................................................................6

        2.    Partial Performance..................................................................................6

        3.    Terms Remaining To Be Negotiated .......................................................7

        4.    Type of Agreement That Is Usually Reduced To A Writing.......................7

        5.    The Factors Weigh Against Enforcing An Oral Agreement........................8

    C.    Scientific Games Misrepresentations During Negotiations Prevent The Enforcement Of The Alleged Settlement Agreement.............................8

    D.    Ingenio's Motion To Amend The Complaint Should Be Granted............................9

        1.    It Is Not Clear That ScreenPlay Is Not Related To HomePlay....................9

        2.    Ingenio's Motion Will Not Prejudice Either Defendant...........................10

        3.    Ingenio Did Not Unduly Delay Filing Its Motion ......................................11

    E.    Scientific Games Should Not Be Awarded Its Attorney's Fees In Moving To Enforce The Alleged Settlement Agreement.......................................11

IV. CONCLUSION.........................................................................................................12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Sorensen v. Consolidated Rail Corp.*,
  992 F.Supp. 146 (N.D.N.Y. 1998)..................................................................6, 7

*United States v. Beebe*,
  180 U.S. 343 (1901).............................................................................................5

## STATE CASES

*Loppert v. Windsortech, Inc.*,
  865 A.2d 1282 (Del. Ch. 2004)............................................................................5

## DOCKETED CASES

*Turchi v. Salaman, et al.*,
  Del. Ch., C.A. No. 11,268 (May 14, 1990), 1990 W.L. 27531 ..................8, 9

## FEDERAL STATUTES

6 Del. C § 2714 ..............................................................................................................7

Fed. R. Civ. P. 11 ..........................................................................................................4

Fed. R. Civ. P. 20 ..........................................................................................................9

Fed. R. Civ. P. 60(b) .....................................................................................................1

Plaintiff Ingenio, Filiale de Loto-Quebec, Inc. ("Ingenio") requests that the Court deny Defendant Scientific Games Corporation, ("Scientific Games") Motion To Enforce The Parties' Settlement Agreement and respectfully submits this Reply In Further Support of Ingenio's Motion For Leave To File A First Amended Complaint.

## I.  INTRODUCTION

Scientific Games' Motion To Enforce The Parties Settlement Agreement should be denied because, as the facts show, there never was an agreement to settle the case. Furthermore, to the extent that the Court finds any statements made during negotiations binding upon the parties, Ingenio respectfully requests relief under Federal Rule of Civil Procedure 60(b), or other appropriate relief, due to the mistake, misrepresentation, and/or bad faith of Scientific Games during the negotiations that would render any alleged settlement unjust.

In addition, Ingenio respectfully request that the Court grant its Motion For Leave To File An Amended First Complaint as neither Defendant has shown a basis for denial.

## II.  STATEMENT OF FACTS

### A.  Scientific Games' Activities With GameLogic

In 2004, GameLogic, Inc., ("GameLogic") and Scientific Games announced a joint-venture to develop, among other things, GameLogic's HomePlay game. *See* Ex. A. Their joint effort to market HomePlay precipitated this suit. Apparently, Scientific Games decided to part ways with GameLogic in May of 2005. *See* D.I. 62 at p. 3. Scientific Games justified walking away from GameLogic because "Scientific Games and GameLogic never signed a definitive agreement." *Id.*

### B.  Ingenio's Mediation Efforts

On August 24, 2005, the parties participated in a mediation with Magistrate Judge Thynge.                    **REDACTED**

1

**REDACTED**

Negotiations continued and on September 1, 2005, counsel for Scientific Games inquired as to the status of Ingenio's proposal. *See* D.I. 65 at Ex. A.  In recognition of the fact that the authority to settle lies with the client, Ingenio's counsel promptly responded that a draft proposal was ready, but would not be sent until the client had approved. *See* D.I. 65 at Ex. B.  Later that same day, after receiving Ingenio's approval a proposal for settlement was forwarded to counsel for Scientific Games. *Id.* at Ex. C.

---

[1] Citations to "Rajotte Decl." refer to the Declaration of Nathalie Rajotte filed herewith.

Scientific Games countered with its own proposal for settlement on September 7, 2005. *Id.* at Ex. D. Scientific Games' counter-proposal contained substantive changes to paragraph 7 regarding its future products. *See* D.I. 62 at p.5 and D.I. 65 at Ex. D.

**REDACTED**

Counsel for Ingenio provided another proposed settlement agreement on September 13, 2005.

**REDACTED**

However, Ingenio counsel indicated that agreement had not been reached on paragraph 7 and forwarded another proposal. *See* D.I. 65 at Ex. E.

