## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGENIO, FILIALE DE LOTO-QUEBEC, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1532 (KAJ) |
| | ) | |
| GAMELOGIC, INC. | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

## DEFENDANT GAMELOGIC, INC.'S OPENING BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

*Attorneys for Defendant*
*GameLogic, Inc*

Gary M. Hnath
Susan Baker Manning
Goutam Patnaik
Timothy A Molino
BINGHAM MCCUTCHEN LLP
2020 K Street NW
Washington, DC 20006
(202) 373-6000

Dated: May 1, 2006
Public Version Dated: May 8, 2006

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     NATURE AND STAGE OF THE PROCEEDING........................................... 2

III.    SUMMARY OF ARGUMENT ...................................................................... 3

IV.     STATEMENT OF FACTS ............................................................................. 3

        A.    The Patents-in-Suit............................................................................ 3

        B.    The Accused HomePlay Lottery™ game suite................................... 4

              1.    HomePlay Lottery™ Access Codes......................................... 5

              2.    HomePlay's Interactive Games Do Not Have Outcomes
                    Determined By The Code ....................................................... 6

V.      THE APPLICABLE LAW JUSTIFIES SUMMARY JUDGMENT OF
        NON-INFRINGEMENT................................................................................ 10

        A.    The Summary Judgment Standard .................................................... 10

        B.    The Non-Infringement Analysis ....................................................... 11

              1.    Claim Construction Standards ............................................... 12

              2.    Comparison of the Properly Construed Claims to the
                    Accused Products................................................................... 12

                    a.    Literal Infringement ..................................................... 12

                    b.    The Doctrine of Equivalents ......................................... 12

VI.     GAMELOGIC'S PRODUCTS DO NOT INFRINGE ANY CLAIM OF
        THE '082 OR '603 PATENTS...................................................................... 14

        A.    Construction of Relevant Terms ....................................................... 14

        B.    GameLogic's Products Do Not Infringe the Patents-in-Suit ............. 14

              1.    Gamelogic Does Not Infringe Any Claim Of The Patents-
                    In-Suit Because The Access Code In Gamelogic's
                    Homeplay Product Includes No Data Indicating Whether
                    The Player Wins Or Loses The Lottery Game And An
                    Amusement Game, The Data Being Unrecognizable To
                    The Player, Such That The Player Does Not Know Whether
                    The Player Will Win Or Lose The Game Prior To Play Of
                    The Amusement Game ........................................................... 15

                    a.    GameLogic's HomePlay Lottery™ Product Does
                          Not Literally Infringe .................................................. 15

                    b.    GameLogic Does Not Infringe Under the Doctrine
                          of Equivalents ............................................................. 18

i.      Ingenio is Estopped From Asserting the Doctrine of Equivalents for the Limitation: A Code Which Includes Data Indicating Whether the Player Wins or Loses the Amusement Game and the Lottery Game Where the Data is Unrecognizable to the Player ...........................................................................18

ii.     Applying The Doctrine Of Equivalents To The HomePlay Product Access Code Would Improperly Vitiate A Claim Limitation .................................18

2.   GameLogic's Product Does Not Have An Amusement Game Where The Processor Controls Whether The Player Will Win Or Lose The Amusement Game Based Upon The Code ......................................................................... 20

a.   GameLogic Does Not Literally Infringe...................... 20

b.   GameLogic Does Not Infringe Under the Doctrine of Equivalents. ....................................................... 22

i      Ingenio is Also Estopped from Asserting the Doctrine of Equivalents Because of Amendments Made During Prosecution............. 22

ii     Applying The Doctrine Of Equivalents To The HomePlay Product Would Improperly Vitiate A Claim Limitation ............................ 23

VII.   CONCLUSION....................................................................... 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002) ........................................................................................13

*Freedman Seating Co. v. American Seating Co.*,
    420 F.3d 1350 (Fed. Cir. 2005) ........................................................14, 19, 23

*Gart v. Logitech, Inc.*,
    254 F.3d 1334 (Fed. Cir. 2001) ....................................................................12

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997) ......................................................................11

*Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*,
    285 F.3d 1046 (Fed. Cir. 2002) ....................................................................13

*Kent v. Pittsburgh Press Co.*,
    349 F.Supp. 622 (W.D. Pa. 1972) ................................................................11

*Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*,
    873 F.2d 1422 (Fed. Cir. 1989) ....................................................................13

*Litton Systems, Inc. v. Honeywell Inc.*,
    238 F.3d 1376 (Fed. Cir. 2001) ....................................................................23

*Lockheed Martin Corp. v. Space System/Loral, Inc.*,
    324 F.3d 1308 (Fed. Cir. 2003) ........................................................14, 19, 23

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ......................12, 14

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................11

*Maxwell v. J. Baker, Inc.*,
    86 F.3d 1098 (Fed. Cir. 1996) ......................................................................13

*Nike, Inc. v. Wolverine World Wide, Inc.*,
    43 F.3d 644 (Fed Cir. 1994) ........................................................................................................10

*Pennwalt Corp. v. Durland-Wayland, Inc.*,
    833 F.2d 931 (Fed. Cir. 1987) ....................................................................................................13

*Ratner v. Young*,
    465 F.Supp. 386 (D.V.I. 1979) ..................................................................................................11

*Sage Products, Inc. v. Devon Industrial, Inc.*,
    126 F.3d 1420 (Fed. Cir. 1997) ..................................................................................................13

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ....................................................................................................12

*Teleflex, Inc. v. Ficosa N. America Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ............................................................................................12, 14

*The Standard Oil Co. v. American Cyanimid Co.*,
    774 F.2d 448 (Fed. Cir. 1985) ..............................................................................................18, 19

*Unidynamics Corp. v. Automatic Products, International, Ltd.*,
    157 F.3d 1311 (Fed. Cir. 1998) ..................................................................................................13

*Warner-Jenkinson v. Hilton David Chemical Co.*,
    520 U.S. 17 (1996) ............................................................................................................12, 13, 14

## FEDERAL STATUTES

35 U.S.C. §112 ..............................................................................................................................23

Fed. R. Civ. P. 56 (c) ....................................................................................................................10

Fed. R. Civ. P. 56 (e) ....................................................................................................................11

## I.    INTRODUCTION

Plaintiff accuses GameLogic, Inc. of infringing two patents that simply do not apply to GameLogic's products. GameLogic's proposed HomePlay Lottery™ product does not infringe the patents-in-suit because there are, at least, two claim limitations missing from the HomePlay Lottery™ product both literally and under the doctrine of equivalents.

Plaintiff asserts U.S. Patent No. 5,569,082 ("the '082 patent") and U.S. Patent No. 5,709,603 ("the '603 patent") that cover lottery gaming products that allow a player to obtain a gaming piece such as a ticket or token that includes data as to whether the player wins or loses the lottery game and an amusement game. The code must be encrypted. To make that lottery more interesting for the player, the overall game has a separate "amusement game" that the player plays for entertainment prior to learning the results of the lottery game. The common specification distinguishes between the amusement game and the revealing of the lottery game results (sometimes referred to as the "actualization game" or the "actual game"). The asserted claims require that the outcome of *both* the lottery game and an amusement game must be determined by data in the code on the game piece.

GameLogic's products do not infringe any of the asserted claims because GameLogic's products do not have either:

1)    a code that includes data indicating win/loss information which is encrypted; or

2)    an amusement game where the outcome of the amusement game is determined by the win/loss data contained in the code.

Given that there is no dispute as to the operation of the accused products, this case is ripe for summary judgment. GameLogic, therefore, respectfully requests summary judgment of non-infringement in its favor.

## II.    NATURE AND STAGE OF THE PROCEEDING

Plaintiff Ingenio, Filiale de Loto-Quebec, Inc. filed suit on December 20, 2004, accusing defendants GameLogic, Inc. and Scientific Games Corporation of willfully infringing the '082 and '603 patents. D.I. 1. Ingenio specifically accused GameLogic's[1] HomePlay Lottery™ product of infringing the patents-in-suit. GameLogic and Scientific Games both timely answered, denying any infringement and further asserting the affirmative defenses of invalidity, unenforceability and estoppel. D.I. 11, Answer of Defendant GameLogic, Inc. at ¶¶ 34-41; D.I. 9, Answer of Defendant Scientific Games Corp. at ¶¶ 32-39.[2] Ingenio and Scientific Games have stipulated to a dismissal of Scientific Games from this lawsuit. D.I. 87.

