| PRESIDING JUDGE<br>Kent A. Jordon | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz |
|---|---|---|---|---|---|
| TRIAL DATE(S)<br>November 6, 2006 | | | COURT REPORTER | | COURTROOM DEPUTY |
| PLF No. | DEF. NO | Date Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES |
| | 26. | | | | Plaintiff Ingenio, Filiale De Loto-Quebec, Inc.'s Objections and Responses to Defendant GameLogic, Inc.'s First Set of Requests for Admissions--Dated March 31, 2006; pursuant to Local Rule 16.4(d)(6), GameLogic designates the following Requests for Admissions and their corresponding responses: 4, 6, 8, 14,16, 17, 20, 22, 23, 26, 36 |
| | 27. | | | | Withdrawn |
| | 28. | | | | Withdrawn |
| | 29. | | | | Complaint for Declaratory Judgment of Patent Non-Infringement--October 13, 2006 GL02659-GL02666 |
| | 30. | | | | Withdrawn |
| | 31. | | | | Notification of transmittal of the international search report or the declaration----HIGHLY CONFIDENTIAL--Korn 30 PK000957-PK000963 |
| | 32. | | | | Manual of Patent Examining Procedure, Revision July 1997--Korn 33 |
| | 33. | | | | Manual of Patent Examining Procedure, Revision July 1996--Korn 34 |
| | 34. | | | | Manual of Patent Examining Procedure, Revision September 1995--Korn 35 |
| | 35. | | | | Manual of Patent Examining Procedure, Sixth Edition, January 1995--Korn 36 |
| | 36. | | | | Letter from Mr. Buroker to Dr. Bertram, 4/2/04--HIGHLY CONFIDENTIAL--Bertram 84 IN006278-IN006280 |
| | 37. | | | | Invoice, 2/24/06--HIGHLY CONFIDENTIAL--Bertram 85 IN006267-IN006268 |
| | 38. | | | | U.S. Patent No. 6,537,150 B1, Luciano, *et al.*, :Gaming Devices Having Reverse-Mapping Game Set."--Bertram 88 |

| PRESIDING JUDGE<br>Kent A. Jordon | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz | |
|---|---|---|---|---|---|
| TRIAL DATE(S)<br>November 6, 2006 | | COURT REPORTER | | COURTROOM DEPUTY | |
| PLF<br>No. | DEF<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES |
| | 39. | | | | Various paper related to USPN 5,569,082---<br>HIGHLY CONFIDENTIAL--Korn 28<br>PK001018-PK001110<br>PK003106-PK003122 |
| | 40. | | | | General appointment of agent or common<br>representative--Korn 29<br>PK002837-PK002841 |
| | 41. | | | | 08/418,011 Transmittal of Formal Drawings-<br>-Korn 13<br>IN001381-IN001391 |
| | 42. | | | | 5,569,082 Change of Address--Korn 14<br>IN001380 |
| | 43. | | | | 08/418,011 Notice of Allow ability--Korn 15<br>IN001392-IN001397 |
| | 44. | | | | Patent Application Fee Determination<br>Record--Korn 16<br>IN001378-IN001379 |
| | 45. | | | | Cover sheet for USPN 5,709,603 File<br>History--Korn 17<br>IN001265 |
| | 46. | | | | 5,709,603 File History Excerpts--Korn 18<br>IN001372-IN001376 |
| | 47. | | | | 08/738,317 File History--Korn 19<br>IN001309-IN001371 |
| | 48. | | | | 08/738,317 Change of Address--Korn 20<br>IN001308 |
| | 49. | | | | 08/738,317 Information Disclosure<br>IN001301-IN001307Statement--Korn 21 |
| | 50. | | | | 08/738,317 Office Action Summary--Korn 22<br>IN001295-IN001300 |
| | 51. | | | | 08/738,317 Amendment-Korn 23<br>IN001291-IN001294 |
| | 52. | | | | 08/738,317 Notice of Allow ability--Korn 24<br>IN001289-IN001290 |
| | 53. | | | | 08/738,317 Transmittal of Formal Drawings--<br>Korn 25<br>IN00271-IN001288 |

| PRESIDING JUDGE Kent A. Jordon | | | PLAINTIFF'S ATTORNEY Edmond D. Johnson | | DEFENDANT'S ATTORNEY Richard D. Horwitz |
| --- | --- | --- | --- | --- | --- |
| TRIAL DATE(S) November 6, 2006 | | | COURT REPORTER | | COURTROOM DEPUTY |
| PLF No. | DEF. NO | Date Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES |
| | 54. | | | | 5,709,603 Change of Address--Korn 26 IN001270 |
| | 55. | | | | PTO Utility Grant--Korn 27 IN001266-IN001269 |
| | 56. | | | | Invoices and Engagement Agreement-- HIGHLY CONFIDENTIAL--Grimes 6 IN006281-IN006286 |
| | 57. | | | | Cover page of File History '082--Korn 3 IN001377 |
| | 58. | | | | Pair Search on 08/418,011 Application-Korn 4 |
| | 59. | | | | File history for '082--Korn 5 IN001471-IN001474 |
| | 60. | | | | Application number 08/418,011--Korn 6 IN001425-IN001470 |
| | 61. | | | | Transmittal of Verified Statement--Korn 7 IN001420-IN001422 |
| | 62. | | | | Information Disclosure Statement for Serial No. 08/418,011--Korn 8 IN001423-IN001424 |
| | 63. | | | | 08/418,011 Examiner's Action--Korn 9 IN001408-IN001419 |
| | 64. | | | | 08/418,011 Amendment or Serial No. 08/418,011--Korn 10 IN001400-IN001407 |
| | 65. | | | | Examiner Interview Summary Record--Korn 11 IN001399 |
| | 66. | | | | Examiner Interview Summary Record--Korn 12 IN001398 |
| | 67. | | | | Letter to F B Rice & Co from Raymond Chao Examiner of Patents, Sub-Section Re: Examiner's First Report on Patent Application No. 53617/96--HIGHLY CONFIDENTIAL--Kaye 34 PK00581 |

| PRESIDING JUDGE<br>Kent A. Jordon | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz | |
| TRIAL DATE(S)<br>November 6, 2006 | | COURT REPORTER | | COURTROOM DEPUTY | |
| PLF<br>No. | DEF.<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES |
| | 68. | | | | PCT/US96/03320 Application (Notification of Transmittal of International Preliminary Examination Report)--HIGHLY CONFIDENTIAL--Kaye 31 PK00015-PK00030 |
| | 69. | | | | 12/12/95 Letter to P. Kaye from E. Donahue Re: Idea--HIGHLY CONFIDENTIAL--Kaye 15 PK001158-PK001161 |
| | 70. | | | | 3/4/99 Letter to Perry Kaye from Andrew Cohen Re: Definitions of "Charitable Lottery Games" and "Promotional" Games--HIGHLY CONFIDENTIAL--Kaye 21 IN001204-IN001218 |
| | 71. | | | | Assignment Agreement between Perry Kaye and Ingenio, Filiale De Loto-Quebec Inc.,--HIGHLY CONFIDENTIAL--Kaye 22 IN001037-IN001045 |
| | 72. | | | | **REDACTED** |
| | 73. | | | | Consulting Agreement--CONFIDENTIAL--Kaye 24 IN001239-IN001242 |
| | 74. | | | | WO 96/31832 Application --HIGHLY CONFIDENTIAL--Kaye 30 PK000914-PK000968 |
| | 75. | | | | Win Ware Perry Kaye Gizmo Enterprise, Inc.--HIGHLY CONFIDENTIAL--Kaye 1 PK002845-PK002857 |
| | 76. | | | | Winware Perry Kaye Gizmo Enterprise, Inc.--HIGHLY CONFIDENTIAL--Kaye 2 PK003333-PK003341 |
| | 77. | | | | WinWare the Worlds First Interactive Multimedia Lottery Ticket--Kaye 5 PK003736-PK003742 |

| PRESIDING JUDGE | | | PLAINTIFF'S ATTORNEY | | DEFENDANT'S ATTORNEY |
|---|---|---|---|---|---|
| Kent A. Jordan | | | Edmond D. Johnson | | Richard D. Horwitz |
| **TRIAL DATE(S)** | | | **COURT REPORTER** | | **COURTROOM DEPUTY** |
| November 6, 2006 | | | | | |

