**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

INGENIO, FILIALE DE LOTO-QUEBEC, INC.,

                Plaintiff,

      v.

GAMELOGIC, INC.,

              Defendant.

Civil Action No. 04-1532 (KAJ)

**[PARTIES AGREED UPON PROPOSED]
<u>PRELIMINARY JURY INSTRUCTIONS</u>**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1
II.     PATENT LAW .................................................................................................... 3
        A.    How a Patent Issues ............................................................................... 3
        B.    Patent Litigation .................................................................................... 5
III.    CONTENTIONS OF THE PARTIES ................................................................. 6
        A.    Infringement ........................................................................................... 6
        B.    Invalidity ................................................................................................ 7
        C.    Willful Infringement ............................................................................. 8
        D.    Unenforceability .................................................................................... 9
IV.     YOUR DUTIES AS A JUROR ........................................................................ 10
V.      BURDEN OF PROOF ....................................................................................... 11
VI.     EVIDENCE ........................................................................................................ 12
        A.    What Is, And Is Not, Evidence ............................................................ 12
        B.    Direct and Circumstantial Evidence .................................................... 13
        C.    Witnesses—Conflicts in Testimony .................................................... 13
        D.    Expert Witnesses .................................................................................. 14
        E.    Number of Witnesses ........................................................................... 15
VII.    CONDUCT AS JURORS ................................................................................. 16
VIII.   GENERAL INSTRUCTIONS .......................................................................... 19
IX.     COURSE OF THE TRIAL ............................................................................... 21
X.      GLOSSARY OF PATENT TERMS .................................................................. 22
XI.     GLOSSARY OF TECHNICAL TERMS .......................................................... 23

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions to guide you on your role as jurors in this case. Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer. However, I encourage you to focus your attention on me while the instructions are being read. You will be able to take copies of these instructions with you into your deliberations and may refer to them at that time, if necessary.

I.    **INTRODUCTION**

Ladies and gentlemen, you have been selected as jurors in this case. What I will now say is intended to introduce you to the trial and to the law that you will apply to evaluate the evidence you will hear and see. I will also give you detailed instructions at the end of the trial. All of my instructions are important, and you should consider them as a whole. Please listen carefully.

This is a case about alleged patent infringement and alleged patent invalidity. The plaintiff is Ingenio, Filiale de Loto-Quebec, Inc. The defendant is GameLogic, Inc. Ingenio asserts two U.S. Patents in this case: U.S. Patent No. 5,569,082 and U.S. Patent No. 5,709,603. Patents are often referred to by their last three digits, and you may hear these patents referred to as "the '082 patent" and "the '603 patent," respectively. You may also hear these patents referred to as "the patents-in-suit," or, using the last name of the inventor, as the "Kaye patents." The '082 patent and the '603 patent relate to lottery-based gaming technology.

Ingenio contends that GameLogic has made, used, and offered for sale a HomePlay Lottery™ system that infringes claims 4, 6, 9, 10, 13, and 15 of the '082

patent and claim 1 of the '603 patent, and continues to do so. Ingenio also contends that the alleged infringement was willful.

GameLogic denies that HomePlay infringes the claims of the '082 patent and the '603 patent asserted in this trial, and denies that any alleged infringement was willful. GameLogic further contends that both the '082 patent and the '603 patent are invalid.

You, the jury, will be asked to determine these matters. Specifically, you will be asked to decide: (1) whether the '082 patent has been infringed; (2) whether the '603 patent has been infringed; (3) whether the '082 patent is valid; (4) whether the '603 patent is valid; (5) if the '082 patent is infringed, whether the infringement was willful; and (6) if the '603 patent is infringed, whether the infringement was willful.

**[GameLogic proposes inserting the following additional text before the end of the proceeding sentence: "; and (7) whether the patents-in-suit are unenforceable due to the inequitable conduct of the applicant before the United States Patent and Trademark Office." Ingenio contends that instructions regarding inequitable conduct, whether preliminary or post-trial in nature, are prejudicial to Ingenio and should not be included.]**

## II.    PATENT LAW

To decide this case, you need to be familiar with some basic concepts of patent law. I will briefly describe what a patent is, and some procedures followed by applicants seeking to obtain a patent. During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the United States Patent and Trademark Office, often called "the PTO," as well as with the contents of a patent.