That same day, September 13, 2005, counsel for Scientific Games called counsel for Ingenio to indicate their acceptance of Ingenio counsel's most recent draft language. *See* D.I. 65 at ¶ 7. Ingenio counsel then agreed to try to obtain the client's approval for the settlement and exchange signature pages. *Id.*

On September 15, 2005, Ingenio counsel indicated to Scientific Games counsel that he had, as yet, been unable to obtain approval for the proposed settlement agreement. *Id.* at Ex. H. At that same time several decision makers for Ingenio were out of the office and unavailable. Ms. Roiter was at the NASPL conference in Minneapolis. *See* D.I. 64 at ¶ 4. Ms. Rajotte was out of the office due to a personal medical issue[2]. Rajotte Decl., ¶¶ 8-9.

Ms. Rajotte was informed that, at the NASPL conference, Scientific Games had exhibited a new product, "ScreenPlay,"            **REDACTED**

---

[2] Mr. Saferin mistakenly believed that Ms. Rajotte was in attendance at the NASPL conference. *See* D.I. 64 at ¶ 4. She was not. Rajotte Decl., ¶ 8.

Because the ScreenPlay product description Ingenio had been given was strikingly similar to the HomePlay product, Ingenio decided to hold off on the proposed settlement. Ingenio counsel then initiated an investigation under Fed. R. Civ. P. 11 to determine whether the ScreenPlay product infringed the patents-in-suit. Rajotte Decl., ¶ 12.

On September 20, 2005, Scientific Games, indicating that they knew agreement had not been reached, emailed counsel for Ingenio to find out "where things stand." *See* D.I. 65 at Ex. H. On September 21, 2005, counsel for Scientific Games called counsel for Ingenio to find out the status of the settlement proposal. *Id.* On September 23, 2005, Scientific Games again inquired about the status of the settlement proposal. *Id.*

On September 29, 2005, counsel for Ingenio called counsel for Scientific Games to explain why Ingenio would not agreed to the proposed settlement. *See* D.I. 65 at ¶ 11.

**REDACTED**

*Id.* In an attempt to further the negotiations, counsel for Ingenio recommended a telephone conference to work out and understanding of what each party understood "future products" to encompass. *Id.* That conference never occurred.

On October 31, 2005, Ingenio counsel received a copy of "Public Gaming International," October 2005 edition. *See* D.I. 53 at Ex. C. Based on statements attributed in the article to Mr. Saferin, Ingenio's counsel made a good faith determination, pursuant to Rule 11, that the ScreenPlay product infringes the claims of the patents-in-suit. Ingenio filed its Motion To Amend The Complaint after receipt of Scientific Games' letter refusing consent. *See* D.I. 65 at ¶ 14.

III. **ARGUMENT**

    A. **Scientific Games' Motion To Enforce The Settlement Agreement Should Be Denied Because The Parties Never Agreed To Settle.**

It is clear that the decision to settle a case is the client's alone. *United States v. Beebe*, 180 U.S. 343, 350-53 (1901). Scientific Games knew throughout the negotiation process that Ingenio counsel needed the client's approval of any settlement. *See, e.g.*, D.I. 65 at Ex. B. Therefore, it is no surprise that even after Ingenio counsel indicated "we appear to be in agreement on everything except paragraph 7" (D.I. 65 at Ex. E), Scientific Games continued to behave in a manner that indicated they knew Ingenio needed to approve the settlement offer. For example, emailing Ingenio's counsel on September 20 to find out "where things stand," calling on September 21 to find out the status of the settlement proposal, and emailing again on September 23 to inquire about the status of the settlement proposal all indicate that Scientific Games was anxiously waiting for Ingenio to respond to the proposed settlement. *See* D.I. 65 at Ex. H. Clearly, Scientific Games did not think that settlement had been reached on September 13, 2005. Ingenio never overtly manifested assent to enter into agreement. Without overt manifestation of assent, no contract was formed. *Loppert v. Windsortech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004).

    B. **Any Oral Agreement To Settle Should Not Be Enforced**

Even if the Court finds that the parties had an oral agreement to settle, it should not be enforced. Other courts have been guided by the following consideration when deciding to enforce such an oral agreement:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Sorensen v. Consolidated Rail Corp.*, 992 F. Supp. 146, 150 (N.D.N.Y. 1998).

      1.      Express Reservation

The September 13, 2005, version of the proposed settlement agreement indicates an expressed intent of the parties to only be bound by a written document.

**REDACTED**

Clearly, the parties demonstrated an express reservation not to be bound in the absence of a written, signed document.

      2.      Partial Performance

The performance required by the Agreement is as follows.

**REDACTED**

Ingenio also submits that, under its understanding of Agreement, paragraph 7, Scientific Games has also failed to perform its obligations under the alleged contract.

**REDACTED**

Therefore, Ingenio contends that Scientific Games' has not performed under the alleged contract either.