Both fact and expert discovery have closed. In accordance with this Court's scheduling order, GameLogic now moves for summary judgment and simultaneously serves its Opening Brief On Claim Construction, which is incorporated herein by reference.

---

[1] GameLogic has developed the HomePlay Lottery™ game engine and content. Exh. 1 hereto, Hardy Decl. ¶3

[2] On March 8, 2005, GameLogic moved for summary judgment of noninfringement. At Ingenio's request, the Court denied the motion without prejudice because discovery had not been completed. D.I. 89.

## III.    SUMMARY OF ARGUMENT

GameLogic does not infringe any claim of the '082 or '603 patents, either literally or under the doctrine of equivalents. Ingenio asserts infringement of claims 1, 4, 6, 8-10, 13, 15 and 16 of the '082 patent and claim 1 of the '603 patent. The accused HomePlay Lottery™ product does not include, at least, the following required steps or elements of the asserted independent claims:

1)    a gaming piece have a code which includes data indicating whether the player wins or loses the lottery game and an amusement game where the data is unrecognizable to the player; or

2)    an amusement game where the outcome of the amusement game is determined by the code on the gaming piece.

Summary judgment is appropriate if the Court finds that GameLogic's product fails to satisfy either one of these limitations. This is because both of these limitations are found in each of the asserted independent claims.

No disputed facts exist with regard to the two limitations discussed in this motion. Both parties agree as to the operation of the accused product. The dispute is only one of claim construction.

## IV.    STATEMENT OF FACTS

### A.    The Patents-in-Suit

The two asserted patents are closely related. The '603 patent is a continuation-in-part of the '082 patent, and both are entitled "Personal Computer Lottery Game." *See* Joint Appendix ("JA") A, '603 patent at Col. 1, lines 2-7. A detailed description of the patents-in-suit and their prosecution histories may be found in GameLogic's Opening Brief on Claim Construction, which is incorporated by reference.

3

**B.    The Accused HomePlay Lottery™ game suite**

GameLogic has developed HomePlay Lottery™, a suite of lottery-related interactive games. Exh. 1, Hardy Decl. ¶3. ████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

HomePlay Lottery™ is a fixed-odds game of chance, much like a traditional state-sponsored lottery. Exh. 1, Hardy Decl. ¶5. The primary difference between HomePlay Lottery™ and a more traditional lottery is that HomePlay Lottery™ allows, but does not require, lottery ticket purchasers to play one or more interactive games via the internet prior to learning whether the ticket is a winner or not. Exh. 1, Hardy Decl. ¶6. The play of the interactive games in the HomePlay Lottery™ system does not affect the results of the lottery in any way. Exh. 1, Hardy Decl. ¶7. Whether the player wins the lottery, and how much he or she wins, is predetermined and entirely unrelated to how well or how poorly the player plays the interactive games. Exh. 1, Hardy Decl. ¶8. The interactive games are simply a way of entertaining the player before the actual results of the lottery are revealed to the ticket purchaser. Exh. 1, Hardy Decl. ¶9.

The basic steps of playing the HomePlay Lottery™ are:

- the player buys a paper ticket from a lottery vendor (such as a convenience store or other location where lottery products are sold);
- the player logs onto the HomePlay Lottery™ website by entering an access code printed on the paper ticket;
- the player selects and plays one or more interactive games where the player's skill helps determine the outcome of the game[3];

---

[3] The parties have agreed to use the Prize Reel Blackjack game as an exemplary interactive game for purposes of all briefing in this case. Exh. 6 hereto.

4

- after playing the Prize Reel Blackjack game, the HomePlay product then reveals whether the player won or lost the lottery; and
- if the lottery ticket is a winner, the player presents the winning paper ticket to a lottery vendor in order to redeem the prize.

Exh. 1, Hardy Decl. ¶10.

### 1.    HomePlay Lottery™ Access Codes

The access code allows a player to enter the HomePlay Lottery™ website and play one or more entertaining interactive games before learning whether he or she has a winning lottery ticket. Exh. 1, Hardy Decl. ¶11. In other words, the access code is a sequence of characters used as a login code which the player enters to gain access to the HomePlay Lottery™ website. Exh. 1, Hardy Decl. ¶12. The access code is very different from the type of code required by the claims of the patents.