| PLF No. | DEF NO | Date Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| | 78. | | | | **REDACTED** |
| | 79. | | | | Handwritten Notes--HIGHLY CONFIDENTIAL--Kaye 7 PK002649-PK002683 |
| | 80. | | | | 11/12/04 Letter to Rodger Tate from John Anastasi Re: Letter dated October 29, 2004--Kane 4 GL02707 |
| | 81. | | | | **REDACTED** |
| | 82. | | | | SG Term Sheet Version 1.1/February 6, 2005--HIGHLY CONFIDENTIAL--Kane 10 GL06273-GL06280 |
| | 83. | | | | **REDACTED** |
| | 84. | | | | GameLogic Summary Financials--HIGHLY CONFIDENTIAL--Kane 14 GL05328 |
| | 85. | | | | Letter of Intent Between GameLogic and Scientific Games International, Inc., September 28, 2004--HIGHLY CONFIDENTIAL--Kane 15 GL05744-GL05750 |
| | 86. | | | | **REDACTED** |
| | 87. | | | | **REDACTED** |

| PRESIDING JUDGE<br>Kent A. Jordon | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz | |
|---|---|---|---|---|---|---|
| TRIAL DATE(S)<br>November 6, 2006 | | | COURT REPORTER | | COURTROOM DEPUTY | |
| PLF<br>No. | DEF<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES | |
| | 88. | | | | **REDACTED** | |
| | 89. | | | | Defendant GameLogic Inc.'s Notice of 30(B)(6) of Plaintiff Ingenio, Filiale De Loto-Quebec, Inc--Dated January 27, 2006 | |
| | 90. | | | | Defendant GameLogic Inc.'s Notice of 30(B)(6) of Plaintiff Ingenio, Filiale De Loto-Quebec, Inc--Dated January 30, 2006 | |
| | 91. | | | | **REDACTED** | |
| | 92. | | | | **REDACTED** | |
| | 93. | | | | Email to N. Rajotte from M. Lessard Re: 02-07-15 Urgent-Visit to Connecticut Munitions Pour Répondre à Frank Candido--HIGHLY CONFIDENTIAL IN000449-IN000451 | |
| | 94. | | | | Blumenthal Richard, Connecticut Attorney General, Attorney General's Opinion, March 12, 2003--HIGHLY CONFIDENTIAL IN000721-IN000725 | |
| | 95. | | | | PrizeReel BlackJack--HIGHLY CONFIDENTIAL GL06892 | |
| | 96. | | | | Chris Brandin - Curriculum Vitae | |

2.    Ingenio objects to GameLogic's exhibits by using the letter codes listed in the "Objection" column of the attached chart corresponding to each of the exhibits listed in GameLogic's Trial Exhibit List. Notwithstanding the attached objections, Ingenio reserves the

right to object to any exhibit offered by GameLogic, depending on the particular use, manner in and purpose for which it is proffered at trial. The Federal Rule of Evidence in support of each objection is listed with its letter code. The letter codes used have the following meanings:

A     Requires authentication before admission into evidence. (Rule 901(a))

Arg    Argumentative. (Rule 403)

B     Not the best evidence. Not an accurate duplicate of the originals. (Rule 1002)

C     Needless presentation of cumulative evidence; duplicated exhibit. (Rule 403)

D     Not produced by GameLogic during discovery although requested by Ingenio. (F.R.C.P. 25, F.R.E. 403)

H     Hearsay if offered for the truth of the matter asserted. (Rules 801 and 802)

I     Incomplete testimony or document. (Rule 106, 403)

L     Illegible, at least in part, and therefore unfairly prejudicial, confusing, inaccurate or misleading to the jury. (Rule 403)

M     Multiple documents. (Rules 901 and 1003)

ML    Subject to a Motion in Limine

NP    Not previously produced to Ingenio. (F.R.C.P. 26, F.R.E. 403)

NT    Exhibit was not timely provided to Ingenio. (Rule 403)

R     Not relevant; probative value is outweighed by prejudice. (Rule 402/403)

S     Offer or discussion for settlement or compromise. (Rule 408)

F     Not disclosed in GameLogic's interrogatory answers. (Rule 403)

U     Unfairly prejudicial, confusing, inaccurate or misleading to the jury. (Rule 403)

| PRESIDING JUDGE<br>Kent A. Jordon | | | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz |
|---|---|---|---|---|---|---|
| TRIAL DATE(S)<br>November 6, 2006 | | | | | COURT REPORTER | COURTROOM DEPUTY |
| PLF No. | DEF. NO | Date Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES | OBJECTIONS |
| | 1. | | | | U.S. Patent No. 5,373,440, Cohen, *et al.*, "Promotional Game Method and Apparatus Therefor."--Korn 31; Bertram 93<br>GL00345-GL00398 | |
| | 2. | | | | U.S. Patent No. 5,324,035, Morris, *et al.*, "Video Gaming System with Fixed Pool of Winning Plays and Global Pool Access."<br>GL05474-GL05512 | |
| | 3. | | | | WO 91/06931 --Korn 32; Grimes 5<br>GL00668-GL00680 | |
| | 4. | | | | U.S. Patent No. 5,377,975, Clapper, "Electronic Gaming Apparatus and Method."--Bertram 90<br>GL00334-GL00344 | |
| | 5. | | | | U.S. Patent No. 4,922,522, Scanlon, "Telecommunications Access to Lottery Systems."<br>GL05346-GL05354 | |
| | 6. | | | | U.S. Patent No. 4,494,197, Troy, *et al*, "Automatic Lottery System."<br>GL05355-GL05378 | |
| | 7. | | | | U.S. Patent No. 4,689,742, Troy, *et al*, "Automatic Lottery System."<br>GL00843-GL0863 | |
| | 8. | | | | U.S. Patent No. 5,586,937, Menashe, "Interactive, Computerized Gaming System With Remote Terminals."<br>GL05391-GL5398 | |

| PRESIDING JUDGE<br>Kent A. Jordan | | | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz |
|---|---|---|---|---|---|---|
| TRIAL DATE(S)<br>November 6, 2006 | | | | COURT REPORTER | | COURTROOM DEPUTY |
| PLF<br>No. | DEF.<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND<br>WITNESSES | OBJECTIONS |
| | **9.** | | | | U.S. Patent No. 5,348,299, Clapper, "Electronic Gaming Apparatus."<br>GL00326-GL00333 | |
| | **10.** | | | | U.S. Patent No. 4,882,473, Bergeron, *et al*, "On-Line Wagering System with Programmable Game Entry Cards and Operator Security Cards."<br>GL00308-GL00319 | |
| | **11.** | | | | U.S. Patent No. 4,582,324, Koza, *et al*, "Illusion of Skill Game Machine for a Gaming System."<br>GL00752-GL00771 | |
| | **12.** | | | | Answer of Defendant GameLogic, Inc.--Dated May 16, 2005 | M |
| | **13.** | | | | Withdrawn | |
| | **14.** | | | | Withdrawn | |
| | **15.** | | | | Withdrawn | |
| | **16.** | | | | Withdrawn | R, U, H, Arg, I |
| | **17.** | | | | "Betting on Video Lottery Terminals to Raise Revenue," House Research Report Organization, Texas House of Representatives, Focus Report, March 5, 2004.<br>GL05379-GL05390 | R, A, H |
| | **18.** | | | | Thomson, Sue, "What are the Odds?: Understanding the Risks," Powerhouse Museum, 2004<br>GL05399-GL05441 | R, U, H |
| | **19.** | | | | U.S. Patent No. 5,042,809, Richardson, "Computerized Gaming Device."<br>GL05442-GL05460 | |

| PRESIDING JUDGE<br>Kent A. Jordon | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz | |
| TRIAL DATE(S)<br>November 6, 2006 | | | COURT REPORTER | | COURTROOM DEPUTY | |
| PLF<br>No | DEF.<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND<br>WITNESSES | OBJECTIONS |
| | 20. | | | | U.S. Patent No. 4,856,787, Itkis, "Concurrent Game Network." GL05461-GL05473 | |
| | 21. | | | | Garner, Bryan, ed. "Black's Law Dictionary," 8th ed., West Thomson, 2004. GL05521-GL05524 | R, U, Arg |
| | 22. | | | | McKechnie, Jean, ed. "Webster's New Twentieth Century Dictionary of the English Language: Unabridged," 2nd ed., Prentice Hall Press, 1983. GL05513-GL05520 | R, U, Arg |
| | 23. | | | | **REDACTED** | R, U, ML, Arg, A, H |
| | 24. | | | | Withdrawn | |
| | 25. | | | | Withdrawn | |
| | 26. | | | | Plaintiff Ingenio, Filiale De Loto-Quebec, Inc.'s Objections and Responses to Defendant GameLogic, Inc.'s First Set of Requests for Admissions--Dated March 31, 2006; pursuant to Local Rule 16.4(d)(6), GameLogic designates the following Requests for Admissions and their corresponding responses: 4, 6, 8, 14,16, 17, 20, 22, 23, 26, 36 | |
| | 27. | | | | Withdrawn | |
| | 28. | | | | Withdrawn | |