Many of the terms you will hear related to patents are contained in the Glossary of Patent Terms that has been given to you along with a copy of these preliminary instructions. Feel free to refer to this glossary throughout the trial, but remember it is not a full listing of the legal terms you may hear, and the inclusion of a word or concept in the Glossary does not make it more important than other legal terms or concepts with which you may need to deal in this case.

### A.    How a Patent Issues

A valid United States patent gives its owner the right to exclude others from making, using, offering to sell, or selling the patented invention within the United States, its territories, and its possessions. During the trial, the parties will offer testimony to familiarize you with how one obtains a patent from the PTO, as well as with the contents of a patent, including the specification or written description and the claim or claims by which the applicant defines the subject matter of his or her invention.

I will briefly describe some of the terms for you so that you have some background in patent terminology. The Patent and Trademark Office, the PTO, is in the Washington, D.C. area and is an agency of the Federal Government.

The patent application is the initial set of papers filed with the PTO by the applicant. In addition to some other papers, such as the inventor's oath, the application

includes a specification. The purpose of the specification is to describe what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so. The specification concludes with one or more numbered sentences. These are the claims. The purpose of the claims is to particularly point out what the applicant regards as his or her invention. When the PTO eventually issues the patent, the claims define the scope of the patent owner's exclusive rights during the life of the patent. In a few minutes, I will describe for you the meaning of the claim[s] of the '082 and '603 patents.

After the applicant files the application, a PTO patent examiner reviews (or examines) the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner makes a search of the PTO records for prior art to the patent application claims. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of this prior art. But generally, prior art is technical information and knowledge that was known to the public either before the alleged invention by the applicant, or more than a year before the effective filing date of the application.

Following the prior art search and examination of the application, the patent examiner then advises the applicant in writing what the examiner has found and whether he has "allowed" any claim. This writing from the PTO examiner is called an office action. More often than not, the initial office action by the patent examiner rejects the claims. The applicant then responds to this rejection, and sometimes changes ("amends") the claims or submits new claims. This process may go back and forth between the

patent examiner in the PTO and the applicant for several months or even for years until
the examiner is satisfied that the application and claims meet the conditions for
patentability.

The collection of papers generated during this time of corresponding back and
forth between the PTO patent examiner and the applicant is what is called the prosecution
history. This history of written correspondence is contained in a file in the PTO, and
consequently some people over the course of the trial may call this written history the
prosecution history, the file history, or the file wrapper.

### B.  Patent Litigation

A company is said to be infringing on claims of a patent when it, without
permission from the patent owner, makes, uses, imports, offers to sell or sells the
patented invention, as defined by the claims, within the United States before the term of
the patent expires. A patent owner that believes someone is infringing on its exclusive
rights under a patent may bring a lawsuit like this to stop the alleged infringing acts and
recover damages. The patent owner has the burden to prove infringement of the claims
of the patent.

A person sued for allegedly infringing a patent can deny infringement, and can
also defend against infringement by proving the asserted claims of the patents are invalid
**[GameLogic proposes "or unenforceable"; Ingenio objects]**. The accused infringer
has the burden to prove invalidity **[GameLogic proposes "and unenforceability";
Ingenio objects]** by clear and convincing evidence. In evaluating infringement or
invalidity, each claim is to be evaluated independently. I will now briefly explain the
parties' basic contentions in more detail.

III.     **CONTENTIONS OF THE PARTIES**

    A.     **Infringement**

In this case, the plaintiff, Ingenio, contends that the defendant, GameLogic, has made, used, and offered to sell a HomePlay Lottery system that infringes claims 4, 6, 9, 10, 13, and 15 of the '082 patent and claim 1 of the '603 patent, and continues to do so. Ingenio has the burden of proving that GameLogic has infringed the patents-in-suit by a preponderance of the evidence. That means that Ingenio must show that it is more likely that GameLogic's HomePlay Lottery system infringes the patents-in-suit than it that does not infringe.