    3.    Terms Remaining To Be Negotiated

As indicated by counsel for Ingenio, there appeared to be agreement except for paragraph 7. *See* D.I. 65 at Ex. E. However, Scientific Games subsequent actions demonstrate that the parties also did not agree on what future products were implicated by the Agreement.

    4.    Type of Agreement That Is Usually Reduced To A Writing

Most settlement agreements are committed to writing. *Sorensen*, 992 F. Supp. at 150. In fact in patent cases, such as this one, where the agreement is to be in place for a number of years during the enforceable term of the patent, the Delaware Statute of Frauds requires that the agreement be in writing. *See* 6 Del. C § 2714 ("[n]o action shall be brought to charge upon …

---

[3] Scientific Games contends that MDI Entertainment LLC ("MDI") is the entity that actually markets and offers for sale the ScreenPlay game. *See* D.I. 62 at p. 2, n. 1. However, as admitted by Mr. Saferin to this Court, MDI is a subsidiary of Scientific Games. *See* D.I. 64 at ¶ 1. In addition, Mr. Saferin stated in an interview with "Public Gaming International" that MDI and Scientific Games have "merged." *"Public Gaming I'ntl."* at p. 16. Furthermore, Mr. Saferin is listed as CEO and President of MDI as well as President of Scientific Games Ventures. *Id.* at p. 14 and D.I. 64 at 1. Ingenio submits that the artifice of corporate naming and ownership cannot be used to shield Scienific Games from infringement liability.

any agreement that is not to be performed within the space of one year from the making thereof"). Thus, it is reasonable to conclude that the settlement agreement is the type of agreement that is usually reduced to a writing.

### 5. The Factors Weigh Against Enforcing An Oral Agreement

In summation, (1) the parties evinced an express reservation to be bound only by a writing, (2) there has been no performance per the alleged contract, (3) the parties do not agree upon all of the terms in the contract and (4) this type of settlement agreement is usually committed to a writing. Therefore, all four factors weigh against enforcing the alleged oral agreement.

### C. Scientific Games Misrepresentations During Negotiations Prevent The Enforcement Of The Alleged Settlement Agreement

Scientific Games alleges that the alleged settlement agreement is binding because definite agreement had been reached. *See* D.I. 62 at p. 9. However, even if the Court finds that agreement had been reached, "[a] contract is voidable when one party induces the other to contract by making a fraudulent or material misrepresentation upon which the other party justifiably relies." *Turchi v. Salaman, et al.*, Del. Ch., C.A. No. 11,268 (May 14, 1990), 1990 W.L. 27531.

**REDACTED**

**REDACTED**

However, on September 13, 2005, the same day that Scientific Games purportedly signed the agreement, Scientific Games was at the NASPL conference offering to sell a game that, by its own description, operates in the same manner as the HomePlay game. *See* D.I. 65 at Ex. F and D.I. 64 at ¶ 4. Clearly, Scientific Games intended to conceal this products introduction all along and almost succeeded except that Ingenio personnel attended the same conference and discovered the ScreenPlay product.

Therefore, even if agreement had been reached, as alleged, Scientific Games' misrepresentations and bad faith during negotiation render any such agreement void. *See Turchi* at *4.

    D.    **Ingenio's Motion To Amend The Complaint Should Be Granted**

        1.    It Is Not Clear That ScreenPlay Is Not Related To HomePlay

Scientific Games alleges that "[the] ScreenPlay Game -- is not related in anyway to GameLogic or the HomePlay game." D.I. 62 at p. 10. However, given that GameLogic and Scientific Games partnered to develop the HomePlay game and now Scientific Games allegedly has its own game that operates in the same manner, additional discovery should be allowed before a determination that the two games are not related in anyway.

Contrary to Scientific Games' assertion, it is also not clear that Ingenio's allegations would have to be severed under Fed. R. Civ. P. 20. Ingenio is not making allegations of infringement against "two unrelated parties." GameLogic and Scientific Games are connected at least by their publicly announced joint-venture. They are also joint-venture partners that now

have identical products on the market. Therefore it is at best inaccurate to claim that there is no connection between Defendants or Defendants' products.

Furthermore, offers for sale and other on-sale activities occurred during the active period of the GameLogic - Scientific Games joint venture. Therefore, Scientific Games will have to answer, in the instant action, for its involvement during that active period whether or not they have a current relationship with GameLogic. It is in the interest of judicial economy to decide the question of willful infringement for the closely related ScreenPlay product in the present action.

    2.  Ingenio's Motion Will Not Prejudice Either Defendant

GameLogic admits that it will not be prejudiced at all by Ingenio's Motion To Amend The Complaint. D.I. 66 at p. 2 ("[t]he substance of Ingenio's proposed amendment - is admittedly an issue between Ingenio and Scientific Games.")