HomePlay Lottery™ access codes are 16 characters long and include both letters and numbers. Exh. 1, Hardy Decl. ¶13.



### 2. HomePlay's Interactive Games Do Not Have Outcomes Determined By The Code

In order to play one or more HomePlay Lottery™ games, a user must visit an internet website using his or her computer. Exh. 1, Hardy Decl. ¶28. The HomePlay Lottery™ internet homepage welcomes a player to HomePlay Lottery™, describes some of the available games, and presents a "Click to Enter HomePlay™" button. Exh. 1,

Hardy Decl. ¶29. By clicking this button, the player opens the HomePlay Lottery™ login window, pictured below. Exh. 1, Hardy Decl. ¶30.

[INTENTIONALLY LEFT BLANK]



Fig 2—HomePlay Lottery™ login screen

To log into the HomePlay Lottery™ website, a player would enter the access code in the appropriate field of the login screen, click both the age verification and terms and conditions check boxes, and then click the "Submit" button. Exh. 1, Hardy Decl. ¶31. If the access code is validated, the player's web browser will then present the player with a menu of one or more interactive games. Exh. 1, Hardy Decl. ¶32.

[INTENTIONALLY LEFT BLANK]

# REDACTED

To date, GameLogic has completed development of several games. Exh. 1, Hardy Decl. ¶33. Ingenio and GameLogic have stipulated that Prize Reel Blackjack is an exemplary model for GameLogic's games for purposes of this case. Exh. 6. If the player selects Prize Reel Blackjack, the player is given the opportunity to play a traditional game of blackjack. Exh. 1, Hardy Decl. ¶34. Neither the play nor the outcome of the blackjack game is in any way included in the access code. Exh. 1, Hardy Decl. ¶35. Nor is the play or outcome of the blackjack game determined or indicated in any way by the access code. Exh. 1, Hardy Decl. ¶36. Instead, the outcome of the game is determined by the random cards dealt and the player's decisions, or skill, just as in a real blackjack game. Exh. 1, Hardy Decl. ¶37.

# REDACTED

_____

For each hand of blackjack the player wins, he or she receives one token to be used in the prize, or reveal round. Exh. 1, Hardy Decl. ¶38. After the final hand of the blackjack game, the player goes to the reveal round which is modeled on a slot machine, or prize reel. Exh. 1, Hardy Decl. ¶39. The tokens acquired from playing blackjack represent chances to spin the prize reel. Exh. 1, Hardy Decl. ¶40. ███████████

██████████████████████████████████████████████████████

The player clicks the "spin" button to spin the slot machine reels. Exh. 1, Hardy Decl. ¶42. The result of the prize reel spin(s) reveals the payout (if any) of the actual lottery ticket. Exh. 1, Hardy Decl. ¶43.

## V.    THE APPLICABLE LAW JUSTIFIES SUMMARY JUDGMENT OF NON-INFRINGEMENT.

### A.    The Summary Judgment Standard.

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." _Nike, Inc. v. Wolverine World Wide, Inc._, 43 F.3d 644, 646 (Fed. Cir. 1994). _See also_ Fed. R. Civ. P. 56(c). The issue of infringement is especially susceptible to summary judgment when facts pertaining to the operation of the accused device are

undisputed, because then infringement is purely a question of law. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978 (Fed. Cir. 1997).

Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Thus, a court may grant summary judgment when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256. The factual dispute claimed by the non-moving party must be "material" and the dispute over it "genuine." *Anderson*, 447 U.S. at 248. A "material" issue is one that affects the outcome of the suit; a dispute is "genuine" only if it could reasonably be resolved in favor of either party. *Id.* at 255. Unsupported allegations or conjecture are insufficient to raise a genuine issue of material fact. *Id.* at 248. Therefore, to defeat this summary judgment motion, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Courts can, and regularly do, grant summary judgment where the facts are clear. Summary judgment serves the important function of avoiding long and expensive litigation "productive of nothing." *Ratner v. Young*, 465 F. Supp. 386, 393 (D.V.I. 1979); *Kent v. Pittsburgh Press Co.*, 349 F. Supp. 622, 625 (W.D. Pa. 1972).