| PRESIDING JUDGE Kent A. Jordon | | | PLAINTIFF'S ATTORNEY Edmond D. Johnson | | DEFENDANT'S ATTORNEY Richard D. Horwitz | |
| TRIAL DATE(S) November 6, 2006 | | | COURT REPORTER | | COURTROOM DEPUTY | |
| PLF No. | DEF. NO | Date Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES | OBJECTIONS |
| --- | --- | --- | --- | --- | --- | --- |
| | 29. | | | | Complaint for Declaratory Judgment of Patent Non-Infringement--October 13, 2006 GL02659-GL02666 | Arg |
| | 30. | | | | Withdrawn | |
| | 31. | | | | Notification of transmittal of the international search report or the declaration----HIGHLY CONFIDENTIAL--Korn 30 PK000957-PK000963 | |
| | 32. | | | | Manual of Patent Examining Procedure, Revision July 1997--Korn 33 | Arg, U, H |
| | 33. | | | | Manual of Patent Examining Procedure, Revision July 1996--Korn 34 | Arg, U, H |
| | 34. | | | | Manual of Patent Examining Procedure, Revision September 1995--Korn 35 | Arg, U, H |
| | 35. | | | | Manual of Patent Examining Procedure, Sixth Edition, January 1995--Korn 36 | Arg, U, H |
| | 36. | | | | Letter from Mr. Buroker to Dr. Bertram, 4/2/04--HIGHLY CONFIDENTIAL--Bertram 84 IN006278-IN006280 | |
| | 37. | | | | Invoice, 2/24/06--HIGHLY CONFIDENTIAL--Bertram 85 IN006267-IN006268 | M |
| | 38. | | | | U.S. Patent No. 6,537,150 B1, Luciano, et al., :Gaming Devices Having Reverse-Mapping Game Set."--Bertram 88 | R, U |

| PRESIDING JUDGE<br>Kent A. Jordon | | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz |
| TRIAL DATE(S)<br>November 6, 2006 | | | | COURT REPORTER | | COURTROOM DEPUTY |
| PLF<br>No. | DEF.<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND<br>WITNESSES | OBJECTIONS |
| | 39. | | | | Various paper related to USPN<br>5,569,082--HIGHLY<br>CONFIDENTIAL--Korn 28<br>PK001018-PK001110<br>PK003106-PK003122 | B, A, I, M |
| | 40. | | | | General appointment of agent or<br>common representative--Korn 29<br>PK002837-PK002841 | B, A, I, M |
| | 41. | | | | 08/418,011  Transmittal of Formal<br>Drawings--Korn 13<br>IN001381-IN001391 | B, A |
| | 42. | | | | 5,569,082 Change of Address--<br>Korn 14<br>IN001380 | B, A |
| | 43. | | | | 08/418,011 Notice of Allow<br>ability--Korn 15<br>IN001392-IN001397 | B, A |
| | 44. | | | | Patent Application Fee<br>Determination Record--Korn 16<br>IN001378-IN001379 | B, A, I, M |
| | 45. | | | | Cover sheet for USPN 5,709,603<br>File History--Korn 17<br>IN001265 | B, A |
| | 46. | | | | 5,709,603 File History Excerpts--<br>Korn 18<br>IN001372-IN001376 | B, A, M |
| | 47. | | | | 08/738,317 File History--Korn 19<br>IN001309-IN001371 | B, A, M |
| | 48. | | | | 08/738,317 Change of Address--<br>Korn 20<br>IN001308 | B, A |
| | 49. | | | | 08/738,317 Information<br>Disclosure<br>IN001301-IN001307Statement--<br>Korn 21 | B, A |

| PRESIDING JUDGE<br>Kent A. Jordon | | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz | |
| TRIAL DATE(S)<br>November 6, 2006 | | | | COURT REPORTER | | COURTROOM DEPUTY | |
| PLF<br>No. | DEF<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND<br>WITNESSES | OBJECTIONS |
| | 50. | | | | 08/738,317 Office Action<br>Summary--Korn 22<br>IN001295-IN001300 | B, A |
| | 51. | | | | 08/738,317 Amendment-Korn 23<br>IN001291-IN001294 | B, A |
| | 52. | | | | 08/738,317 Notice of Allow<br>ability--Korn 24<br>IN001289-IN001290 | B, A |
| | 53. | | | | 08/738,317 Transmittal of Formal<br>Drawings--Korn 25<br>IN00271-IN001288 | B, A |
| | 54. | | | | 5,709,603 Change of Address--<br>Korn 26<br>IN001270 | B, A |
| | 55. | | | | PTO Utility Grant--Korn 27<br>IN001266-IN001269 | B, A, M |
| | 56. | | | | Invoices and Engagement<br>Agreement--HIGHLY<br>CONFIDENTIAL--Grimes 6<br>IN006281-IN006286 | M |
| | 57. | | | | Cover page of File History '082--<br>Korn 3<br>IN001377 | B, A |
| | 58. | | | | Pair Search on 08/418,011<br>Application-Korn 4 | B, A, R, H |
| | 59. | | | | File history for '082--Korn 5<br>IN001471-IN001474 | B, A, I, M |
| | 60. | | | | Application number 08/418,011--<br>Korn 6<br>IN001425-IN001470 | B, A, M |
| | 61. | | | | Transmittal of Verified Statement-<br>-Korn 7<br>IN001420-IN001422 | B, A, M |
| | 62. | | | | Information Disclosure Statement<br>for Serial No. 08/418,011--Korn 8<br>IN001423-IN001424 | B, A |

| PRESIDING JUDGE<br>Kent A. Jordon | | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz |
|---|---|---|---|---|---|---|
| TRIAL DATE(S)<br>November 6, 2006 | | | | COURT REPORTER | | COURTROOM DEPUTY |
| PLF No. | DEF NO | Date Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES | OBJECTIONS |
| | 63. | | | | 08/418,011 Examiner's Action--Korn 9<br>IN001408-IN001419 | B, A |
| | 64. | | | | 08/418,011 Amendment or Serial No. 08/418,011--Korn 10<br>IN001400-IN001407 | B, A |
| | 65. | | | | Examiner Interview Summary Record--Korn 11<br>IN001399 | B, A |
| | 66. | | | | Examiner Interview Summary Record--Korn 12<br>IN001398 | B, A |
| | 67. | | | | Letter to F B Rice & Co from Raymond Chao Examiner of Patents, Sub-Section Re: Examiner's First Report on Patent Application No. 53617/96--HIGHLY CONFIDENTIAL--Kaye 34<br>PK00581 | A, R, U, H |
| | 68. | | | | PCT/US96/03320 Application (Notification of Transmittal of International Preliminary Examination Report)--HIGHLY CONFIDENTIAL--Kaye 31<br>PK00015-PK00030 | A, R, U, H, M |
| | 69. | | | | 12/12/95 Letter to P. Kaye from E. Donahue Re: Idea--HIGHLY CONFIDENTIAL--Kaye 15<br>PK001158-PK001161 | |
| | 70. | | | | 3/4/99 Letter to Perry Kaye from Andrew Cohen Re: Definitions of "Charitable Lottery Games" and "Promotional" Games--HIGHLY CONFIDENTIAL--Kaye 21<br>IN001204-IN001218 | A, Arg, R, H, U |

| PRESIDING JUDGE<br>Kent A. Jordon | | | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz |
|---|---|---|---|---|---|---|---|
| TRIAL DATE(S)<br>November 6, 2006 | | | | | COURT REPORTER | | COURTROOM DEPUTY |
| PLF<br>No. | DEF.<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES | | OBJECTIONS |
| | 71. | | | | Assignment Agreement between Perry Kaye and Ingenio, Filiale De Loto-Quebec Inc.,--HIGHLY CONFIDENTIAL--Kaye 22 IN001037-IN001045 | | |
| | 72. | | | | **REDACTED** | | A, Arg, R, H, U |
| | 73. | | | | Consulting Agreement-- CONFIDENTIAL--Kaye 24 IN001239-IN001242 | | |
| | 74. | | | | WO 96/31832 Application -- HIGHLY CONFIDENTIAL-- Kaye 30 PK000914-PK000968 | | |
| | 75. | | | | Win Ware Perry Kaye Gizmo Enterprise, Inc.--HIGHLY CONFIDENTIAL--Kaye 1 PK002845-PK002857 | | R, U, Arg, A, ML |
| | 76. | | | | Winware Perry Kaye Gizmo Enterprise, Inc.--HIGHLY CONFIDENTIAL--Kaye 2 PK003333-PK003341 | | R, U, Arg, A, ML |
| | 77. | | | | WinWare the Worlds First Interactive Multimedia Lottery Ticket--Kaye 5 PK003736-PK003742 | | R, U, Arg, A, ML |
| | 78. | | | | **REDACTED** | | |
| | 79. | | | | Handwritten Notes--HIGHLY CONFIDENTIAL--Kaye 7 PK002649-PK002683 | | |