There are two ways in which a patent claim can be directly infringed. First, a claim can be literally infringed. Second, a claim can be infringed under what is called the "doctrine of equivalents," which I will address shortly.

To determine literal infringement, you must compare the accused HomePlay Lottery system with each claim that Ingenio asserts is infringed.  It will be my job to tell you what the patent claims mean.  You must follow my instructions as to the meaning of the patent claims.

A patent claim is literally infringed only if GameLogic's HomePlay Lottery system includes each and every element in that patent claim. If GameLogic's HomePlay Lottery system does not contain one or more elements recited in a claim, GameLogic has not literally infringed that claim. You must determine literal infringement with respect to each patent claim individually.

You may find that GameLogic's HomePlay Lottery system infringes a claim of Ingenio's patents, even if not every element of that claim is literally present in GameLogic's HomePlay Lottery system.  However, to do so, you must find that there is

an equivalent component or method step in GameLogic's HomePlay Lottery system for each element or step of the patent claim that is not literally present in GameLogic's HomePlay Lottery system. This is called infringement under the doctrine of equivalents. Ingenio has the burden of proving by a preponderance of the evidence that GameLogic's HomePlay Lottery system contains the equivalent of each element of the claimed invention that is not literally present in HomePlay Lottery system.

### B.    Invalidity

GameLogic denies that it has infringed the patents-in-suit. GameLogic also contends that the patents-in-suit are invalid for several reasons.

First, GameLogic contends that the asserted claims of the '082 and '603 patents are anticipated by two prior art references, U.S. Patent No. 5,373,440 issued to Cohen, and U.S. Patent No. 5,324,035 issued to Morris. To be patentable, an invention must be new. If it is not new, we say it is anticipated by the prior art. A claim is anticipated if each and every element of the claim is found, either expressly or inherently, in a single prior art reference.

Second, GameLogic contends that, at the time the inventor filed his applications with the PTO, the asserted claims of the '082 and '603 patents were obvious. A patent claim is obvious, and therefore invalid, if the differences between it and the prior art are such that the claimed subject matter as a whole would have been obvious to one of ordinary skill in the art at the time the invention was made.

**[GameLogic proposes: "Third, GameLogic contends that the only asserted claim of the '603 patent is invalid, because it is effectively identical to one or more of the claims of the '082 patent. A patentee may only receive one patent per invention, and may not extend the life of his or her patent by repeatedly claiming the same**

invention in later-issued patents. **This is known as "double-patenting" and is not permitted. If the same invention is claimed in two different patents, the second patent is invalid."]**

**[Ingenio contends that GameLogic should be limited to the grounds of invalidity raised in its initial expert report.** *See* **Ingenio's Motion in Limine No. 1. Ingenio therefore contends that any and all instructions regarding invalidity based on double patenting grounds should not be included.]**

Invalidity is a defense to infringement. Therefore, even though the PTO examiner has allowed the claims of the '082 and '603 patents to issue, you, the jury, have the ultimate responsibility for deciding whether the claims of the patents-in-suit are valid. GameLogic bears the burden of proving invalidity by clear and convincing evidence. This is a higher burden than a preponderance of the evidence; but, this does not require proof beyond a reasonable doubt. That standard has no place in this trial. It will be your job, at the end of this trial, to determine whether GameLogic has met its burden of proving the invalidity of the '082 and '603 patent claims. Clear and convincing evidence is evidence that produces in your mind an abiding conviction that the claims are invalid.

### C.    Willful Infringement

If you find that either the '082 or the '603 patent is infringed, you must decide whether that infringement was willful.