Scientific Games alleges that the 10 days that elapsed from the day when Ingenio could have amended the Complaint as a matter of right will result in prejudice against Scientific Games. D.I. 62 at p. 11-12. Scientific Games stated reason for the alleged prejudice is that "[t]here is not sufficient time to take requisite discovery concerning Ingenio's new infringement allegations." *Id.* at p. 12. However, Scientific Games, in the previous sentence, admits that neither party has produced documents or taken any depositions to date. *Id.* Of course, the fact that no documents have been produce nor depositions taken is because the parties mutually agreed to hold these actions in abeyance while pursuing settlement negotiations. Therefore, both parties are similarly situated and, thus, there is no prejudice. Ingenio believes that more than sufficient time exists to allow full and complete discovery. Indeed, given the fact that neither GameLogic or Scientific Games has made any sales, the issues will be focused on infringement, validity and willfulness.

### 3. Ingenio Did Not Unduly Delay Filing Its Motion

Scientific Games alleges that Ingenio's Motion should be denied because of Ingenio's undue delay. *Id.* at p. 11. To support its charge of undue delay, Scientific Games states that Ingenio knew "no later than September 7 that Scientific Games reserved the right to introduce products that were unrelated to GameLogic." *Id.*

**REDACTED**

Moreover, Ingenio had no basis to initiate suit based on unspecified speculative products.

Scientific Games is correct that Ingenio saw a demonstration of the ScreenPlay game at the NASPL conference in September (Ingenio's reference to "late October 2005" was in error). However, that demonstration was made to Ingenio's business people, not to a qualified patent attorney. As explained above, and in its Motion, Ingenio's counsel did not receive sufficient evidence of the ScreenPlay product until October 31 when counsel received a copy of "Public Gaming International" and could independently verify the operation of the ScreenPlay game. Ingenio respectfully submits that it did not unduly delay in filing its Motion.

### E. Scientific Games Should Not Be Awarded Its Attorney's Fees In Moving To Enforce The Alleged Settlement Agreement

As demonstrated above, Scientific Games' allegation of a settlement between parties is without merit. Ingenio never agreed to the settlement as demonstrated by its refusal to sign the agreement. Furthermore, even if an oral agreement can be construed, such an agreement should not be binding on Ingenio due to Scientific Games bad-faith and misrepresentations during negotiations. The Court should deny Scientific Games request for Attorney's fees.

IV. **CONCLUSION**

The Court should deny Scientific Games' Motion To Enforce The Parties' Settlement Agreement and grant Ingenio's Motion For Leave To File A First Amended Complaint. As demonstrated above, the parties never had a definite settlement agreement and any oral agreement should not be enforced or should be void for Scientific Games' misrepresentations during negotiations.

The proposed amended complaint will not delay the conduct of this action, and neither Defendant will suffer any unfair prejudice. In addition, judicial economy will be served by allowing the question of willful infringement for the ScreenPlay embodiment to be decided in connection with this same action.

| | |
|---|---|
| Original Filing Date: December 12, 2005 | Respectfully submitted, |
| Redacted Filing Date: December 16, 2005 | |
| | THE BAYARD FIRM |
| | /s/ Thomas H. Kovach<br>Edmond M. Johnson (No. 2257)<br>Thomas H. Kovach (No. 3964)<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE 19801<br>ejohnson@bayardfirm.com<br>tkovach@bayardfirm.com<br>(302) 655-5000<br>Attorneys for Ingenio, Filiale De Loto Quebec, Inc. |

OF COUNSEL:

Rodger L. Tate
Brian M. Buroker
Christopher J. Cuneo
Hunton & Williams LLP
1900 K Street, N.W.; Suite 1200
Washington, DC 20006
(202) 955-1500

611936v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

    I, Thomas Kovach, hereby certify that on the 16th day of December, 2005, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available to viewing and downloading from CM/ECF:

| | |
|---|---|
| Richard L. Horwitz | Jack B. Blumenfeld |
| David E. Moore | Rodger D. Smith |
| Hercules Plaza, 6th Floor | Morris Nichols Arsht & Tunnell |
| 1313 N. Market Street | Chase Manhattan Centre, 18th Floor |
| Wilmington, DE 19899-0951 | 1201 North Market Street |
| | PO Box 1347 |
| | Wilmington, DE 19899-1347 |

    I hereby also certify that on December 16, 2005, I have sent the foregoing document to the above local counsel by hand delivery and to the following non-registered participants via Federal Express:

Gary Hnath, Esq.
Susan Baker Manning, Esq.
Bingham McCutchen LLP
Suite 800
1120 20th Street, NW
Washington, DC 20036

                              By:   /s/ Thomas H. Kovach
                                    Edmond M. Johnson (No. 2257)
                                    Thomas H. Kovach (No. 3964)
                                    The Bayard Firm
                                    222 Delaware Avenue, Suite 900
                                    Wilmington, DE 19801