### B.     The Non-Infringement Analysis.

Infringement "is properly decided upon summary judgment when no reasonable jury could find that every limitation recited in the properly construed claim either is or is

11

not found in the accused device either literally or under the doctrine of equivalents."
*Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001). A determination of patent
infringement entails a two-step analysis: (1) the asserted claims of the patent must be
properly construed to determine their meaning and scope, and (2) the claims as properly
construed must be compared to the allegedly infringing device. *Markman v. Westview
Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370
(1996).

### 1. Claim Construction Standards.

Claim construction is an issue of law for the Court to decide. *Markman*, 52 F.3d
at 970-971. As discussed above, GameLogic's claim construction position is set forth in
its claim construction briefing, which is incorporated by reference.

### 2. Comparison of the Properly Construed Claims to the Accused Products.

#### a. Literal Infringement.

Once a claim is properly construed, it must be compared to the accused device.
*Markman*, 52 F.3d at 976. An accused device can only be found to infringe a claim
directly if the device embodies each and every limitation of that claim, either literally or
by a substantial equivalent. *Warner-Jenkinson*, 520 U.S. 17, 29 (1996); *Teleflex, Inc. v.
Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002). Literal infringement occurs
when every element of a patent claim is met "exactly" in the accused device or process.
*Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

#### b. The Doctrine of Equivalents.

When the accused product does not literally include every element of a claim, but
the elements of the product differ only insubstantially from those claimed, the claim may
be infringed under the doctrine of equivalents. The doctrine of equivalents is applied on
an element-by-element basis, not to the invention as a whole. *Warner-Jenkinson Co.*,

520 U.S. at 29; *Unidynamics Corp. v. Automatic Products, Int'l, Ltd.*, 157 F.3d 1311,

1322 (Fed. Cir. 1998). An element may be present under the doctrine of equivalents, for

example, if it performs substantially the same function in substantially the same way to

achieve substantially the same result as the claimed element. *Pennwalt Corp. v.*

*Durland-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987). *See also, e.g., Sage Prods.,*

*Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424-25 (Fed. Cir. 1997) (a claim element is

equivalently present in an accused device if only "insubstantial differences distinguish

the missing claim element from the corresponding aspects of the accused device.").

A patentee may not recapture disclosed but unclaimed subject matter through the

doctrine of equivalents. *Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*,

285 F.3d 1046, 1054 (Fed. Cir. 2002); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 39

USPQ2d 1001 (Fed. Cir. 1996). Even when a claim is entitled to some range of

equivalents, a court may not use the doctrine of equivalents to erase structural and

functional limitations of the claims on which the public is entitled to rely in avoiding

infringement. *Lear Siegler, Inc. v. Sealy Mattress Co. of Mich., Inc.*, 873 F.2d 1422,

1425 (Fed. Cir. 1989).

Courts presume that the doctrine of equivalents does not apply where, as here, the

patentee made a limiting amendment during the prosecution of the patent. *Festo Corp. v.*

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002) ("Estoppel arises

when an amendment is made to secure allowance of the patent and the amendment

narrows the patent's scope."); *Warner-Jenkinson*, 520 U.S. at 33 (prosecution history

estoppel bars the application of the doctrine of equivalents to a claim element that was

added by amendment for reasons related to patentability). It is the patentee's burden to

show otherwise. *Festo Corp.*, 535 U.S. at 740 ("The patentee, as the author of the claim

language, may be expected to draft claims encompassing readily known equivalents. A

13

patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim.").

In addition, a theory of equivalents that vitiates a claim limitation is improper. "[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim[ed] element,' then the court should rule that there is no infringement under the doctrine of equivalents." *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005), quoting *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

## VI.   GAMELOGIC'S PRODUCTS DO NOT INFRINGE ANY CLAIM OF THE '082 OR '603 PATENTS

### A.   Construction of Relevant Terms

The first step of the infringement analysis is to construe the relevant claim terms. Rather than repeat its claim construction arguments in this memorandum, GameLogic refers the Court to its briefing on claim construction which is being filed simultaneously with the briefing on this motion.

### B.   GameLogic's Products Do Not Infringe the Patents-in-Suit

The second step of the infringement analysis is to compare the properly construed claims to the accused device. *Markman*, 52 F.3d at 976. An accused device infringes a claim only if it embodies each and every limitation of that claim, either literally or by a substantial equivalent. *Warner-Jenkinson*, 520 U.S. at 29; *Teleflex*, 299 F.3d at 1323. GameLogic's products do not include every limitation of any claim. GameLogic does not, therefore, infringe any of the asserted claims of the '082 and '603 patents.