135

| PRESIDING JUDGE<br>Kent A. Jordon | | | PLAINTIFF'S ATTORNEY<br>Edmond D. Johnson | | | DEFENDANT'S ATTORNEY<br>Richard D. Horwitz | |
|---|---|---|---|---|---|---|---|
| TRIAL DATE(S)<br>November 6, 2006 | | | COURT REPORTER | | | COURTROOM DEPUTY | |
| PLF<br>No. | DEF.<br>NO | Date<br>Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND<br>WITNESSES | | OBJECTIONS |
| | 80. | | | | 11/12/04 Letter to Rodger Tate<br>from John Anastasi Re: Letter<br>dated October 29, 2004--Kane 4<br>GL02707 | | |
| | 81. | | | | **REDACTED** | | |
| | 82. | | | | SG Term Sheet Version<br>1.1/February 6, 2005--HIGHLY<br>CONFIDENTIAL--Kane 10<br>GL06273-GL06280 | | |
| | 83. | | | | **REDACTED** | | |
| | 84. | | | | GameLogic Summary Financials---<br>HIGHLY CONFIDENTIAL--<br>Kane 14<br>GL05328 | | R |
| | 85. | | | | Letter of Intent Between<br>GameLogic and Scientific Games<br>International, Inc., September 28,<br>2004--HIGHLY<br>CONFIDENTIAL--Kane 15<br>GL05744-GL05750 | | |
| | 86. | | | | **REDACTED** | | |
| | 87. | | | | **REDACTED** | | R, Arg, U, ML |

| PRESIDING JUDGE | | | PLAINTIFF'S ATTORNEY | | DEFENDANT'S ATTORNEY | |
|---|---|---|---|---|---|---|
| Kent A. Jordon | | | Edmond D. Johnson | | Richard D. Horwitz | |
| TRIAL DATE(S) | | | COURT REPORTER | | COURTROOM DEPUTY | |
| November 6, 2006 | | | | | | |
| PLF No. | DEF. NO | Date Ordered | Marked | Admitted | DESCRIPTION OF EXHIBITS* AND WITNESSES | OBJECTIONS |
| | 88. | | | | **REDACTED** | |
| | 89. | | | | Defendant GameLogic Inc.'s Notice of 30(B)(6) of Plaintiff Ingenio, Filiale De Loto-Quebec, Inc--Dated January 27, 2006 | |
| | 90. | | | | Defendant GameLogic Inc.'s Notice of 30(B)(6) of Plaintiff Ingenio, Filiale De Loto-Quebec, Inc--Dated January 30, 2006 | |
| | 91. | | | | **REDACTED** | |
| | 92. | | | | **REDACTED** | |
| | 93. | | | | Email to N. Rajotte from M. Lessard Re: 02-07-15 Urgent-Visit to Connecticut Munitions Pour Répondre à Frank Candido--HIGHLY CONFIDENTIAL IN000449-IN000451 | R, U, Arg, ML |
| | 94. | | | | Blumenthal Richard, Connecticut Attorney General, Attorney General's Opinion, March 12, 2003--HIGHLY CONFIDENTIAL IN000721-IN000725 | R, U, Arg, ML |
| | 95. | | | | PrizeReel BlackJack--HIGHLY CONFIDENTIAL GL06892 | I, A, D, NT |
| | 96. | | | | Chris Brandin - Curriculum Vitae | |

## VII.  Motions *In Limine*

### MOTION *IN LIMINE* NO. 1: MOTION TO LIMIT
### THE TESTIMONY OF CHRISTOPHER L. BRANDIN

Ingenio moves *In Limine* to limit the testimony of GameLogic expert, Christopher L.

Brandin ("Mr. Brandin"), to exclude invalidity contentions not disclosed with specificity in Mr.

Brandin's Rule 26 report. The Court should preclude any unfair surprise at trial and strictly limit

Mr. Brandin's expert testimony to the alleged invalidity contentions set forth fully with

specificity in his expert report dated January 15, 2006 ("Brandin Report"). Specifically, Mr.

Brandin, by his own admission, failed to opine on any "motivation to combine" any specific

combination of references contained within his expert report. Mr. Brandin should not be

permitted to testify at trial on those topics.

### A.    ARGUMENT

#### 1.    Mr. Brandin's Testimony Should Be Limited To Material Fully And Unambiguously Disclosed In His Expert Report

##### a.    Legal Standard

Fed. R. Civ. P. 26(a)(2)(B) requires that an expert report contain "a complete statement of

all opinions to be expressed and the basis and reasons therefor." "Rule 26 requires disclosure of

an expert's opinion and the basis and reasons that support that opinion." *nCUBE Corp. v.*

*SeaChange Int'l, Inc.*, 313 F. Supp.2d 361, 386 (D. Del. 2004). In other words, a party "must

prepare a detailed and complete report, stating the testimony the witness is expected to present

during direct examination together with the reasons therefor." Advisory Committee Notes of

Fed. R. Civ. P. 26. "Opinions of experts that are not contained in an expert's report are generally

not admitted into evidence." *Id. See, e.g., Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.,*

289 F. Supp.2d 493, 500 (D. Del. 2003) ("the testimony of expert witnesses is limited to the information contained in their expert reports.").

A "detailed and complete" report "must not be sketchy, vague or preliminary in nature . . . . Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998). A party who does not provide a detailed and complete expert report, including the expert's opinions and reasons therefor, "will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." Advisory Committee Notes of Fed. R. Civ. P. 26. As enforced through Fed. R. Civ. P. 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

In the context of patent infringement, when an invalidity determination depends upon a combination of references, the party seeking to prove invalidity must show some motivation or suggestion to combine the prior art teachings. *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997). "[T]he legal conclusion of obviousness requires that there be some suggestion, motivation, or teaching in the prior art whereby the person of ordinary skill would have selected the components that the inventor selected and used them to make the new device." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1351 (Fed. Cir. 1998).

**b.    Mr. Brandin Did Not Disclose Any Particular Motivation To Combine The Alleged Prior Art References**

GameLogic failed to satisfy the above-described requirements of establishing a *prima facie* position on obviousness with specificity as to any alleged motivation to combine specific

139

references in his Rule 26 report. The Brandin Report is conclusory in that it provides only a discussion of the relevant field of art, the specification of the patents-in-suit, allegations that the asserted patent claims are anticipated, a cursory overview of alleged prior art electronic gaming systems, and general allegations of obviousness of the claims of the patents-in-suit. *See* Brandin Report at 11-25 and 27-32. During his consideration of obviousness in the Brandin Report, Mr. Brandin did *not* provide any specific discussion as to how or why one of skill in the art would be motivated to combine references. Instead, Mr. Brandin provided a generally vague and wholly conclusory statement that one of skill in the art would be inherently motivated to combine some undisclosed combination of references to reach the end result of obviousness. Mr. Brandin stated, without support or specific references:

> All of these prior art references [referring to a list of 7] relate to amusement and/or lottery games and data exchange for those games that yields a more enjoyable and interactive experience for the player, while maintaining the integrity of the game. Therefore, one of ordinary skill would be motivated to combine features of any two of the prior art documents to obtain a desired level for these features. The reason, suggestion, and motivation to combine are found explicitly or implicitly:
> - in the prior art references themselves;
> - in the knowledge of those of ordinary skill in the art that certain references, or disclosures in those references, are of special interest or importance in the field; or
> - from the nature of the problem to be solved leading those skilled in the art to look to references relating to possible solutions to that problem.