**[GameLogic proposes: "Patent law recognizes that infringement may occur where the accused infringer did not know of the patentee's rights, or believed that its actions did not infringe the patentee's rights, just as it may occur where the accused infringer deliberately disregarded a patentee's legal rights." Ingenio objects.]** Here, Ingenio contends that GameLogic willfully infringed the patents because

it was aware of Ingenio's patent rights. GameLogic contends that even if it did infringe the patents-in-suit it did so innocently, believing its conduct was lawful. In particular, GameLogic contends that it relied on the competent advice of lawyers who indicated GameLogic could proceed with the HomePlay Lottery system without infringing Ingenio's patents. Ingenio contends that GameLogic could not reasonably rely on the advice of its lawyers. Ingenio has the burden of proving that GameLogic's alleged infringement was willful by clear and convincing evidence.

[GameLogic proposes the following paragraph:

D.    "Unenforceability

GameLogic contends that Ingenio's patents are unenforceable due to the inequitable conduct of the patent applicant and his attorney during the prosecution of the '082 patents. This is an issue that I as the judge, rather than you as the jury, will determine. Although the parties will present testimony about this issue to the Court when you are not present, the same witnesses who testify about the inequitable conduct issues may testify before you on matters that relate to the infringement and validity issues."]

[Ingenio contends that instructions regarding inequitable conduct, whether preliminary or post-trial in nature, are prejudicial to Ingenio and should not be included.]

## IV.     **YOUR DUTIES AS A JUROR**

As a juror in this case, you have certain duties.  Trial by jury is a cornerstone of our free society.  Faithful performance by you of your duties is vital to the administration of justice.

As jurors, you have two main duties.  Your first duty is to decide what the facts are based upon the evidence you see and hear here in court.  Deciding what the facts are is your job.  Nothing I say or do during this trial should influence your decision about the facts in any way.  In deciding what the facts are, you must not engage in guesswork or speculation.  You must not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case.  Each side is entitled to the same fair and impartial consideration.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their respective claims.  It is my job to instruct you about the law.  You are bound by the oath that you just took, and you are to follow the instructions I give you now, during the trial, and after trial, even if you personally disagree with those instructions.  All of the instructions are important and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel towards one side or the other influence your decision in any way.

637687v1

10

## V.   **BURDEN OF PROOF**

This is a civil case in which Ingenio has sued GameLogic for patent infringement. As the plaintiff, Ingenio has the burden of proving infringement by what is called a preponderance of the evidence.  That means Ingenio has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Ingenio claims is more likely true than not true.  Put differently, imagine a scale.  On one side of that scale is Ingenio's evidence of infringement, and on the other side of that scale is GameLogic's evidence of non-infringement.  For Ingenio to have shown by a preponderance of the evidence that GameLogic infringes, the scale must be tipped to Ingenio's side.  If Ingenio did not meet this burden—meaning the scale is level or tipped to GameLogic's side—then your verdict on infringement must be for GameLogic.

Ingenio also contends that GameLogic's alleged infringement was willful. Ingenio has the burden of proving willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is thus a heavier burden than proof by a preponderance of the evidence.

GameLogic contends that the '082 and '603 patents are invalid.  An issued patent is presumed valid, but that is just a presumption and it can be overcome.  GameLogic can overcome the presumption by presenting clear and convincing evidence that the asserted claims of the '082 and '603 patents are invalid.

Some of you may have heard the phrase "proof beyond a reasonable doubt."  That burden of proof applies only in criminal cases, and has nothing to do with a civil case like this one.  You should therefore not consider it in this case.

## VI.    EVIDENCE

### A.    What Is, And Is Not, Evidence

You are to decide the facts in this case based on the evidence.  The evidence will be the sworn testimony of witnesses, which may include testimony taken outside this courtroom and read into the record by the attorneys or played as a video, the exhibits entered into evidence, and facts the parties admit or agree to.  Nothing else is evidence. The attorneys' statements, arguments, and questions are not evidence.  My comments and questions are not evidence.  Objections to questions are not evidence.  Nothing you see or hear outside of this courtroom is evidence.