14

1. **GameLogic does not infringe any claim of the patents-in-suit because the access code in GameLogic's HomePlay product includes no data indicating whether the player wins or loses the lottery game and an amusement game, the data being unrecognizable to the player, such that the player does not know whether the player will win or lose the game prior to play of the amusement game**

GameLogic's proposed interpretation of this claim limitation is fully discussed in GameLogic's briefing on claim construction. Under GameLogic's proposed interpretation, GameLogic's HomePlay Lottery™ product does not contain this limitation, either literally or under the doctrine of equivalents.

a. **GameLogic's HomePlay Lottery™ Product Does Not Literally Infringe**



As discussed in GameLogic's briefing on claim interpretation, this limitation requires win/loss data to be contained within the code contained on a gaming piece.



15



Exh. 3 hereto, Bertram Dep. at pg. 207, line 19 - pg. 208, line 7.  This admission
demonstrates why summary judgment in favor of GameLogic is appropriate.

Below is a diagram of the embodiment from Cohen about which Dr. Bertram
testified, as well as a diagram showing the GameLogic System.[4]  Exh. 4 hereto, U.S.
Patent No. 5,373,440 to Cohen *et al.* at Col. 5, line 66 - Col 6, line 1; Col. 11, line 67 -
Col. 12, line 2;  Exh. 1, Hardy Decl. ¶48.  The diagram shows that Cohen has a ticket
with a unique code that is then associated with win/loss information.

---

[4]  Note that the GameLogic access code actually contains 16 random characters.

## Embodiment from Cohen



### GameLogic System

REDACTED



Exh. 2 hereto, Grimes Dep. p. 224, lines 4-6. (emphasis added). Such an admission also requires summary judgment of no literal infringement.

        **b.**    **GameLogic Does Not Infringe Under the Doctrine of Equivalents.**

            **i**    **Ingenio is Estopped From Asserting the Doctrine of Equivalents for the Limitation: A Code Which Includes Data Indicating Whether the Player Wins or Loses the Amusement Game and the Lottery Game Where the Data is Unrecognizable to the Player.**

As discussed in GameLogic's briefing on claim construction, the applicant of the patents-in-suit made limiting statements to overcome the rejection based on the prior art, including the Clapper, Jr. reference. When a patentee limits the interpretation of claim terms by making an argument to distinguish over prior art, the prosecution history limits the patentee from recapturing this subject matter. *The Standard Oil Co. v. American Cyanimid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

During prosecution, the patentee clearly distinguished between *data* containing information that determines win or loss (as in the claimed invention) and data containing indicia or a *reference to data* containing information that determines win or loss that is located elsewhere (as in Clapper, Jr.). JA Exh. C at IN001406; Exh. 5 hereto. The access code of the GameLogic system is merely a reference to data containing

18

information contained elsewhere that determines a win or loss. Exh. 1, Hardy Decl. ¶49.
It is improper for the patentee to recapture now what he disclaimed during prosecution.
*Standard Oil*, 774 F.2d at 448. Thus, summary judgment of no infringement under the
doctrine of equivalents is appropriate as a matter of law.

### ii.  Applying The Doctrine Of Equivalents To The HomePlay Product Access Code Would Improperly Vitiate A Claim Limitation

Another reason why there can be no infringement under the doctrine of
equivalents is because a finding that the HomePlay access code infringes under the
doctrine of equivalents would entirely vitiate the claim limitation "a code which includes
data indicating whether the player wins or loses the lottery game and an amusement
game, the data being unrecognizable to the player." A theory of equivalents that vitiates
a claim limitation is improper as a matter of law. *Freedman Seating Co. v. American
Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005), quoting *Lockheed Martin Corp. v.
Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003).

The access code of the HomePlay product is the exact opposite of the claimed
code of the asserted patents.



Thus, it is clear that summary judgment is appropriate as to this limitation, both
literally and under the doctrine of equivalents.