Brandin Report at 13 and 28-29 (emphases added). This general contention of motivation to combine fails to meet both the standards of Rule 26, and it also fails to meet the requirement that a "motivation to combine" must be proven by more than a general relationship between the fields of the prior art references. First, Mr. Brandin refers generally to seven references and simply states that they all "relate" to lottery games. Then, he draws the conclusion that because the references relate to the same field, undisclosed and mystery "features of any two" may be

140

combined "to obtain a desired level for these features." Finally, Mr. Brandin leaves it up to the reader to determine whether the motivation to combine is found "explicitly or implicitly" because it is obvious that Mr. Brandin himself does not know.

Mr. Brandin's report is a classic example of a sketchy, vague and conclusory analysis that fails to provide any insight as to why or how one of skill in the art would be motivated to combine specific alleged references. Further, the three bullet examples are simply a pure recitation of case law, and fail to provide any specific showing of motivation of combine. *See Pro-Mold v. Great Lakes Plastics*, 75 F.3d 1568, 1573 (Fed. Cir. 1996) (verbatim with GameLogic's bullet list above).

> **c.    Mr. Brandin Admits During Deposition Testimony That "I Only Make A Statement Of Motivation That's General, So It's Not Specific"**

During Mr. Brandin's deposition held on March 24, 2006, he freely admitted that he did not provide any analysis or discussion of specific motivation to combine any of the alleged prior art references relied upon. Mr. Brandin admitted:

> **Q**   And is it also true that you do not specifically state anywhere in this report the basis upon which you would -- that one of ordinary skill in the art would be **motivated to combine any two specific references?**
>
> **A**   No, **I only make a statement of motivation that's general.  So it's not specific,** I'm --
>
> **Q**   So, for example, **nowhere in this report is there a statement as to why one of ordinary skill in the art would have been motivated to modify the Cohen reference in view of the Clapper reference** specifically?
>
> **A**   **That's correct.**
>
> **Q**   And the same would be true for Cohen in view of the Raha reference specifically, **there's no motivation stated in this report for that combination?**

**A   It's not stated as a motivation,** but the motivation to combine Raha and Cohen I believe is -- is stated.

**Q**   So you don't identify any two -- you don't identify Cohen and Raha specifically as -- in the context of why there's a motivation to modify?  That was muddled, let me start over.  **There's no statement in this report where you state specifically why one of ordinary skill in the art would be motivated to modify Cohen in view of Raha, using those terms?**

**A**   For example, **for a particular claim, that's correct.**

**Q**   Looking at -- I mean, that's also true for Cohen in view of either of the Troy patents, there's no specific motivation for combining those references?

**A**   Well -- no.

**Q**   Looking at the --

**A**   That I've stated.  There is a --

**Q**   Well, that you've **stated in this report.**

**A   Correct.**

Deposition of Christopher L. Brandin at 107-11 (March 24, 2006) (emphases added).  Mr. Brandin failed to provide any analysis or opinion as to how or why the prior art references have the prerequisite "motivation to combine."  Accordingly, Mr. Brandin should not be allowed to create a *post hoc* analysis long after the submission of his expert report pursuant to Rule 26.

## C. CONCLUSION

For the foregoing reasons, Ingenio respectfully requests that the Court exclude any testimony of Christopher L. Brandin regarding whether the alleged prior art references contain any "motivation to combine" features to arrive at the claimed invention.   The Court should limit Mr. Brandon's testimony to the only that which was specifically addressed within his Rule 26 expert report.

## GAMELOGIC'S OPPOSITION TO INGENIO'S MOTION *IN LIMINE* NO. 1

Ingenio has moved, *in limine*, to limit the testimony of GameLogic's expert, Mr. Christopher L. Brandin, at trial. According to Ingenio, Mr. Brandin "failed to opine on any 'motivation to combine' any specific combination of references contained within his expert report" and Mr. Brandin should not be permitted to testify at trial on those topics. This is simply not the case. First, Mr. Brandin specifically disclosed which prior art references should be combined. Second, Mr. Brandin specifically disclosed where in the prior art the claim limitations could be found, if they were found missing in the primary reference. Finally, Mr. Brandin disclosed the specific reasons why one of ordinary skill in the art would be motivated to combine the prior art references identified. Thus, there is no basis for limiting Mr. Brandin's testimony as requested by Ingenio.

### 1.    The Requirements Of Rule 26 And 35 U.S.C. § 103

Federal Rule of Civil Procedure 26 sets forth the general provisions governing a litigant's duty of disclosure of expert testimony. FED. R. CIV. P. 26. "The purpose of the initial disclosures provided for in Rule 26 is to prevent a party from being unfairly surprised by the presentation of new evidence." *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp.2d 487, 506 (D. Del. 2005).

A patent claim is invalid for obviousness if the differences between it and the prior art are such that the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made. *Union Carbide Plastics & Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1187 (Fed. Cir. 2002). Obviousness of a claim under 35 U.S.C. § 103(a) is a legal conclusion which depends on four underlying factual determinations: (1) the scope and

143

content of the prior art; (2) the differences between the claimed invention and the prior art; (3)

the level of ordinary skill in the art; and (4) any relevant secondary considerations. *See Graham*

*v. John Deere Co*, 383 U.S. 1, 17 (1966).

> **2.** **Mr. Brandin's Expert Report Satisfies The Requirements of Rule 26 And Details Why The '082 And '603 Patents Are Invalid Due To Obviousness**

Contrary to Ingenio's assertions, Ingenio will not be surprised at Mr. Brandin's trial

testimony because Mr. Brandin's expert report complies fully with Rule 26 and explains clearly

why the claims of the '082 and '603 patents are obvious. The passage cited by Ingenio itself in

Motion *In Limine* No. 1 explains how Mr. Brandin's report satisfies Rule 26. After specifically

identifying seven prior art references, Mr. Brandin explains that:

> All of these prior art references relate to **amusement and/or lottery games and data exchange for those games** that yields a **more enjoyable and interactive experience for the player,** while **maintaining the integrity of the game.**

Exhibit A, Brandin Expert Report, dated January 15, 2006, page 13, lines 17-19 (emphasis

added). Mr. Brandin then explains that "one of ordinary skill would be **motivated to combine**

**features of any two** of the prior art documents **to obtain a desired level for these features**."

*Id.* at page 13, lines 19-21 (emphasis added). Put differently, Mr. Brandin explained why he

selected the seven prior art references – because they all relate to amusement and/or lottery

games and data exchange for those games and because they all are meant to provide a more

enjoyable and interactive experience for the player, while maintaining the integrity of the game.

Indeed, all of the identified references are gaming patents, addressing entertainment value and

security attributes. Of note, these are the exact features that the patents-in-suit are intended to

address. Mr. Brandin also explained why one of skill in the art would have been motivated to combine the features of any two of those seven prior art references – because doing so would obtain a desired level for these features, *i.e.*, a desired level of enjoyment and interactivity for the player, while maintaining the integrity or security of the game.

While there must be a motivation to combine references, express, written motivation to combine need not appear in the prior art references before obviousness is found. *See, e.g., Ruiz v. A.B. Chance*, 357 F.3d 1270, 1276 (Fed. Cir. 2004). Instead, the reason, suggestion, or motivation to combine references may be found explicitly or implicitly: (1) in the prior art references themselves; (2) in the knowledge of those of ordinary skill in the art that certain references, or disclosures in those references, are of special interest or importance in the field; or (3) from the nature of the problem to be solved, "leading inventors to look to references relating to possible solutions to that problem." *See Pro-Mold and Tool Co. v. Great Lakes Plastics*, Inc., 75 F.3d 1568, 1573 (Fed. Cir. 1996). Mr. Brandin explained how the cited prior art references were all directed to amusement and/or lottery games and data exchange for those games that yield a more enjoyable and interactive experience for the player, while maintaining the integrity of the game. He also explained that one of skill in the art would want to obtain a desired level for those two specific features, and thus would be motivated to combine the features of any two of those seven prior art references. The law demands nothing more – certainly not the express, written motivation Ingenio now requires of Mr. Brandin.

Mr. Brandin also provided tables in which the left columns contain the text of limitations in the claims from the '082 patent and the right columns specifically identify which portions of the prior art disclose those limitations. Exhibit A, pages 14-20. Regarding these tables, Mr. Brandin wrote, for example, "[s]hould the trier of fact find that the Cohen reference is missing

any element(s) of the asserted claims, I have provided citations from related prior art, which when combined with Cohen would render the claims obvious." *Id.* at page 14, lines 2-4. Mr. Brandin even went so far as to provide corresponding tables based upon Ingenio's proposed claim construction. *Id.* at pages 22-24. Mr. Brandin explained, "the prior art listed in the previous claim charts have not been relisted in the following claim charts to avoid unnecessary redundancy, though they are all equally applicable. Thus, if the trier of fact were to determine that the Morris patent does not disclose any limitation(s) of the asserted claims of the '082 patent, then those claims would still be rendered obvious by combining Morris with the prior art cited in the previous claim charts." *Id.* at page 22, lines 2-6.