From time to time, it may be the duty of the attorneys to make objections to evidence that should not be presented at trial under the rules of evidence.  It is my duty as the judge to rule on those objections and to decide whether you may consider the proposed evidence.  My decision to allow or deny the proposed evidence is governed by rules of law.  You must not be influenced by an attorney's objections or by my reasons for making an evidentiary ruling.  If I sustain or uphold an objection, or order evidence stricken from trial, you may not speculate about what a witness might have said or what an exhibit might have shown.  You may not consider that evidence.

If I instruct you during trial that a given piece of evidence is admitted for a limited purpose, you must follow that instruction and consider that piece of evidence for that purpose only.  Should this occur, I will clarify what I mean at that time.

Use common sense when weighing the evidence.  Consider the evidence in light of your experiences with people and events.  Give it whatever weight, if any, you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a particular conclusion, you are free to reach that conclusion.

You are to make your decisions about the case based only on the evidence, as I just defined it, and nothing else.

**B.**   **Direct and Circumstantial Evidence**

You may have heard the terms "direct evidence" and "circumstantial evidence."  I will define these terms for you.

Direct evidence is evidence, such as the testimony of an eyewitness, which, if you believe it, directly proves a fact.  For example, if a witness testified that he or she personally observed it snowing outside yesterday, and if you believe him, he or she would have presented direct evidence that it snowed outside yesterday.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. For example, if someone walked into the courtroom wearing snow boots covered with snow, that would be circumstantial evidence from which you could conclude there was snow on the ground outside.

You are to decide how much weight, if any, to give the direct and circumstantial evidence in this case.  The law makes no distinction between the weight that you should give to either type, nor does the law indicate that either type is better than the other.  You should consider all of the evidence, both direct and circumstantial, and give it whatever weight, if any, you believe it deserves.

**C.**   **Witnesses—Conflicts in Testimony**

You will be the sole judge of the credibility of the witnesses in this case.  You will decide what weight, if any, the testimony of each witness deserves.  You may be guided by the appearance, demeanor, and apparent fairness of a witness as he or she testifies.  You may also take into account whether there is evidence to the contrary of the witness's testimony, whether there is evidence that the witness said or did something that

was different from the testimony the witness gave at trial. You may also consider whether the witness is biased, or has an interest in the outcome of this case.

You should remember that a simple mistake by a witness does not necessarily mean that he or she is not telling the truth. People tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or whether it was an intentional falsehood. This may depend upon whether it concerns an important fact or an unimportant detail.

If you find the testimony in this case to be in conflict, it will be your duty at the end of the case to try and reconcile the conflicts, if you can. If you cannot do so, it is your duty to give credit to the testimony that you, in your judgment, deem worthy of credit, and to disregard that portion of the testimony that you deem not worthy of credit.

### D.    Expert Witnesses

When scientific, technical or other specialized knowledge may be helpful to the jury, a person who has special knowledge, skill, education, training or experience in that technical field is permitted to give his or her an opinion on those technical matters. Such a person is called an "expert witness."

The value of expert testimony depends upon the qualifications and skill of the witness, the sources of the witness's information, and the reasons supplied by the witness for any opinions he or she gives. You may, but are not required to, accept the opinions of an expert witness. As with all witnesses, it is up to you to decide whether to rely upon those opinions when making your decisions.

**E.**    **Number of Witnesses**

Do not make any decisions based only on the number of witnesses who testify. Instead, concentrate on how believable each witness is and how much weight you believe his or her testimony deserves.

## VII.    CONDUCT AS JURORS

Now, a few words about your conduct as jurors.

First, during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.  If anyone should try to talk to you about the case, bring it my attention promptly.  At the end of the case—after all of the evidence has been presented, the attorneys have made their closing arguments—I will give you my final instructions on the law.  You will then retire to the jury room to deliberate on your verdict.  Until then, you simply may not talk about this case.  You may not talk to the attorneys, the witnesses, the parties' representatives, or anyone else about the case.  I also ask that you wear your juror identification tags where people can see them, so that people involved with this case do not accidentally start a conversation with you.  Even if it is an innocent conversation, it might draw into question your impartiality.  Please make sure people can identify you as a juror in this case.