19

2.     **GameLogic's Product Does Not Have An
Amusement Game Where The Processor
Controls Whether The Player Will Win Or Lose
The Amusement Game Based Upon The Code**

The asserted claims require an amusement game where the outcome of the

amusement game is determined by the code. The Prize Reel Blackjack (which the parties

stipulate is illustrative of GameLogic's suite of games) contains a blackjack game where

the outcome of the blackjack game is determined entirely by the player's skill and the

randomness of the cards - not the access code. Exh. 1, Hardy Decl. ¶53. After the player

plays the blackjack game, the actual result of the lottery ticket is displayed using graphics

(i.e., the slot pull on a "prize wheel"). Exh. 1, Hardy Decl. ¶54-58.

The dispute between the parties is whether the "amusement game" required by the

claims covers the combination of the blackjack game and also the pleasing method of

revealing the lottery game in the HomePlay system. Exh. 2, Grimes Dep. at page 156,

lines 7-19. Under the correct interpretation of the claim language, however, the

amusement game cannot be both the game of skill and part of the lottery game that

reveals the lottery prize. As discussed in GameLogic's claim construction briefing,

Plaintiff's proposed interpretation of this limitation ignores the claim language, the

specification, and the prosecution history. It is driven purely by a litigation-induced

claim construction.

a.     **GameLogic Does Not Literally Infringe**

The '082 patent at column 5, line 59 discloses, in one embodiment, an on-line

system where a player acquires a game piece containing a destiny code. JA Exh. A at

'082 patent at Col. 5, line 59. Once the destiny code is entered into the computer, the

player plays an amusement game. *Id.* at Col 6, lines 7-9. The player plays the

amusement game and wins fictitious awards. *Id.* at Col. 6, lines 9-10. The claims require

that although the amusement game might appear to be a skill game, the outcome of the

amusement game must be "based upon the code entered by the player." *Id.* at Claim 1.

20

When the amusement game is finished, the player plays what the patent calls "an actualization game." *Id* at Col. 6, lines 11-16. The actualization game uses the fictitious awards in a manner that gives the appearance that the awards have value in the actualization game. *Id* at Col. 6, lines 12-16. "The actualization game then displays in some interesting and exciting fashion the game's outcome that was concealed by the destiny code." JA A, Col. 6, lines 16-18. Thus, the patent clearly distinguishes between the amusement game and the actualization game.

In Prize Reel Blackjack, the player plays three hands of blackjack. Exh. 1, Hardy Decl. ¶52. The outcome of each hand of blackjack is based on the player's skill -- not the access code. Exh. 1, Hardy Decl. ¶53. After each winning hand, the player receives a token, which is a fictitious award to be used in the reveal part of the experience. Exh. 1, Hardy Decl. ¶54. Once the player finishes playing the hands of blackjack (analogous to the "amusement game" in the patents), the player inserts the tokens into a slot machine and the actual prize of the lottery game is displayed (analogous to the "amusement game" in the patents). Exh. 1, Hardy Decl. ¶55. The tokens acquired from playing blackjack represent how many times the player will be able to spin the prize reel. Exh. 1, Hardy Decl. ¶56. ███████████████████████████████████████████

███████████████

Plaintiff argues that the amusement game in Prize Wheel Blackjack is the combination of both the blackjack game and also when the actual prize is revealed. Exh. 2, Grimes Dep. at pg. 156, lines 7-19. To make this argument, however, the Plaintiff completely ignores its own patents, which make a clear distinction between two types of games: 1) an amusement game and 2) an actualization game, with the amusement game being played first. JA Exh. A, Col. 6, lines 7-10. The specification clearly states that after playing the amusement game, "[t]he *actualization game* then displays in some interesting and exciting fashion the game's outcome that was concealed in the Destiny

Code." JA Exh. A, the '082 patent at Col. 6, lines 15-17 (emphasis added). Thus, the patent distinguishes between the amusement game and the actualization game. This is very similar to the GameLogic system where the player plays blackjack and then the player spins the slot machine to reveal the result of the lottery ticket.

The claim language clearly requires that code must indicate whether the player wins or loses both the lottery game and an amusement game. In GameLogic's Prize Wheel Blackjack, the outcome of the amusement game (as properly construed) is based on the player's skill and the random draw of the cards, and is not in any way determined by the code entered by the player. This is a fundamental difference between the claims and GameLogic's HomePlay products, as illustrated by Prize Wheel Blackjack. Therefore, GameLogic's products do not infringe any of the asserted claims of the patents in suit.