### 3. Ingenio's Conclusions Regarding Mr. Brandin's Deposition Testimony Are Not Founded

Ingenio's Motion *In Limine* No. 1 selectively presents confusing testimony from Mr. Brandin's deposition and concludes that these snippets support its argument that Mr. Brandin's report is not sufficient. A careful reading of the testimony relied upon Ingenio, however, shows that Ingenio's conclusions about that testimony are incorrect. *See* Exhibit B, Brandin Deposition Transcript Excerpts.

GameLogic acknowledges that principles of fundamental fairness in litigation "include an adverse party's entitlement to timely receive expert reports and conduct discovery in order to evaluate whether and to what extent the basis of such opinions can be challenged." *In re Ameriserve Food Dist. Inc.*, 267 B.R. 668, 672 (D. Del. 2001). Mr. Brandin's expert report fully complies with those principles. It was served in a timely fashion and Ingenio had the opportunity to conduct discovery, including Mr. Brandin's deposition, to make such an evaluation. Despite Ingenio's attempt to recast Mr. Brandin's disclosures, Mr. Brandin was

specific as to why one of ordinary skill in the art would combine the identified prior art references in the manner outlined in the claim charts included in his report.

While Ingenio attempts to make much of Mr. Brandin's testimony that his report was not explicit regarding the motivation to combine any two of the references, Ingenio ignores that Mr. Brandin clearly articulated a specific motivation to combine all seven of the identified references and then outlined, claim-by-claim, element-by-element, how those references could be combined to disclose each limitation. Importantly, Mr. Brandin's stated motivation to combine all seven of the identified references, namely to obtain desired levels of specific features that all of the references seek to obtain, is a recognized motivation to combine under applicable Federal Circuit law. *See, e.g., Pro-Mold* The law simply does not require the express, written motivation Ingenio now seeks for each of the references.

### 4. **Conclusion**

Mr. Brandin's expert report satisfies the requirements of Rule 26. It sets forth with the required level of specificity why the claims of the '082 and '603 patents are, *inter alia*, obvious as per the analysis set forth in *Pro-Mold* and *Ruiz*. Ingenio is fully aware of what Mr. Brandin will testify about with regard to the motivation aspect of the obviousness inquiry at trial, as it will mirror the content of both his expert report and his deposition testimony. Further, Ingenio will have a full opportunity to cross-examine Mr. Brandin at trial. Accordingly, Ingenio's Motion *In Limine* No. 1 should be denied.

147

### MOTION *IN LIMINE* NO. 2: MOTION TO PRECLUDE GAMELOGIC FROM USING EVIDENCE OF COMMERCIAL EMBODIMENTS OF THE INGENIO PATENTS FOR COMPARISON OF THE GAMELOGIC PRODUCTS ACCUSED OF INFRINGEMENT

Ingenio respectfully moves the Court *in Limine* to preclude GameLogic from using evidence of Ingenio and/or Perry Kaye's lottery games[3] and other putative commercial embodiments of the Ingenio patents for comparison to the GameLogic products accused of infringement. As the Court knows, the relevant inquiry for infringement is whether GameLogic's products meet the claim limitations and any attempt by GameLogic to compare its products to Ingenio's products or Perry Kaye's products would be confusing to the jury and improper. For the reasons set forth below, GameLogic should specifically be precluded — as required by Federal Circuit authority — from presenting any such testimony or evidence at trial in an attempt to assert non-infringement.

#### A.    BACKGROUND

Throughout discovery in this matter, GameLogic has requested and received numerous documents and things related to Ingenio and/or inventor Perry Kaye's lottery games. The details and features of Ingenio and/or Perry Kaye's lottery games, however, are not relevant to infringement or claim construction issues.[4] Moreover, in a patent infringement case, it is improper to compare an accused infringer's system or device to a patentee's commercial embodiment of the patent claims. *See SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("Infringement, literal or by equivalence, is determined by comparing an

---

[3] Ingenio's lottery games include, *e.g.*, the Treasure Tower lottery game. Perry Kaye's lottery games include, *e.g.*, the WinWare lottery games.

[4] While the focus of this Motion *in Limine* concerns GameLogic's potential use of Ingenio's commercial embodiments of the patents, the arguments apply equally to GameLogic's potential use of <u>any</u> commercial embodiments of the patents from any party other than GameLogic.

accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit."). Therefore, Ingenio moves that the court exclude, under F.R.E. 402 and 403, evidence relating to the design, details and functionality of Ingenio and/or Perry Kaye's lottery games and other putative commercial embodiments if the evidence is offered as evidence of non-infringement.

In this case, GameLogic sought extensive discovery on Ingenio and Perry Kaye's lottery games. In response to these requests, Ingenio produced numerous documents related to commercial embodiments of the patented invention. Additionally, GameLogic questioned Ingenio employee Nathalie Rajotte and inventor Perry Kaye extensively at their depositions about the functionality of various lottery games.

Believing GameLogic will improperly use this evidence to compare the accused methods and systems to Ingenio and/or Perry Kaye's lottery games and other putative commercial embodiments of the Ingenio patents at trial, Ingenio files this motion *in limine* to prevent GameLogic from prejudicing Ingenio and from confusing the Court and jury on matters relating to non-infringement.

**B.    ARGUMENT**

GameLogic will likely seek to distract the Court and jury from a proper infringement analysis of the accused devices and systems by comparing them to Ingenio and/or Perry Kaye's lottery games, rather than the patent claims. It is axiomatic that the claims define the invention, *see* 35 U.S.C. § 112, ¶ 2, and, therefore, a proper determination of infringement necessitates a comparison of the accused product or process *with the patent claims*. It is reversible error for a court or a jury to compare, in its patent infringement analysis, the accused product or process

149

with a patentee's commercial embodiment or other version, such as a licensed product — the only proper comparison is with the claims of the patent. *Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) (holding that the district court erred by permitting the defendant to make a comparison of the accused compound with a sample the defendant considered to be the patented compound instead of the claim); *see also SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d at 1121.

Clearly, arguments about how Ingenio and/or Perry Kaye's lottery games function have no place in determining infringement of the claims as they are construed by the Court. GameLogic should therefore be excluded from comparing Ingenio and/or Perry Kaye's lottery games to the claims of the asserted patents to avoid infringement.

> **1.     GameLogic Intends to Improperly Use Ingenio and/or Perry Kaye's Lottery Games to Replace the Court's Legal Determination of the Scope and Meaning of the Claim Terms**

Determining the scope and meaning of the claims is "a matter of law exclusively for the court." *Markman v. Westview Instrument, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Despite this, GameLogic will seek to convince the jury to discard the Court's legal determination of the scope and meaning of the claims and adopt Ingenio and/or Perry Kaye's lottery games as their understanding of the claims. GameLogic will likely introduce confusing language from the documents or visual demonstrations of Ingenio and/or Perry Kaye's lottery games to convince the jury that Ingenio and/or Perry Kaye's lottery games — rather than the patent claims — define the entire scope and meaning of the claims. GameLogic would then attempt to improperly compare the accused systems to Ingenio and/or Perry Kaye's lottery games in an attempt to avoid infringement.

The Court has the final word on the scope and meaning of the claims - a role it has now

completed. The jury's role is to determine factual infringement in view of the Court's legal

determination of the meaning of the claims. Evidence comparing products of Ingenio and/or

Perry Kaye with GameLogic's lottery games plays no role in either of these determinations. It

would therefore be improper for GameLogic to suggest to the jury in any way that they should

further interpret the claims in order to limit the claims to a commercial embodiment of the

patented invention. The law prohibits consideration of a commercial embodiment of the claims

in the claim construction or infringement analysis, and evidence of the design, details and

functionality of these products (or any other commercial embodiments covered by the Ingenio

patents), that may suggest that any such analysis is necessary should be excluded at trial if

offered to avoid infringement.[5]

**2.    Evidence of Ingenio and/or Perry Kaye's Lottery Games Will be Time
Consuming, Confusing and Prejudicial, and Have No Probative Value
In an Infringement Analysis**

Even if the Court instructs the jury as to the proper meaning and scope of the claims, the

introduction of evidence concerning the details of Ingenio and/or Perry Kaye's lottery games still

would be confusing, prejudicial and offer no probative value in an infringement analysis.