Second, do not read or listen to anything touching on this case that is not admitted into evidence.  By that I mean that if there were a newspaper article, radio program, or television program about this case, you must not read the article, listen to the radio program, or watch the television program.  In addition, do not do any independent research or investigation on your own relating to this case.  For example, do not get onto the Internet to look up issues related to this case.  Focus only on the evidence presented to you here during the trial.

Do not reach any conclusions as to the issues presented until both sides have presented their case, and all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

If you wish to, you may take notes during the presentation of evidence, closing arguments of the attorneys, and during my instructions to you on the law. My courtroom deputy will arrange for pens, pencils, and paper. If you do take notes, leave them in the jury room when you leave at night. Remember that they are for your own personal use. Your notes are not to be given to or read by anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. You should not, however, assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of the testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

A.    <u>Note-taking is permitted, but not required</u>. Each of you may take notes. No one is required to take notes.

B.    <u>Be brief</u>. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. Over-indulgence in note taking may be distracting. You, the jurors, must asses the credibility of witnesses. Therefore, you must observe the demeanor and appearance of each witness to assist you in assessing on his or her or her credibility. Note taking must not distract you from that task.

C.    <u>Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors</u>. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence. They are by no means a

complete outline of the proceedings or a list of the highlights of the trial. They are valuable, if at all, only to stimulate your memory. You memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. Therefore, you are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

       D.     <u>Do not take your notes away from court</u>. I repeat, at the end of each day, please leave your notes in the jury room. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations.

## VIII.   GENERAL INSTRUCTIONS

A.      Temperature.  Dress in layers.  It is difficult for our landlord, the Government Services Administration, to maintain a constant temperature in the building. This is particularly true when the seasons are changing and the temperature outside is erratic.  Please bring a sweater or jacket.

B.      Jury Stickers.  Please wear the stickers you've been given that identify you as jurors.  We do not have specialized access for you to the elevators or other common areas in the building.  You will be sharing those areas with the representatives of the parties and others who have business with the Court.  Everyone wants to help you maintain the appropriate detachment you must have in order to avoid being influenced by things outside of the courtroom.  By wearing your stickers, you help the parties and other to preserve that detachment.  Please do not be offended if the attorneys, court personnel, or others involved with the trial seem standoffish when you see them.  They are not trying to be unfriendly; they are simply obligated to avoid contact with you outside the courtroom.

C.      Security System and Timeliness.  When you came into the building today, you had to go through a security screening system.  If you had a cell phone, you had to check it with one of the Court Security Officers.  Such screening can cause delays. Please plan your arrival time at court in a manner that will allow you to be in the jury room before 9:00 A.M. each day of trial so that you can all come in and be seated together in the jury box promptly at 9:00 A.M.  Doing your part in the morning and after breaks helps us to begin on time.  Sometimes, however, other participants in this proceeding will cause you to wait, even when you have done everything asked of you.  I promise that I will do my utmost to hold such delays to the absolute minimum.  While we

may be able to eliminate these issues entirely, there are times during the course of a trial when matters arise which could not reasonably have been anticipated and which require the Court's attention. For example, the attorneys may have a legal issue that they need help resolving and in which it would not be appropriate to involve you, the jury. If we have to deal with matters outside your presence, please be patient. Likewise, if I am required to deal with other proceedings, I ask your indulgence. Neither the Court nor the parties mean you any disrespect by a delay. On the contrary, your willingness to serve and the sacrifice of your time is deeply appreciated by all of us involved in these proceedings.

       D.    <u>Schedule</u>. We will begin taking testimony each day at 9:00 A.M. We plan to have mid-morning break at about 10:30 A.M., a one-hour lunch recess from approximately 12:30 to 1:30 P.M., and a mid-afternoon break at about 3:00 P.M. We plan to conclude the taking of testimony by 4:30. You can plan that you will be able to leave court each day at 4:30.

## IX.    **COURSE OF THE TRIAL**

The trial will now begin.