**b.    GameLogic Does Not Infringe Under the Doctrine of Equivalents.**

**i    Ingenio is Also Estopped from Asserting the Doctrine of Equivalents Because of Amendments Made During Prosecution**

Ingenio is estopped from asserting the doctrine of equivalents because of amendments made during the prosecution of the patents-in-suit. One of the original limitations applied for by the patentee was "controlling by the processor the outcome of *the game* of chance played by the player based upon the code entered by the player." The examiner amended this limitation during prosecution to include both "the processor controlling whether the player will win or lose *the amusement game* based upon the code." (emphasis added). JA C at IN001409-1415; IN001398; IN001393. The examiner also made a similar narrowing amendment by adding the term "lottery game and an amusement" prior to "game" in the limitation which now reads "a code which includes

22

data indicating whether the player wins or loses *the lottery game and an amusement game*." JA Exh. C, at IN001393-94. These amendments were made to overcome patentability rejections based on both the prior art and 35 U.S.C. §112. *Id.* The amendments also narrowed the scope of the claim as they redefined "the game" as being "the amusement game."

The Federal Circuit has held that "a narrowing amendment made for any reason related to the statutory requirements for a patent will give rise to prosecution history estoppel with respect to the amended claim element." *Litton Systems, Inc. v. Honeywell Inc.*, 238 F.3d 1376, 1380 (Fed. Cir. 2001). In *Litton*, the patentee amended the limitation "ion beam source" to read "Kaufman-type ion beam source" in direct response to a 35 U.S.C. §112, ¶2 rejection. *Id.* The patentee was barred as a matter of law from asserting that the accused devices met the "Kaufman-type ion beam" limitation under the doctrine of equivalents. *Id.*

The patentee achieved the same result in the present case with the addition of "amusement" to the originally claimed "game." Therefore, Ingenio is estopped from asserting the doctrine of equivalents with regard to the limitation that the processor controls whether the player will win or lose the amusement game based upon the code.

    **ii  Applying The Doctrine Of Equivalents To The HomePlay Product Would Improperly Vitiate A Claim Limitation**

The blackjack game of the HomePlay game system is not an equivalent to the amusement game of the asserted claims. Applying the doctrine of equivalents would improperly vitiate a claim limitation. See *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005), quoting *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003). The asserted claims require that the outcome of the amusement game must be determined by the code on the gaming

23

piece, not by the player's skill. The outcome of GameLogic's blackjack game is not determined by GameLogic's access code. The outcome of GameLogic's blackjack game is determined by the player's choices and the random cards that are dealt. Exh. 1, Hardy Decl. ¶58. A finding that GameLogic's blackjack game is an equivalent to the amusement game of the asserted claims would entirely vitiate the limitation that the outcome of the amusement game must be "based upon the code entered by the player." Thus, there can be no infringement under the doctrine of equivalents of this claim limitation.

## VII.    CONCLUSION

The accused GameLogic products do not include each and every limitation of any claim of the '082 or '603 patents. There are no genuinely disputed material facts; the products work the way they work, and they do not work in the way covered by the patents-in-suit. GameLogic does not infringe the '082 and '603 patents as a matter of law, and summary judgment is appropriate. GameLogic therefore respectfully requests an Order granting Summary Judgment of Non-Infringement of the '082 and '603 patents.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Gary M. Hnath
Susan Baker Manning
Goutam Patnaik
Timothy A Molino
BINGHAM MCCUTCHEN LLP
2020 K Street, NW, Suite 1100
Washington, DC 20006
Tel: (202) 373-6050

Dated: May 1, 2006
Public Version Dated: May 8, 2006
731228 / 28749

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE 19899-0951
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant GameLogic Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 8, 2006, the attached document as

hand delivered to the following persons and was electronically filed with the Clerk of the

Court using CM/ECF which will send notification of such filing(s) to the following and

the document is available for viewing and downloading from CM/ECF:

Edmond D. Johnson
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899


I hereby certify that on May 8, 2006, I have Electronically Mailed the documents

to the following non-registered participants:

Rodger L. Tate
Brian M. Buroker
Christopher J. Cuneo
Hunton & Williams LLP
1900 K Street, N.W., Suite 1200
Washington, DC  20006
rtate@hunton.com
bburoker@hunton.com
ccuneo@hunton.com

By:  /s/ David E. Moore
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware  19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

672965