Consideration of this evidence will unnecessarily and prejudicially distract the jury from

properly applying the Court's claim construction and determining infringement.

The jury will be distracted because it will face the daunting task of sifting through the

evidence to determine which evidence is related to the properly construed claims (and proper to

---

[5] Indeed, such evidence would be relevant if offered by Ingenio as evidence of commercial success of the
patented products, but only for that purpose. Therefore, by this motion, Ingenio is not seeking to exclude similar
evidence if it is offered to rebut an allegation that the patents are invalid under 35 U.S.C. § 103.

151

consider), and which evidence is related to Ingenio and/or Perry Kaye's lottery games (and improper to consider). The chance of jury confusion is high, the possible undue prejudice to the Ingenio resulting from that confusion is great, and the evidence itself would add nothing to determining whether the accused systems infringe the patent claims. Accordingly, evidence regarding the design, details and functionality of Ingenio and/or Perry Kaye's lottery games (or any other commercial embodiments of the Ingenio patents) should be excluded at trial if the evidence is offered as evidence of non-infringement.

### C.    CONCLUSION

For the foregoing reasons, Ingenio requests that the Court bar GameLogic from introducing or soliciting any testimony, documents or other evidence regarding the design, details or functionality of Ingenio and/or Perry Kaye's lottery games, and bar GameLogic from introducing or soliciting a comparison between the accused systems and any commercial embodiment of the Ingenio patents during trial before the jury.

## GAMELOGIC'S OPPOSITION TO INGENIO'S MOTION *IN LIMINE* NO. 2

Ingenio has moved, *in limine*, to preclude GameLogic from using evidence of Ingenio and/or Perry Kaye's lottery games and other putative commercial embodiments of the Ingenio patents for comparison to the GameLogic products accused of infringement. This motion is truly not in dispute.

### 1.    GameLogic Agrees That Ingenio's And/Or Kaye's Commercial Embodiments Are Irrelevant To The Infringement Inquiry

GameLogic agrees that in deciding whether the '082 and '603 patents are infringed, evidence pertaining to Ingenio's and/or Perry Kaye's lottery games and other putative commercial embodiments are irrelevant. *See, e.g., Glaxo Group Ltd. v. Torpharm, Inc.*, 153 F.3d

1366, 1373 (Fed. Cir. 1998). GameLogic does not intend to use such evidence in the infringement phase of the trial and has never suggested that it intends to do so.

### 2. Ingenio's And/Or Kaye's Commercial Embodiments Are Relevant To The Validity Inquiry

When deciding whether the '082 and/603 patent are *valid*, evidence pertaining to Ingenio's and/or Perry Kaye's lottery games and other putative commercial embodiments are wholly relevant, and should not be excluded from the validity portion of the trial. In this case, GameLogic has asserted that the '082 and '603 patents are invalid under, *inter alia*, 35 U.S.C. § 103, *i.e.*, that the asserted claims of the '082 and '603 patents are obvious.

### a. Obviousness Under 35 U.S.C. § 103

A patent claim is invalid for obviousness if the differences between it and the prior art are such that the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made. *Union Carbide Plastics & Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1187 (Fed. Cir. 2002). Obviousness of a claim under 35 U.S.C. § 103(a) is a legal conclusion which depends on at least four underlying factual determinations: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations. *See Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

### b. Ingenio Has Asserted Its Games Are Relevant To The Obvious Analysis

So-called secondary considerations or objective indicia of non-obviousness are essential components of the obviousness determination. *In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998). The objective evidence of nonobviousness includes copying, long felt but unresolved need, failure of others, commercial success, unexpected results created by the claimed invention,

unexpected properties of the claimed invention, licenses showing industry respect for the invention, and skepticism of skill artisans before the invention. *Rouffet*, 149 F.3d at 1355. The objective criteria must always be considered and given whatever weight is warranted by the evidence presented. *Knoll Pharm. Co. v. Teva Pharms. U.S.A., Inc.*, 367 F.3d 1381, 1385 (Fed. Cir. 2004).

However, commercial success must be shown "to have in some way been due to the nature of the claimed invention, as opposed to other economic and commercial factors unrelated to the technical quality of the patented subject matter." *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985). Thus, a nexus is required between the merits of the claimed invention and the evidence offered, if that evidence is to be given substantial weight *en route* to a conclusion of the obviousness issue. *See, e.g., Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539 (Fed. Cir. 1983). In discovery, Ingenio has taken the position that its games are an embodiment of its patents, and that Ingenio has achieved commercial success by licensing and selling those games.

### 3.    GameLogic Should Be Allowed To Rebut Ingenio's Evidence Of Secondary Considerations

If Ingenio presents evidence of secondary considerations at trial, GameLogic should be allowed to rebut Ingenio's assertions. Specifically, GameLogic should be permitted to demonstrate that the Ingenio and/or Kaye lottery games and other putative commercial embodiments do *not* actually fall within the coverage of the asserted claims of the '082 and '603 patents, *i.e.*, that Ingenio has failed to show the required nexus between the '082 and '603 patents and the purported commercial success of the games in question.

Based on Ingenio's Motion *In Limine* No. 2 and its proposed exhibits, it appears as though Ingenio does intend to present evidence of secondary considerations, including

154

commercial success of its games. *See, e.g., Ingenio's Motion* In Limine *No. 2, n.3*, Plaintiff's Exhibit No. 67 (licensing revenues from Ingenio's games). To rebut this evidence, GameLogic must be permitted to present evidence explaining how Ingenio's and Kaye's games work and whether those games actually practice the asserted claims of the '082 and '603 patents. Accordingly, Ingenio's Motion *In Limine* No. 2 should be denied.

## MOTION *IN LIMINE* NO. 3: MOTION TO PRECLUDE PURPORTED EVIDENCE OF UNFAIR COMPETITION

Ingenio respectfully moves the Court *in Limine* to preclude GameLogic from presenting purported evidence of unfair competition by Ingenio because such purported evidence is not relevant, lacks probative value, prejudicial, and confusing. For the reasons set forth below, GameLogic should specifically be precluded from presenting any purported testimony or evidence of unfair competition by Ingenio at trial.

### A.    BACKGROUND

On November 25, 2005, GameLogic moved the Court for leave to file an amended answer and counterclaim asserting, *inter alia*, a state law cause of action for unfair competition. *See* D.I. 49. After briefing and a hearing on this matter, the Court denied GameLogic's motion without prejudice. D.I. 89. At the hearing, the Court stated that the motion was denied because GameLogic did not "plead at least enough facts to put [Ingenio} on notice." *See* D.I. 90 at 20:17-25.

Believing that GameLogic may present purported evidence or testimony of unfair competition at trial to improperly portray Ingenio as a bad faith actor, Ingenio files this motion *in limine* to prevent GameLogic from prejudicing Ingenio and from confusing the jury.

## B.    ARGUMENT

### 1.    Evidence of Unfair Competition is Irrelevant Because GameLogic Has Not Asserted a Claim Based on Unfair Competition

Evidence that is not related to a claim in the lawsuit is not relevant. *See Read Corp. v. Portec, Inc.*, 748 F. Supp. 1078, 1101-02 (D. Del. 1990). Because purported evidence of unfair competition is not related to a claim in this lawsuit, the purported evidence of unfair competition is not relevant and therefore should be excluded.

### 2.    Evidence of Unfair Competition Will be Time Consuming, Confusing and Prejudicial, and Have No Probative Value

Even if the Court determines that purported evidence or testimony of unfair competition is relevant, such purported evidence should be excluded because it is highly prejudicial and will likely confuse the jury. The introduction by GameLogic of purported evidence or testimony of unfair competition is prejudicial because it will only portray Ingenio as a bad faith actor in this lawsuit, and not prove any facts related to any claim.

Moreover, because the purported evidence is not related to any claim, the purported evidence will confuse the jury. The jury will be distracted because it will face the daunting task of sifting through the evidence to determine which evidence is related to matters of infringement, invalidity and unenforceability (claims in the lawsuit), and which purported evidence is related to unfair competition (not a claim in the lawsuit).

Accordingly, purported evidence or testimony regarding unfair competition should be excluded at trial.

## C.    CONCLUSION

For the foregoing reasons, Ingenio requests that the Court bar GameLogic from introducing or soliciting any testimony, documents or other evidence regarding unfair competition during trial before the jury.