First, Ingenio will make an opening statement outlining its case.  GameLogic will then make an opening statement about its case.  Opening statements by either party are not evidence.  The only purpose of an opening statement is to help you understand what each party intends to prove, and is presented to help you follow the evidence as it is offered.

After the opening statements, Ingenio will present its witnesses and GameLogic may cross-examine these witnesses.  Then, GameLogic will present its witnesses, and Ingenio may cross-examine these witnesses.  Both sides may offer documents into evidence.

When all of the evidence is in, the attorneys will make their closing arguments to summarize and interpret the evidence for you.  Closing arguments are not evidence.  The only purpose of a closing argument is to summarize the case and to help you understand what evidence was presented during the trial.

At the end of this trial but before you begin your deliberations, I will read and give you a copy of written instructions and describe for you the matters you must decide.

Finally, you will retire to the jury room to deliberate and to arrive at your verdict.

Would anyone like a pad of paper and pen or pencil?

## X.    GLOSSARY OF PATENT TERMS

**Assignment**  Transfer of ownership rights in a patent or patent application from one person or company to another person or company.

**Application**  The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO").

**Claims**  The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

**License**  Permission to use the patented invention, which may be granted by a patent owner in exchange for a fee called a "royalty" or other consideration.

**Office Action**  Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

**Ordinary Skill In the Art**  The ordinary level of experience, education, and/or training possessed by those individuals who work in the area of the invention.

**Patent Examiners**  Personnel employed by the PTO who review (examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable over the prior art before the examiner and whether the disclosure adequately describes the invention.

**Prior Art**  Knowledge that is available to the public either prior to the invention by applicant or more than one year prior to the filing date of the application.

**Prosecution History**  The written record of the proceedings between the applicant and the PTO including the original patent application and later communications between the PTO and applicant. The prosecutions history may also be referred to as the "file wrapper" of the patent during the course of this trial.

**Reference**  Any item of prior art used to determine patentability.

**Specification**  The information that appears in the patent and concludes with one or more claims. The specification includes the written text, the claims and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so and what the inventor believed at the time of filing to be the best way of making his or her invention.

[Ingenio proposes adding the following Glossary of Technical Terms. GameLogic objects to the presentation of the Court's claim constructions in these Preliminary Jury Instructions as premature, and, without the context of the relevant asserted claims, likely confusing to the jury. GameLogic proposes that the jury be provided with the Court's claim constructions in writing in the Final Jury Instructions.]

## XI.  GLOSSARY OF TECHNICAL TERMS

| Claim Term | The Court's Construction |
|---|---|
| code which includes data indicating whether the player wins or loses | The court construes [] "indicating" in the context of "code which includes data indicating whether the player wins or loses" to mean that the code "shows the way to, points out, or makes clear in another way." |
| lottery game | The court construes "lottery game" to mean "a game based on three basic principles: payment associated with participation in a chance to win; a result based on chance; and a prize awarded to the winner(s)." |
| amusement game | The court construes "amusement game" in the context of the phrase "the lottery game and an amusement game" to mean "a game which amuses the player, which can be combined with or separate from the 'actualization' game which reveals the result of the lottery game." |
| data being unrecognizable to the player | The court construes the phrase "data being unrecognizable to the player" to mean "the player is not able to recognize from the data whether the player wins or loses the lottery game and amusement game." |
| a processor | The court construes "a processor" to mean "one or more processors." |
| reading the code by a processor | The court construes "reading" in the context of the phrase "reading the code by a processor" [] to mean "receiving input of the code from some source, which may include a computer program/software source." |

| Claim Term | Stipulated Construction |
|---|---|
| gaming piece | The parties agree that the term "gaming piece" means "a physical element used with the game, including, but not limited to a paper ticket, plastic piece, token, casino chip simulating a coin, a magnetic medium or laser readable medium (e.g., floppy disk or CD-ROM)." |
| including a code | The parties agree that "including a code," in the context of the phrase "gaming piece including a code," means "a gaming piece that stores the code in or on the gaming piece." |
| code | The parties agree that "code" means "a system of symbols (as letters or numbers used to represent assigned and often secret meanings." |