## GAMELOGIC'S OPPOSITION TO INGENIO'S MOTION *IN LIMINE* NO. 3

Ingenio has moved, *in limine*, to preclude GameLogic from presenting evidence of unfair competition by Ingenio. This Court has ruled on that issue, and thus, GameLogic does not intend to present evidence for the purpose of asserting an unfair competition claim. *See D.I. 89.* GameLogic, however, has the right to present evidence to negate Ingenio's willfulness and exceptional case charges.

### 1.    GameLogic Agrees That Unfair Competition Is Not At Issue

As noted by Ingenio's Motion *In Limine* No. 3, GameLogic moved the Court for leave to file an amended answer and counterclaim asserting, *inter alia*, a state law cause of action for unfair competition. *See D.I. 49.* The Court denied GameLogic's motion without prejudice. *See D.I. 89.* Accordingly, unfair competition is not at issue in this case. GameLogic does not intend to present evidence in support of a claim for unfair competition at trial and has never suggested that it intends to do so.

### 2.    Whether GameLogic Willfully Infringed The '082 And '603 Patents Is At Issue

Ingenio contends that GameLogic's infringement of the '082 and '603 patent has been willful. *See Ingenio's Statement of Issues of Law, Issue 2.* To rebut this contention, GameLogic must be allowed to present evidence showing why its infringement was not willful and why this is not an "exceptional" case, as argued by Ingenio.

157

### a.    Determining Willful Infringement Requires Considering The Totality Of The Circumstances

A determination of willfulness is made upon consideration of the totality of the circumstances. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1342-43 (Fed. Cir. 2004) (noting "willfulness in infringement, as in life, is not an all-or nothing trait, but one of degree. It recognizes that infringement may range from unknowing, or accidental, to deliberate, or reckless, disregard of a patentee's legal rights."). "Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement." *Imonex Serv., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005). Courts are to consider not only factors that render the defendant's conduct more culpable, but factors that are mitigating or ameliorating as well. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992).

Factors to be considered in determining whether an infringer acted in such bad faith as to merit an increase in damages against him include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) closeness of the case; (6) duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct. *See Read*, 970 F.2d at 826-27.

### b.    Determining Whether The Case Is Exceptional Is A Two-Step Process

The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under 35 U.S.C. § 285, is a two-step process. *Cybor Corp. v. FAS Techs., Inc.*, 138

F.3d 1448, 1460 (Fed. Cir. 1998) (en banc). First, the district court must determine whether a case is exceptional. *Id.* Second, if the court has decided that the case is exceptional, the court must then determine whether attorney fees are appropriate. *Id.* The party seeking attorneys fees must establish facts showing exceptionality by clear and convincing evidence. *See, e.g., Perricone v. Medicis Pharm. Corp.,* 432 F.3d 1368, 1380 (Fed. Cir. 2005). Notably, a court is not required to award attorney fees, even when there is an express finding of willful infringement. *Group One Ltd. v. Hallmark Cards, Inc.,* 407 F.3d 1297, 1308 (Fed. Cir. 2005).

### 3. GameLogic Should Be Permitted To Present Evidence Demonstrating Why Its Conduct Does Not Warrant Enhanced Damages

As explained above, the Court is to consider not only evidence of GameLogic's purported willful infringement, but also evidence which mitigates and/or ameliorates such evidence. GameLogic should be permitted to present evidence showing that it did not act in bad faith. GameLogic should be permitted to present evidence showing, *e.g.,* that GameLogic did not deliberately copy Ingenio's and/or Kaye's technology, that GameLogic formed a good-faith belief that the '082 and '603 patents were not infringed, that GameLogic was a reasonable litigant in this action, that, if infringement is found, this was a close case, the duration of GameLogic's accused activity, that GameLogic took remedial action, that GameLogic had no motivation for harm, and that GameLogic did not conceal its accused activity.

Similarly, GameLogic should be permitted to explain

**REDACTED**

GameLogic's

inability to do so may leave the jury with an incorrect negative inference regarding GameLogic's conduct. Specifically, without the complete story, the jury may assume

**REDACTED**

159

Thus, what Ingenio has termed "evidence of unfair competition" is actually evidence showing that, among other things, GameLogic did not act in bad faith and was not motivated to harm. Because this evidence is relevant to GameLogic's ability to defend against Ingenio's willful infringement and exceptional case charges, GameLogic should be permitted to present this evidence at trial.

## VIII. Limitations, Reservations, and Other Matters

### A.     Length of Trial

This matter is scheduled for a ten (10) day jury trial beginning at 9:30 a.m. from November 6, 2006 to November 17, 2006. Unless otherwise ordered by the Court, the trial schedule will be from 9:00 a.m. to 4:30 p.m., with breaks at 10:30 a.m. and 3:00 p.m., and with a lunch break for one hour beginning at 12:30 p.m. Each party will be allocated a total of twenty-two (22) hours to present its case. The Courtroom Deputy will keep a running total of the trial time used by counsel. Opening statements and closing arguments shall be included in the total. For depositions, counsel will jointly advise the Courtroom Deputy as to the allocation of time according to the lines of testimony designated by each party.

### B.     Demonstrative Exhibits

Demonstrative exhibits are marked for identification, but not admitted into evidence. The parties shall exchange complete color representations of demonstrative exhibits in electronic format by no later than 9 a.m. the day before the demonstrative exhibit is expected to be used in court. The parties' objections to the demonstrative exhibits, if any, shall be exchanged no later than 8:00 a.m. on the day that the demonstrative exhibit is expected to be used in court. This paragraph shall not apply to demonstratives created during testimony or argument at trial.

C.    Number of Jurors

      1.    There shall be 6 jurors and 2 alternate jurors

D.    Voir Dire

      1.    The Court will conduct voir dire. Each party has submitted proposed voir dire questions that the Court has taken under advisement.

E.    Jury Instructions

      1.    The Court will read the final instructions to the jury after the closing arguments by counsel. The parties have conferred and submitted proposed jury instructions that the Court has taken under advisement.

F.    Special Verdict Forms

      1.    Each party has submitted a proposed special verdict form that the Court has taken under advisement.

G.    GameLogic's Supplementation

      1.    GameLogic respectfully disagrees with the Order and Memorandum Opinion, issued on July 21, 2006, and reserves all rights to appeal.

      2.    Further, GameLogic reserves the right to supplement this submission based on the submissions provided by Ingenio.

      3.    GameLogic supplemented its Interrogatory Responses based on the Order and Memorandum Opinion, issued on July 21, 2006, and served its supplemented Interrogatory Responses on August 25, 2006.

H.    Ingenio's Objection to GameLogic's Supplemental Interrogatory Responses of August 25, 2006

      1.    Ingenio objects to GameLogic's Supplemental Interrogatory Responses that were served on August 25, 2006. This submission is wholly improper because it is

161

untimely. Moreover, the Supplemental Interrogatory Responses raise new invalidity contentions that were not provided during discovery when such issues should have reasonably been anticipated no later early March 2006. GameLogic should also not be permitted to supplement its Interrogatory Responses in view of Ingenio's first motion *in limine*. *See* Ingnio's First Motion *in Limine*, *infra* Part VII.

IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior

thereto, to prevent manifest injustice or for good cause shown. Such modification may be made

either on application of counsel for the parties or on motion of the Court.


DATED: _____


_____
UNITED STATES DISTRICT JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

| | |
|---|---|
| *For Plaintiff Ingenio, Filiale De Loto-Quebec, Inc.* | *For Defendant GameLogic, Inc.* |
| THE BAYARD FIRM | POTTER ANDERSON & CORROON LLP |

By:/s/ Edmond D. Johnson _____
Edmond D. Johnson (No. 2257)
222 Delaware Ave.
Suite 900
Wilmington, DE 19801
(302) 655-5000

OF COUNSEL:

Rodger L. Tate
Brian M. Buroker
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006-1109
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Counsel for Plaintiff
Ingenio, Filiale De Loto-Quebec, Inc.

By: /s/ David E. Moore _____
Richard L. Horwitz (No. 2246)
David E. Moore (No. 3983)
Hercules Plaza 6th Floor
1313 N. Market Street
P.O. 951
Wilmington, DE 19899-0951
(302) 984-6000

OF COUNSEL:

Gary M. Hnath
Goutam Patnaik
Timothy A. Molino
BINGHAM MCCUTCHEN LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Counsel for Defendant GameLogic, Inc.