## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INGENIO, FILIALE DE LOTO-QUEBEC, INC.,

                    Plaintiff,

       v.

GAMELOGIC, INC.,

                  Defendant.

Civil Action No. 04-1532 (KAJ)

## JOINT PROPOSED
## FINAL JURY INSTRUCTIONS

Dated:  October 2, 2006

637697v1

TABLE OF CONTENTS

Page

1.   GENERAL INSTRUCTIONS ................................................................ 1

 1.1   INTRODUCTION .......................................................... 1

 1.2   JURORS' DUTIES ......................................................... 2

 1.3   BURDENS OF PROOF ................................................. 3

2.   THE PARTIES' CONTENTIONS ...................................................... 4

3.   INFRINGEMENT ............................................................................. 5

 3.1   INFRINGEMENT – BURDEN OF PROOF .................................. 6

 3.2   PATENT CLAIMS ........................................................ 7

   3.2.1   PATENT CLAIMS – GENERALLY ................................. 7

   3.2.2   PATENT CLAIMS – DEPENDENT AND
       INDEPENDENT.................................................... 9

   3.2.3   THE COURT DETERMINES WHAT PATENT
       CLAIMS MEAN................................................... 10

 3.3   PATENT INFRINGEMENT – DIRECT........................................ 13

   3.3.1   DIRECT INFRINGEMENT – LITERAL ........................ 15

   3.3.2   INFRINGEMENT OF OPEN ENDED OR "COMPRISING"
       CLAIMS ............................................................17

 3.4   DIRECT INFRINGEMENT – DOCTRINE OF
     EQUIVALENTS.................................................... 18

 3.5   SITUATIONS WHERE RESORTING TO DOCTRINE OF
     EQUIVALENTS IS NOT PERMITTED ..................................... 22

   3.5.1   LIMITATIONS ON THE DOCTRINE OF
       EQUIVALENTS – PROSECUTION HISTORY
       ESTOPPEL........................................................ 24

 3.6   INDIRECT INFRINGEMENT – GENERALLY ......................... 26

 3.7   INDUCING PATENT INFRINGEMENT ................................. 27

 3.8   CONTRIBUTORY INFRINGEMENT .................................... 29

 3.9   DETERMINATION OF INFRINGEMENT .............................. 30

4.   VALIDITY ........................................................................................ 31

 4.1   PRESUMPTION OF VALIDITY ......................................... 32

 4.2   DOUBLE PATENTING GENERALLY.................................. 33

TABLE OF CONTENTS
(continued)

|  |  | 4.2.1 | STATUTORY DOUBLE PATENTING | 34 |
|  |  | 4.2.2 | NON-STATUTORY, OBVIOUSNESS-TYPE DOUBLE PATENTING | 36 |
|  | 4.3 |  | ANTICIPATION – GENERALLY | 38 |
|  |  | 4.3.1 | PRIOR PUBLICATION | 40 |
|  |  | 4.3.2 | ANTICIPATING PRIOR ART | 41 |
|  |  | 4.3.3 | PRIOR PATENTS | 42 |
|  | 4.4 |  | OBVIOUSNESS | 43 |
|  |  | 4.4.1 | SCOPE AND CONTENT OF THE PRIOR ART | 45 |
|  |  | 4.4.2 | DIFFERENCES OVER THE PRIOR ART | 47 |
|  |  | 4.4.3 | LEVEL OF ORDINARY SKILL | 48 |
|  |  | 4.4.4 | MOTIVATION TO COMBINE | 50 |
|  |  | 4.4.5 | THE PRIOR ART AT ISSUE | 53 |
|  |  | 4.4.6 | OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS | 55 |
| 5. |  |  | WILLFUL INFRINGEMENT | 59 |
| 6. |  |  | INEQUITABLE CONDUCT | 62 |
|  | 6.1 |  | MATERIALITY | 64 |
|  | 6.2 |  | INTENT | 66 |
|  | 6.3 |  | BALANCING | 68 |
|  | 6.4 |  | INEQUITABLE CONDUCT CAN TAINT SUBSEQUENT PATENTS | 69 |
| 7. |  |  | DELIBERATIONS AND VERDICT | 71 |
|  | 7.1 |  | INTRODUCTION | 71 |
|  | 7.2 |  | UNANIMOUS VERDICT | 72 |
|  | 7.3 |  | DUTY TO DELIBERATE | 73 |
|  | 7.4 |  | COURT HAS NO OPINION | 74 |

# 1.     GENERAL INSTRUCTIONS

## 1.1     INTRODUCTION

Members of the jury, I will now instruct you about the law that you must follow in deciding this case.

I will start by reminding you about your duties as jurors and the instructions you heard at the beginning of the case.

I will then explain the positions of the parties and the law you will apply in this case.

Last, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Sources:

*Tristrata Technology, Inc. v. ICN Pharma., Inc*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

## 1.2    JURORS' DUTIES

Remember your duties as jurors as I explained them to you at the beginning of the case. You must decide what the facts are from the evidence you saw and heard in court. Nothing I have said or will say should influence your determination of the facts in any way. Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case. All parties are entitled to the same fair and impartial consideration.

You must also take the principles of law that I will now explain to you and apply them to the facts in reaching your verdict. You are bound by the oath you took to follow my instructions, even if you personally disagree with them.

All of my instructions are important, and you should consider them together as a whole. This includes the instructions that I gave you when we started and during trial. I will not repeat my earlier instructions about evidence and how to weigh and consider it. You have copies of these instructions, however, and you should refer to them as you feel necessary.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

Sources:

*Tristrata Technology, Inc. v ICN Pharma, Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

### 1.3    BURDENS OF PROOF

Ingenio has the burden to prove its claims of patent infringement by a preponderance of the evidence. That means Ingenio must produce evidence that, when considered in light of all of the facts, leads you to believe that what Ingenio claims is more likely true than not. To put it differently, if you were to put Ingenio's and GameLogic's evidence on the opposite sides of a scale, the evidence supporting Ingenio's claims would have to make the scales tip somewhat on its side.

Defendant has the burden to prove that a patent claim is not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. **[GameLogic proposes the following additional language to this paragraph, indicated in bold and underline:] Defendant also has the burden to prove that the patents are unenforceable because of inequitable conduct by clear and convincing evidence. [Ingenio contends that instructions regarding inequitable conduct are prejudicial and should not be included.]**

In addition, Ingenio must prove its willful infringement claim by clear and convincing evidence and not by a preponderance of the evidence, the standard that applies to Ingenio's other claims in this case.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

Sources:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

**2.    THE PARTIES' CONTENTIONS**

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following main issues:

1.    whether Ingenio has proven by a preponderance of evidence that GameLogic's HomePlay Lottery system and proposed method of using it infringe claims 4, 6, 9, 10, 13, and 15 of United States Patent No. 5,569,082 (the '082 patent);

2.    whether Ingenio has proven by a preponderance of evidence that GameLogic's proposed method of using its HomePlay Lottery system infringes claim 1 of U.S. Patent No. 5,709,603 (the '603 patent);

3.    whether GameLogic has proven by clear and convincing evidence that claims 1, 4, 6, 9, 10, 13, and 15 of the '082 'patent are invalid;

4.    whether GameLogic has proven by clear and convincing evidence that claim 1 of the '603 patent is invalid;

5.    if the '082 patent is infringed, whether Ingenio has proven by clear and convincing evidence that the infringement of the '082 patent was willful; and

6    if the '603 patent is infringed, whether Ingenio has proven by clear and convincing evidence that the infringement of the '603 patent was willful.

### 3.    INFRINGEMENT

At the beginning of the trial I gave you some general information about patents and the patent system and a brief overview of the patent laws that relate to this case. If you would like to review my earlier instructions at any time during your deliberations, they will be available to you in the jury room.

As I stated before, Ingenio alleges that GameLogic has infringed certain claims of the '082 and '603 patents. If any person makes, uses, sells, offers to sell, or imports what is covered by a patent claim without the patent owner's permission, that person is said to *infringe* the patent. I will now instruct you on the specific rules you must follow in deciding whether Ingenio has proven that GameLogic has infringed one or more of the claims of the patents-in-suit.

<u>Sources:</u>

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

### 3.1    INFRINGEMENT – BURDEN OF PROOF

To prove infringement of a patent, Ingenio must persuade you by a preponderance of the evidence that GameLogic has infringed a claim in the patent.

### 3.2     PATENT CLAIMS

**3.2.1**                              **PATENT CLAIMS – GENERALLY**

To decide whether GameLogic has infringed Ingenio's patent, you will have to understand the patent "claims." As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of a patent. The claims describe the invention made by the inventor. This is what the patent owner owns and what the patent owner may prevent others from making, using, selling, or offering to sell. For the '082 patent, the claims involved here are claims 4, 6, 9, 10, 13, and 15, beginning at column 10, line 66 of the patent, which is Plf. No. 1 in evidence. For the '603 patent, the patent claim involved here is claim 1, beginning at column 15, line 64 of the patent, which is Plf. No. 2 in evidence.

Claims may describe products, such as machines or chemicals, or they may describe methods for making or using a product. Only the claims of the patent can be infringed. A patent also includes drawings and discussion of examples of the invention, but the drawings and examples cannot be infringed. You should not compare GameLogic's HomePlay Lottery system and proposed method of using it with any specific example set out in the '082 or '603 patents nor with any products used or licensed by Ingenio. Only the *claims* of the patent can be infringed. Neither the written description, nor the drawings of a patent can be infringed. You must only compare GameLogic's HomePlay Lottery system and proposed method of using it with the *claims* of the patent when making your decision regarding infringement.

Each claim of a patent represents separate patent protection given to a patent owner, and you must individually consider each of the patent claims involved in this case.

637697v1                                     7

Sources:

*Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Tristrata Technology, Inc. v. ICN Pharma , Inc* , C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

### 3.2.2          PATENT CLAIMS – DEPENDENT AND INDEPENDENT

Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate element of the claim.

There are two different types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. In simple terms, an independent claim stands on its own two feet. An independent claim is read alone to determine the elements that must exist to infringe the claim. Claim 10 of the '082 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes all of the elements in the claim to which it refers. Therefore, to determine what a dependent claim covers, you must look at both the elements of the dependent claim and the claim to which it refers.

For example, claim 15 of the '082 patent is a dependent claim. It refers to claim 10 of the '082 patent. For a product to infringe dependent claim 15, the product must have all the elements of both claim 10 and claim 15. Therefore, if you find that an independent claim is not infringed, you must also find that all claims depending on that independent claim are also not infringed.

**[Ingenio proposes adding the following paragraph, indicated in bold and italics, to which GameLogic objects as unduly prejudicial:]**

***Also, when deciding whether dependent claims 4, 6, and 9 of the '082 patent are infringed, you do not need to consider whether independent claim 1 is infringed because I have already determined that claim 1 of the '082 patent is infringed.***

**3.2.3**                    **THE COURT DETERMINES WHAT**
**PATENT CLAIMS MEAN**

It is the Court's duty under the law to define what the words of the patent claims mean. I have made my determinations and I will now instruct you on the meaning of certain claim terms. You must accept the meaning that I give you for each claim term and use those meanings to make your decision whether the claim is infringed or invalid. You must ignore any different definitions used by the witnesses or the attorneys.

It may be helpful to refer to the copy of the asserted patents that you have been given as I discuss the claims at issue here. The claims of the '082 patent are toward the end, starting in column 10 and claim 1 of the '603 patent starts in column 15 of that patent. I will give you a list of the asserted claims of both patents as part of the verdict form when I conclude my instructions. I will now tell you the meanings of the following words and groups of words from the patent claims.

| Claim Term | The Court's Construction |
|---|---|
| "code which includes data indicating whether the player wins or loses" | The court construes "indicating" in one of the phrases in the patent which states: "code which includes data indicating whether the player wins or loses" to mean that the code "shows the way to, points out, or makes clear in another way." |
| "lottery game" | The court construes "lottery game" to mean "a game based on three basic principles: payment associated with participation in a chance to win; a result based on chance; and a prize awarded to the winner(s)." |
| "amusement game" | The court construes "amusement game" in the context of the phrase "the lottery game and an amusement game" to mean "a game which amuses the player, which can be combined with or separate from the 'actualization' game which reveals the result of the lottery game." |

| | |
|---|---|
| "data being unrecognizable to the player" | The court construes the phrase "data being unrecognizable to the player" to mean "the player is not able to recognize from the data whether the player wins or loses the lottery game and amusement game." |
| "a processor" | The court construes "a processor" to mean "one or more processors." |
| "reading the code by a processor" | The court construes "reading" in the context of the phrase "reading the code by a processor" to mean "receiving input of the code from some source, which may include a computer program/software source." |
| "processor within a computing device" | The court construes the term "processor within a computing device" to be synonymous with the term "processor" as it is used in claim 1 of the '082 patent. |
| "gaming piece" | The parties agreed that the term "gaming piece" means "a physical element used with the game, including, but not limited to a paper ticket, plastic piece, token, casino chip simulating a coin, a magnetic medium or laser readable medium (e.g., floppy disk or CD-ROM)." |
| "including a code" | The parties agreed that "including a code" in the context of the phrase "gaming piece including a code" means "a gaming piece that stores the code in or on the gaming piece." |
| "code" | The parties agreed that "code" means "a system of symbols (as letters or numbers used to represent assigned and often secret meanings." |

You should give the rest of the words in the claims their ordinary meaning in the context of the patent specification and prosecution history.

Sources:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878 (Fed. Cir. 1988); July 21, 2006 Claim Construction Order.

### 3.3    PATENT INFRINGEMENT – DIRECT

I will now instruct you as to the rules you must follow when deciding whether Ingenio has proven that GameLogic infringed any of the asserted claims of the '082 or '603 patents. A patent owner may enforce his right to stop others from making, using, selling, or offering to sell the patented invention by filing a lawsuit for patent infringement. Here, Ingenio has sued GameLogic and has alleged that GameLogic's HomePlay Lottery system and proposed method of using it directly infringes claims 4, 6, 9, 10, 13, and 15 of the '082 patent and claim 1 of the '603 patent. I will refer to GameLogic's HomePlay Lottery system and proposed method of using it as the accused product.

Deciding whether a claim has been directly infringed is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I just told you what certain terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to the accused product to determine whether every element of the claim can be found in the accused product. This element-by-element comparison is your responsibility as the jury for this case.

There are two ways in which a patent claim may be directly infringed. First, a claim may be literally infringed. Second, a claim may be infringed under what is called the "doctrine of equivalents." I will explain literal and doctrine of equivalents infringement shortly.

**[Ingenio proposes adding the following paragraph (in bold and italics)-- a similar instruction appears in the Proposed Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware (2005)]**

*In this case, Ingenio asserts that GameLogic has directly infringed the '082 patent. GameLogic would be liable for directly infringing the '082 patent if you find that Ingenio has proven that it is more likely than not that GameLogic has made, used, offered to sell, or sold the invention defined in at least one claim of Ingenio's patent.* **[GameLogic objects to this paragraph as unnecessary and containing bias, as the context of this instruction is to generally outline the applicable law.]**

Someone can directly infringe a patent without knowing that what they are doing is an infringement of the patent. They also may infringe even though they believe in good faith that what they are doing is not an infringement of any patent.

Sources:

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 478 (1974); *Filmways Pictures, Inc. v. Marks Polarized Corp.*, 552 F. Supp. 863, 868 (S.D.N.Y. 1982); *Tristrata Technology, Inc. v. ICN Pharma., Inc*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); 35 U.S.C. 271(a); *DeMarini Sports, Inc. v. Worth, Inc*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Seal-Flex, Inc. v. Athletic Track and Court Constr*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp*, 859 F.2d 878, 889 (Fed. Cir. 1988); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361 (Fed. Cir. 1983), *overruled on other grounds, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*, 234 F.3d 558, 574 (Fed.Cir. 2000).

### 3.3.1                    DIRECT INFRINGEMENT – LITERAL

A patent claim in the '082 or '603 patent is literally infringed if GameLogic's HomePlay Lottery system and proposed method of using it includes every element or step in that claim. If GameLogic's HomePlay Lottery system or proposed method of using it omits any element or step recited in the claim, GameLogic does not literally infringe that claim. You must determine literal infringement with respect to each patent claim individually.

The accused HomePlay Lottery system or proposed method of using it should be compared to the invention described in each patent claim it is alleged to infringe. In this case, there are both method and apparatus claims being asserted. Method claims recite a series of steps which constitute the invention. **[GameLogic proposes the additional sentence, indicated in bold and underline, to which Ingenio objects:]** <u>**A method claim is directly infringed only if each step of the claimed method is actually practiced by someone.**</u> The capability of a device to be used in the claimed method is insufficient to find direct infringement. An apparatus claim recites a series of elements. An apparatus claim is directly infringed if the accused system has every element in the apparatus claim.

GameLogic's HomePlay Lottery system and proposed method of using it should be compared to the invention described in each patent claim it is alleged to infringe, not to the Ingenio's preferred or commercial embodiment of the claimed invention. The same element of GameLogic's HomePlay Lottery system and proposed method of using it may satisfy more than one element of a claim.

Sources:

*Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984); *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1484 (Fed. Cir. 1984); *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279 (Fed. Cir. 1986); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).

### 3.3.2                    INFRINGEMENT OF OPEN ENDED OR
### "COMPRISING" CLAIMS

The preamble to claim 10 uses the phrase "A lottery type game comprising."

The word "comprising" means "including the following but not excluding others."

If you find that GameLogic's HomePlay Lottery system includes all of the

elements in claim 10, the fact that GameLogic's HomePlay Lottery system might

include additional components would not avoid literal infringement of a claim that

uses "comprising" language.

For example, a claim to a table *comprising* a tabletop, legs and glue would be

infringed by a table that includes those elements, even if the table also includes

additional elements such as wheels on the table's legs.

*Invitrogen Corp. v. Biocrest Mfg. LP*, 327 F.3d 1364, 1368 (Fed. Cir. 2003); *AFG Indus. v. Cardinal IG Co.*, 239 F.3d 1239, 1244 (Fed. Cir. 2001); *AB Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1271 (Fed. Cir. 1986).

### 3.4    DIRECT INFRINGEMENT – DOCTRINE OF EQUIVALENTS
### [Ingenio Proposed]

**[The parties disagree as to this instruction. Thus, Ingenio proposes the following instruction for 3.4, and GameLogic has provided an alternative 3.4 below]**

If you decide that GameLogic's HomePlay Lottery system and proposed method of using it does not literally infringe an asserted patent claim, you must decide whether infringement has been proven under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

Under the doctrine of equivalents, the system and proposed method of using it can infringe an asserted patent claim if it includes parts that are identical or equivalent to the requirements of the claim. If the system and proposed method of using it is missing an identical or equivalent part or step to even one part of the asserted patent claim, the system and proposed method of using it cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the system and proposed method of using it has an identical or equivalent part or step to that individual claim requirement. A part of an system or step of a method is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of the system or step of the method is not substantial is to consider whether, as of the time of the alleged infringement, the part of the system or step of the method performed substantially the same function, in substantially the

same way, to achieve substantially the same result as the requirement in the patent claim. In deciding whether any difference between a claim requirement and the system is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement. The known interchangeability between the claim requirement and the part of the system or step of the method is not necessary to find infringement under the doctrine of equivalents. The same parts of the accused system or steps of the accused method may satisfy more than one element of a claim.

It is not a requirement for infringement under the doctrine of equivalents that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether GameLogic's product and its elements are equivalent to those defined in Ingenio's claims is to be determined as of the time of the alleged infringement.

Sources:

*Atlas Powder Co. v. E.I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1579-1580, 1581 (Fed. Cir. 1984); *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609, *reh'g denied*, 340 U.S. 845 (1950); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Johnson & Johnson Assoc. v. R.E. Service Co.*, 285 F.3d 1046 (Fed. Cir. 2002) (*en banc*); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994).

## 3.4    DIRECT INFRINGEMENT – DOCTRINE OF EQUIVALENTS
### [GameLogic Proposed]

If you do not find literal infringement of a claim to have been proven, you must decide whether infringement has been proven under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

For there to be infringement, every claim element must be present in the accused product. A claim element is present in an accused product under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused product are insubstantial. One way to determine this is to look at whether or not the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent.

It is not a requirement for infringement under the doctrine of equivalents that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether GameLogic's product and its elements are equivalent to those defined in Ingenio's claims is to be determined as of the time of the alleged infringement.

Sources:

*Atlas Powder Co. v. E.I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1579-1580, 1581 (Fed. Cir. 1984); *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609, *reh'g denied*, 340 U.S. 845 (1950).

### 3.5    SITUATIONS WHERE RESORTING TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED

**[Ingenio proposes removing instructions 3.5 and 3.5.1 because the Court has not ruled on which elements are not entitled to Doctrine of Equivalents analysis. If the Court rules that certain elements are not entitled to Doctrine of Equivalents analysis, Ingenio reserves its right to submit a counter-proposal to these instructions.]**

There are situations where resorting to the doctrine of equivalents to find infringement is not permitted.

Patent law directly imposes certain limitations on the doctrine of equivalents. It is my duty and responsibility to decide whether or not any of these limitations applies in this case and to instruct you on my decision. In this action, as a matter of law, the doctrine of equivalents analysis cannot be applied to claims 1, 6, 10, 13 and 15 of the '082 patent.

If an element from those claims is not literally present within GameLogic's product, there can be no infringement of the claim requiring that element.

In addition, resorting to the doctrine of equivalents to find infringement is not permitted if you find that GameLogic is merely making, using, selling, or offering to sell what was in the prior art prior to the patented invention, or what would have been obvious to persons of ordinary skill in the art in light of what was in the prior art. A patent owner should not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent Office.

You may not find infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is missing from the accused device. Thus, if you

determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claim element, then you should not find infringement under the doctrine of equivalents.

Sources:

*ISCO Int'l v. Conductus*, C.A. No. 01-487-GMS.

### 3.5.1    LIMITATIONS ON THE DOCTRINE OF EQUIVALENTS – PROSECUTION HISTORY ESTOPPEL

**[Ingenio proposes removing instructions 3.5 and 3.5.1 because the Court has not ruled on which elements are not entitled to Doctrine of Equivalents analysis. If the Court rules that certain elements are not entitled to Doctrine of Equivalents analysis, Ingenio reserves its right to submit a counter-proposal to these instructions.]**

You are instructed that the doctrine of equivalents is limited by what is called "prosecution history estoppel." As you have already heard, during prosecution of the patent, the patent applicant often makes arguments and amendments in an attempt to convince the PTO examiner to grant the patent. The party seeking to obtain a patent may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims to obtain the patent. Once he has done so, he is not entitled to patent coverage under the doctrine of equivalents that would be so broad that it would cover the same feature that was used to distinguish the invention during the prosecution of the patent. Put differently, a patent application may not give up certain things in order to get a patent and then try to enforce or get back what he gave up during a lawsuit.

In this case, you are instructed that prosecution history estoppel applies and the doctrine of equivalents analysis cannot be applied to claims 1, 6, 10, 13 and 15 of the '082 patent.

Unless each of these elements is literally present within GameLogic's HomePlay Lottery system, there can be no infringement of the claim.

Sources:

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 152 L. Ed. 2d 944, 122 S. Ct. 1831 (2002); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 304 F.3d 1289 (Fed. Cir. 2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997).

### 3.6    INDIRECT INFRINGEMENT – GENERALLY

In addition to stopping infringement by those who are directly infringing, a patent owner also has the right to stop those who are known as "indirect infringers." A holder of a patent that describes a process or method in its claims often must rely on claims of indirect infringement to protect his or her rights. That is, without liability for indirect infringement, a company could cause or help others to infringe without fear of being sued by the patent holder.

There are two types of indirect infringers. First, there are those who encourage or induce others to infringe a patent; this is known as "inducing infringement." Second, there are those who contribute to infringement by, for example, supplying them with components used in the patented invention. This is known as "contributory infringement." I will explain to you in a moment the precise requirements for finding someone has induced or contributed to infringement by another person.

In this case, Ingenio accuses GameLogic of inducing or contributing to the infringement of the asserted claims of the '082 and '603 patents. It is your job to determine whether Ingenio has proven inducement of or contributory infringement by a preponderance of the evidence. Keep in mind that there can be no indirect infringement unless someone is directly infringing the patent. Thus, to prove that GameLogic is inducing another person to infringe or contributing to the infringement of another, Ingenio must have proved by a preponderance of the evidence that GameLogic or another party is directly infringing a claim of the patent.

Sources:

*Moleculon Research Corp. v. CBS, Inc.*, 792 F.2d 1261, 1272 (Fed. Cir. 1986); *Tristrata Technology, Inc. v. ICN Pharma , Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

## 3.7    INDUCING PATENT INFRINGEMENT

Inducement to infringe requires someone purposefully urging or encouraging another to infringe a patent – inducement to infringe cannot occur unintentionally. This is different from direct infringement, which, as I have told you, can occur without any intent to infringe. To be liable for inducement to infringe, GameLogic must have known of the patent and actively encouraged or instructed another person how to use a product or perform a method in a manner that you find infringes the asserted patent claims. For example, an accused inducer may be liable for inducing infringement if it provided instructions or directions to perform the infringing act through labels, advertising or other materials.

Thus, to prove that GameLogic induced infringement of the asserted claims, Ingenio must prove by a preponderance of the evidence the following three things:

1.    GameLogic actively encouraged or instructed another person how to use a product in an infringing manner;

2.    GameLogic knew of the asserted patents; and

3.    The other person infringed an asserted claim of the either the '082 or '603 patents.

All three of these things must be proven before you may find that GameLogic induced patent infringement.

**[Ingenio proposes adding the following paragraph indicated in bold and italics, to which GameLogic objects as unnecessary and prejudicial in the context of this general instruction:]**

***Ingenio asserts that GameLogic actively induced another to infringe the '082 and '603 patents. Keep in mind that it is not necessary to show that GameLogic has***

*directly infringed as long as you find that someone has directly infringed. If there is no direct infringement by anyone, GameLogic has not induced infringement. If GameLogic provided instructions and directions to perform the infringing act through labels, advertising or other sales methods or by supplying the components used in an infringing method or apparatus with the knowledge and intent that its customer would use the components to make, use, or sell the patented invention, this may be evidence of inducement to infringe.*

Sources:

*Glaxo Wellcome v. Genentech*, No. 99-335-RRM; *Novartis Seeds, Inc. v. Monsanto Co.*, No. 97-39-RRM; AIPLA Model Patent Jury Instructions; *Moleculon Research Corp. v. CBS, Inc.*, 792 F.2d 1261, 1272 (Fed. Cir. 1986); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

## 3.8    CONTRIBUTORY INFRINGEMENT

The second form of indirect infringement is contributory infringement. Contributory infringement can occur, for example, when someone supplies a part that is used to infringe one of the patent claims. The necessary proof to show contributory infringement is focused on the intent of the person supplying the part and the nature of that part. Specifically, to prove contributory infringement by GameLogic of the asserted patents, Ingenio must prove by a preponderance of the evidence the following three things:

1.    The part supplied or offered by GameLogic is not a common part used for significant non-infringing uses, but rather, the part is especially made or adapted for a use that infringes the claimed invention.

2.    Defendant knew of the asserted patents and sold the accused part knowing that the part was especially made for a use that infringes the invention.

3.    Someone then bought the part and actually used it in a way that infringes each limitation of an asserted claim of the '082 or '603 patents.

All three of these things must be proven before you may find that GameLogic contributed to the patent infringement.

Sources:

35 U.S.C. 271(c); *Mentor H/S, Inc. v. Med. Device Alliance, nc.*, 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co*, 803 F.2d 1170, 1174 (Fed. Cir. 1986); 4 Donald S. Chisum, *Patents* 17.03[3], n.6 (2002).

### 3.9    DETERMINATION OF INFRINGEMENT

Taking each asserted claim of the '082 and '603 patents separately, if you find that Ingenio has proven by a preponderance of the evidence that each element of the claim is present, either literally or under the doctrine of equivalents, in GameLogic's accused HomePlay Lottery system, then you must find that GameLogic's HomePlay Lottery system infringes that claim.

Sources:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

4.    **VALIDITY**

GameLogic contends that the asserted claims 1, 4, 6, 9, 10, 13, and 15 of the '082 and claim 1 of the '603 patent are invalid for failure to satisfy the legal requirements of patentability.  **[GameLogic proposes adding the bold and underlined language in the following sentence, to which Ingenio objects as set forth below:]**  In particular, Defendant contends that the asserted claims are invalid for <u>**double patenting,**</u> anticipation, and obviousness.  I will now instruct you on each of these defenses.  **[Ingenio contends that the Court should not permit GameLogic to raise invalidity contentions based on double-patenting because these contentions were not raised in GameLogic's expert report or provided in its response to Interrogatories during discovery.  *See* Ingenio's Motion in *Limine* No. 1.]**

## 4.1    PRESUMPTION OF VALIDITY

The granting of a patent by the Patent Office carries with it the presumption that the patent's subject matter is new, useful and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put at issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law. District courts may reach different conclusions than the Patent Office regarding the validity of a patent even when relying on evidence that was considered by the Patent Office.

GameLogic has the burden of proving invalidity of each claim by clear and convincing evidence.

Sources:

35 U.S.C. § 282; *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988); *Tristrata Technology, Inc. v. ICN Pharma , Inc* , C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Tyler Refrigeration v. Kysor Indus. Corp.*, 777 F.28 687, 690 (Fed. Cir. 1985).

### 4.2    DOUBLE PATENTING GENERALLY

**[Ingenio contends that the Court should not permit GameLogic to raise invalidity contentions based on double-patenting because these contentions were not raised in GameLogic's expert report or provided in its response to Interrogatories during discovery.** *See* **Ingenio's Motion in** *Limine* **No. 1.]**

The double patenting doctrine generally prevents a patentee from receiving two patents for the same invention.  GameLogic must prove double patenting by clear and convincing evidence.  The proscription against double patenting take two forms: statutory and non-statutory.

Sources:

35 U.S.C. § 101; *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1372 (Fed. Cir. 2005). *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.3d 1569 (Fed. Cir. 1991).

### 4.2.1                          STATUTORY DOUBLE PATENTING

**[Ingenio contends that the Court should not permit GameLogic to raise invalidity contentions based on double-patenting because these contentions were not raised in GameLogic's expert report or provided in its response to Interrogatories during discovery.  *See* Ingenio's Motion in *Limine* No. 1.  If the Court permits these invalidity contentions, then Ingenio proposes the following additional language to the double patenting instructions, as indicated by bold and italics:]**

Statutory, or "same invention" double patenting provides that more than one patent may not issue on the same invention.  Accordingly, a patent applicant may obtain *a* patent for *an* invention.  Statutory double patenting prohibits a second patent on subject matter identical to an earlier patent.  One test is whether one of the claims could be literally infringed without literally infringing the other.  If it is determined that the same invention is being claimed twice, patent law forbids the grant of the second patent.

*There can be no statutory double patenting where the claims at issue are drawn to different categories of inventions.  For example, there cannot be statutory double patenting where one claim is drawn to a method and another claim is drawn to a system or apparatus.*

*Also, there can be no statutory double patenting where one claim has an additional element that is not specifically set forth in the other claim.*

Sources:

35 U.S.C. § 101; *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1372 (Fed. Cir. 2005); *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 (Fed. Cir. 2003); *In re Goodman*, 11 F.3d 1046, 1052 (Fed. Cir. 1993); In re Vogel, 422 F.2d 438, 441 (C.C.P.A. 1970); **Studiengesellschaft Kohle v. N. Petrochem. Co., 784 F.2d 351, 354 (Fed. Cir. 1986);** *General Foods Corp. v. Studiengesellschaft Kohle mbH***, 972 F.2d 1272, 1277-78 (Fed. Cir. 1992).**

### 4.2.2    NON-STATUTORY, OBVIOUSNESS-TYPE DOUBLE PATENTING

**[Ingenio contends that the Court should not permit GameLogic to raise invalidity contentions based on double-patenting because these contentions were not raised in GameLogic's expert report or provided in its response to Interrogatories during discovery. *See* Ingenio's Motion in *Limine* No. 1.]**

Non-statutory, or "obviousness-type," double patenting was adopted to prevent claims in separate applications or patents that do not recite the "same" invention, but nonetheless claim inventions so alike that granting both would effectively extend the life of patent protection. The fundamental reason for the rule of obviousness-type double patenting is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about.

Generally, an obviousness-type double patenting analysis entails two steps. First, I will construe the claim in the earlier patent and the claim in the later patent and determines the differences. Second, you will determine whether the differences in subject matter between the two claims render the claims patentably distinct. A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim. A later claim that is not patentably distinct from an earlier claim in a commonly-owned patent is invalid for obviousness-type double patenting.

There can be no obviousness-type double patenting if Ingenio files a terminal disclaimer in the '603 patent that disclaims any portion of the '603 patent that extends beyond the term of the '082 patent.

Sources:

*Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1372 (Fed. Cir. 2005); *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967-68 (Fed. Cir. 2001); *In re Longi*, 759 F.2d 887, 896 (Fed. Cir. 1985); *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 n.1(Fed. Cir. 2003); *Applied Materials, Inc. v. Semiconductor Materials Am., Inc.* 98 F.3d 1563, 1577 (Fed. Cir. 1996).

### 4.3    ANTICIPATION – GENERALLY

Defendant contends that the asserted claims of the '082 and '603 patents are invalid because the claimed invention is not new.  A person cannot obtain a patent on an invention if someone else has already made the same invention.  In other words, the invention must be new.  If it is not new, we say that it was "anticipated" by the prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include previous products or patents.  Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  To prove that an invention is "anticipated," GameLogic must prove by clear and convincing evidence that a single piece of prior art describes or discloses each and every element of the claimed invention.  **[GameLogic proposes the following additional language, indicated by bold and underline, to which Ingenio has objected:]  A reference is no less anticipatory if, after disclosing the invention, the reference then disparages it.  Thus, the question whether a reference "teaches away" from the invention is inapplicable to an anticipation analysis.**

Sources:

35 U.S.C. § 102; *Schering Corp. v. Geneva Pharma., Inc.*, 339 F.3d 1373, 1378 (Fed. Cir. 2003); *Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1339 (Fed. Cir. 2001); *Mycogen Plant Science v. Monsanto Co.*, 243 F.3d 1316, 1336 (Fed. Cir. 2001); *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *In re Coordinated Pretrial Proceedings In Antibiotic Antitrust Actions*, 498 F. Supp. 28, 35-36 (E.D. Pa. 1980); *Honeywell International, Inc. v. Hamilton Sundstrand Corp.*, C.A. No. 99-309-GMS (Feb. 15, 2001); *IPPV Enters., LLC v. Echostar Communications Corp.*, C.A. No. 99-577-RRM (Jul. 12, 2001); *Monsanto Co. v. Mycogen Plant Science*, C.A. No. 96-133-RRM (June 26, 1998); District of Delaware Uniform Jury Instructions (1993); Draft FCBA Instructions 3.2.2; *Tristrata*

*Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Celeritas Techs., Ltd. v. Rockwell International Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998).

### 4.3.1                    PRIOR PUBLICATION

GameLogic contends that the asserted claims of the '082 and '603 patents are anticipated because the invention defined in those claims was described in a prior publication, such as an article or another patent. A patent claim may be anticipated and invalid if the entire invention defined by that claim was described in a printed publication either: (i) before the inventor made his invention claimed in the asserted patents; or (ii) more than one year before the effective filing date of the inventor's patent application.

For a printed publication to anticipate the claims of the asserted patents, GameLogic must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of Ingenio's claim. The disclosure must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation. In determining whether the disclosure is enabling, you should take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time.

Sources:

35 U.S.C. § 102; *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *Honeywell International, Inc. v. Hamilton Sundstrand Corp.*, C.A. No. 99-309-GMS (Feb. 15, 2001); *Baxter International, Inc. v. Cobe Laboratories, Inc.*, 88 F.3d 1054 (Fed. Cir. 1996); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

### 4.3.2                    ANTICIPATING PRIOR ART

In this case, GameLogic contends that the following are anticipating prior art references:

[1]  United States Patent No. 5,373,440 ("the Cohen patent"), which was filed on June 4, 1992 and issued on December 13, 1994; and

[2]  U.S. Patent No. 5,324,035 ("the Morris patent"), which was filed on December 1, 1992 and issued on June 28, 1994.

### 4.3.3          **PRIOR PATENTS**

Defendant contends that the asserted claims of the '082 and '603 patents are anticipated because the invention defined in those claims were disclosed in the Cohen patent and/or the Morris patent before it was invented by Perry Kaye.

A patent claim is invalid if the invention defined by that claim was patented in the United States or a foreign country before it was invented by the patentee. There is no dispute that the Cohen patent and Morris patent issued before the filing of the '082 and '603 patents.

To show anticipation of a claim, GameLogic must show by clear and convincing evidence that either the Cohen patent, standing alone, and/or the Morris patent, standing alone, included each and every element of the asserted claim.

Sources:

35 U.S.C. § 102

### 4.4    OBVIOUSNESS

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents-in-suit, you should take the following steps:

1.    Determine the scope and content of the prior art relied upon by GameLogic;

2.    Identify the differences, if any, between each claim of the asserted patents and the prior art;

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of the asserted patents was made; and

4.    Consider objective factors of non-obviousness, including evidence of commercial success of products covered by the patents in suit, the failure of others to make the invention, copying of the invention by others in the field, licensing, awards, recognition by others, expressions of disbelief or skepticism by those skilled in the art upon learning of the invention, and that the invention proceeded in a direction contrary to the accepted wisdom of those skilled in the art, which I will describe to you in detail later.

Against this background, you must then decide whether the claimed subject matter would have been either obvious or non-obvious to a person of ordinary skill in the pertinent art.

Sources:

35 U.S.C. §103; *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkie Lures v. Gene Lerew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

**4.4.1**                    **SCOPE AND CONTENT OF THE PRIOR ART**

In arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means that you must determine what prior art is reasonably pertinent to the particular problem the inventor faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill would look to in trying to solve the problem the named inventor was trying to solve. In making this determination, you will need to keep in mind the filing dates of the asserted patents. The relevant filing date for this determination is the date on which the '082 patent was filed, or April 6, 1995. The prior art may include the following:

      1.    Anything that was publicly known or used in the United States by someone other than the inventor before the inventor made the invention, which is initially presumed to be the filing date of the patent;

      2.    Anything that was patented or described in a printed publication anywhere in the world before the inventor made the invention, or more than one year before the filing date of the patent;

      3.    Anything that was described in a patent that issued from a patent application filed in the United States or certain foreign countries before the inventor made the invention; and

      4.    Anything that was described in a published patent application filed in the United States or certain foreign countries before the inventor made the invention.

**[Ingenio proposes adding the following paragraphs to this instruction, indicated in bold and italics, to which GameLogic objects:]**

*Ingenio and GameLogic disagree as to whether the Cohen patent is analogous prior art.*

*An item of prior art is analogous if it comes from the same field in which Perry Kaye was working, whether or not it concerns even if it does not concern the problem Perry Kaye was addressing. An item of prior art is also analogous even if it was not from the same field in which Perry Kaye was working, so long as it was reasonably pertinent to the particular problem that Perry Kaye was trying to solve.*

*If you determine that the Cohen patent is not analogous art, then you should ignore it in deciding whether the claimed invention would have been obvious.*

<u>Sources</u>:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003; *see also Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993); *In re Wood*, 599 F.2d 1032 (C.C.P.A. 1979); *Wang Lab., Inc. v. Toshiba Corp.*, 993 F.2d 858 (Fed. Cir. 1993); *In re Clay*, 966 F.2d 656 (Fed. Cir. 1992); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654 (Fed. Cir. 2000).

**4.4.2**                                   **DIFFERENCES OVER THE PRIOR ART**

You must next consider the differences, if any, between the prior art and the claimed invention. Although it is proper for you to note any differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art. Each claim must be considered in its entirety and separately from the other claims.

Sources:

*Tristrata Technology, Inc. v. ICN Pharma., Inc*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

### 4.4.3                              LEVEL OF ORDINARY SKILL

**[GameLogic proposes adding the language indicated in bold and underline below, which was set forth in the Uniform Jury Instructions for Patent Cases In the United States District Court for the District of Delaware (2004) at 4.8.3, to which Ingenio objects:]**

Next, you are to determine the level of ordinary skill in the field, or "art," at the time the claimed invention was made. In reaching your determination as to whether or not the claimed invention would have been obvious, you should consider the level of ordinary skill in the pertinent art. When determining the level of ordinary skill in the art, you should consider all the evidence submitted by Ingenio and GameLogic to show:

1. the level of education and experience of persons actively working in the field at the time of the invention, **including the educational level of the inventor**;

2. the types of problems encountered in the art at the time of the invention;

3. the prior art patents and publications;

4. the activities of others;

5. prior art solutions to the problems **encountered by the inventor**; and

6. the sophistication of the technology.

Ingenio contends that the level of ordinary skill in the pertinent art field was someone with moderate knowledge of lottery games and several years experience with programming for personal computers. GameLogic contends that the level of

ordinary skill in the art was a person with a basic understanding of mathematical coding methods and limitations, computers, and computer programming, with a bachelors of science in computer engineering or a minimum of five years of industry experience in computer or software development. Based on the factors listed and the evidence presented, you must determine the level of ordinary skill in the art at the time of the invention.

When you decide the issue of obviousness, you must decide whether or not the invention would have been obvious to one having this ordinary skill in the art.

Sources:

*Graham v. John Deere Co.,* 383 U.S. 1 (1966); *Tristrata Technology, Inc. v. ICN Pharma., Inc.,* C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Ruiz v. A.B. Chance Co.,* 234 F.3d 654 (Fed. Cir. 2000); *Orthopedic Equip. Co. v. United States,* 702 F.2d 1005 (Fed. Cir. 1983); *Environmental Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693 (Fed. Cir. 1983), *cert. denied,* 464 U.S. 1043 (1984).

### 4.4.4   MOTIVATION TO COMBINE [Ingenio's Proposed]

**[The parties disagree as to this instruction. Thus, Ingenio proposes the following instruction for 4.4.4, and GameLogic has provided an alternative 4.4.4 below]**

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.

Both the suggestion or motivation to combine and the expectation of success must be found in the prior art.

In deciding whether the prior art suggests the invention recited in the claims of the '082 and '603 patents, you are instructed that if the prior art merely discloses that it would have been obvious to explore a new technology or general approach that seemed to be a promising field of experimentation, this would not constitute a suggestion of the claimed invention. Similarly, if the prior art merely discloses numerous possible combinations but gives no direction as to which of those of many choices is likely to be successful, this does not constitute a suggestion of the invention.

Sources:

*See In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004); *Pro-Mold and Tool Co. v. Great*

*Lakes Plastics*, Inc., 75 F.3d 1568, 1573 (Fed. Cir. 1996); *see also Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997); *Ecolochem v. Southern California Edison Co.*, 227 F.3d 1361 (Fed. Cir. 2000); *Mandel Bros., Inc. v. Wallace,* 335 U.S. 291, 295 (1948); *Kulling,* 897 F.2d 1147, 1149 (Fed. Cir. 1990); *Merck & Co. v. Biocraft Lab., Inc.,* 874 F.2d 804, 807-09 (Fed. Cir. 1989); *In re O'Farrell,* 853 F.2d 894, 903-04 (Fed. Cir. 1988); *Novo Industri A/S v. Travenol Lab., Inc.,* 677 F.2d 1202 (7th Cir. 1982); *In re Yates,* 663 F.2d 1054 (C.C.P.A. 1981); *In re Clinton,* 527 F.2d 1226, 1228 (C.C.P.A. 1976); *Carter-Wallace, Inc. v. Otte,* 474 F.2d 529, 543 (2d Cir. 1972), *cert. denied*, 412 U.S. 929 (1973).

### 4.4.4  MOTIVATION TO COMBINE  [GameLogic Proposed]

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention. There must be a showing of a suggestion or motivation to either combine multiple references, or modify the teachings of a single reference to the claimed invention in order to support the obviousness conclusion.

Express, written motivation to combine need not appear in the prior art references before obviousness is found. Instead, the reason, suggestion, or motivation to combine references may be found explicitly or implicitly: (1) in the prior art references themselves; (2) in the knowledge of those of ordinary skill in the art that certain references, or disclosures in those references, are of special interest or importance in the field; or (3) from the nature of the problem to be solved, leading inventors to look to references relating to possible solutions to that problem.

Sources:

*See In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004); *Pro-Mold and Tool Co. v. Great Lakes Plastics*, Inc., 75 F.3d 1568, 1573 (Fed. Cir. 1996); *see also Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997).

### 4.4.5   THE PRIOR ART AT ISSUE

The prior art that you considered previously for anticipation purposes is also prior art for obviousness purposes. The prior art you should consider when determining whether the asserted claims are obvious includes the following items received into evidence during trial:

[1]  United States Patent No. 5,373,440 ("the Cohen patent"), which was filed on June 4, 1992 and issued on December 13, 1994;

[2]  U.S. Patent No. 5,324,035 ("the Morris patent"), which was filed on December 1, 1992 and issued on June 28, 1994;

[3]  International Patent Application PCT/F190/00254 ("Raha"), which was filed on November 7, 1989 and was published on May 16, 1991;

[4]  U.S. Patent No. 4,494,197 ("the '197 Troy patent"), which was filed on February 22, 1984 and issued on January 15, 1985;

[5]  U.S. Patent No. 5,377,975 ("the Clapper patent"), which was filed on November 16, 1992 and issued on January 3, 1995;

[6]  U.S. Patent No. 4,922,522 ("the Scanlon patent"), which was filed on June 7, 1988 and issued on May 1, 1990; and

[7]  U.S. Patent No. 4,689,742 ("the '742 Troy patent"), which was filed on May 5, 1986 and issued on August 25, 1987.

In determining whether the invention of the '082 and '603 patents would have been obvious to a person of ordinary skill in the art, you must presume that person would have known about all of the prior art listed above.

<u>Source:</u>

*SIBIA Neurosciences, Inc. v. Cadus Pharmaceutical Corporation*, 225 F.3d 1349 (Fed. Cir. 2000);

### 4.4.6   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

In making your decision as to the obviousness or non-obviousness of each claim, you must consider the following objective evidence that may tend to show the non-obviousness of the claims at issue:

1.    commercial success or lack of commercial success of products covered by the '082 and '603 patents;

2.    a long-felt need in the art that was satisfied by the invention of the '082 and '603 patents;

3.    the failure of others to make the invention or solve the problem solved by the invention;

4.    copying of the invention by others in the field;

5.    praise of the invention by the infringer or others in the field;

6.    expressions of disbelief or skepticism by those skilled in the art upon learning of the invention; and

7.    the taking of licenses under the patent by others.

No factor is alone dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. I will now address each of these factors in turn.

#### Commercial Success

One of the factors you should consider is whether Ingenio has shown any commercial success of products covered by the '082 and '603 patents due to the merits of the invention. To prove this, Ingenio would have to provide evidence to satisfy you that there is a causal connection between the commercial success of the

products and the claimed invention, which would tend to indicate that the invention would not have been obvious.

However, if you conclude that commercial success of the product is due to advertising, promotion, salesmanship or the like, or to features of the product other than those claimed in the patent in suit, rather than to the claimed invention, then the fact that the product enjoyed commercial success is not related to whether the invention would have been nonobvious.

### Long-Felt Need

One of the factors you should consider is whether or not Ingenio has shown a long felt need in the art which was satisfied by the inventions of the '082 and '603 patents, which would tend to indicate that the invention would not have been obvious. However, if you were to conclude that there was no long-felt need in lottery-based gaming field or that the long-felt need was satisfied due to advances in unrelated technology, then Ingenio would not have carried its burden of proof on this factor.

### Failure of Others

One of the factors you should consider is whether Ingenio has shown that others had tried, but failed to solve the problem solved by the invention of the '082 and '603 patents, which would tend to indicate that the invention would not have been obvious. To prove this Ingenio must show that it was the merits of the invention that allowed the inventors of the '082 and '603 patents to succeed. If advances in unrelated technology allowed the inventor to succeed, then Ingenio would not have carried his burden of proof on this factor.

### Copying

One of the factors you should consider is whether or not Ingenio has shown copying by others of the invention claimed in the '082 and '603 patents. If you were to find that others copied the invention because of its merits this would tend to indicate that the invention would not have been obvious.

### Awards/Recognition by Others

One of the factors you should consider is whether or not Ingenio has shown that the invention patented in the '082 and '603 patents received awards and/or recognition by others. To prove this Ingenio must show that the patented invention was the subject of awards and/or recognition by others, which would tend to indicate that the invention would not have been obvious. If you were to find that the patented invention was the subject of awards and/or recognition by others, this would tend to indicate that the invention would not have been obvious.

### Skepticism

One of the factors you should consider is whether or not Ingenio has shown that those skilled in the art were skeptical of the patented invention. To prove this, Ingenio must show that there was skepticism about the merits of the patented invention, or about whether the patented invention would solve the problem, which would tend to indicate that the invention would not have been obvious. If you were to find that those skilled in the art were skeptical of the patented invention, this would tend to indicate that the invention would not have been obvious.

### Acceptance of Licenses

One of the factors you should consider is whether or not Ingenio has shown that others have accepted licenses under '082 and '603 patents because of the merits

of the claimed invention, which tend to indicate that the claimed invention would not have been obvious. If others accepted licenses due to factors such as the cost of litigation or the low cost of the license, then it has not been established that the acceptance of licenses was due to the merits of the invention itself. If you were to find that others took licenses as a result of the merits of the claimed invention, however, this would tend to indicate that the invention would not have been obvious.

Regarding these factors, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the asserted patents, then any commercial success may have no relation to the issue of obviousness. A nexus is required between the merits of the claimed invention and the evidence offered, if that evidence is to be given substantial weight *en route* to a conclusion on the obviousness issue.

Sources:

*ISCO Int'l v. Conductus, Inc.*, C.A. No. 01-487-GMS; *Ransomes, Inc. v. Great Dane Power Equip.*, 232 F.3d 911 (Fed. Cir. 2000) (unpublished); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Newell Cos., Inc. v Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988); *Riverwood Int'l Corp. v. Mead Corp.*, 212 F.3d 1365, 1367 (Fed. Cir. 2000); *see also Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539 (Fed. Cir. 1983); *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Stratoflex Inc, v. Aeroquip Corp.*, 713 F.2d 1530 (Fed. Cir. 1983); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888 (Fed. Cir.), *cert. denied,* 469 U.S. 857 (1984); *United States v. Adams,* 383 U.S. 39, 52 (1966); *Environmental Designs, Ltd. v. Union Oil Co.,* 713 F.2d 693, 697 (Fed.Cir. 1983), *cert. denied,* 464 U.S. 1043 (1984); *WL Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540 (Fed.Cir. 1983), *cert. denied,* 469 U.S. 851 (1984).

5.    **WILLFUL INFRINGEMENT**

Ingenio contends that GameLogic has willfully infringed the asserted patent claims of the '082 and '603 patents.

When a company becomes aware that a patent may have relevance to its activities, it has a duty to exercise due care and investigate whether or not its activities infringe any valid claim of the patent. If that company fails to do so and infringes the patent claims, then the infringement may be willful. Although Ingenio must prove infringement by a preponderance of the evidence, Ingenio must prove that GameLogic willfully infringed by clear and convincing evidence.

To establish willful infringement, Ingenio must prove two things with clear and convincing evidence:

      1.      GameLogic was aware of the '082 or '603 patent; and

      2.      GameLogic acted without having a reasonable good-faith belief that the patent was invalid or that the patent was not infringed.

**[Ingenio proposes the following language, indicated in bold and italics, whereas GameLogic proposes the alternative language below, indicated in bold and underline:]**

*To determine whether GameLogic acted with a reasonable good faith belief or whether GameLogic willfully infringed the '082 or '603 patents, you must consider all of the facts, including the strength of the defenses raised by Defendant in this trial and the following factors:*

      *1.      In designing the product accused of infringement, whether GameLogic intentionally copied Ingenio's invention or a*

product made by Ingenio that is covered by the '082 patent or '603
patent, or whether GameLogic instead tried to "design around" the
patent by designing a product that GameLogic believed did not
infringe the patent claims. Evidence of copying is evidence of
willful infringement; on the other hand, evidence of a good faith
effort to "design around" the claims is evidence that the
infringement was not willful.

  2.    When GameLogic became aware of the patent,
whether GameLogic formed a good faith belief that the patent was
invalid or that the patent was not infringed, including whether
GameLogic obtained and followed the advice of a competent lawyer.
Although the absence of an opinion of counsel does not require you
to find willfulness, the obtaining and following of counsel's advice
may be evidence that infringement was not willful.

[alternative GameLogic proposed language, in bold and underline:]

        **In making the determination as to willfulness, you must consider the**
**totality of the circumstances. The totality of the circumstances comprises a**
**number of factors, which include, but are not limited to (1) whether GameLogic**
**intentionally copied the claimed invention or a product covered by Ingenio's**
**patents, (2) whether GameLogic exercised due care to avoid infringing the**
**patents, (3) whether GameLogic presented a substantial defense to**
**infringement, including the defense that the patents are invalid or**
**unenforceable, and (4) whether GameLogic relied on competent legal advice.**

**The obtaining and following of counsel's opinion or advice may be evidence that infringement was not willful.  While an opinion of counsel letter is an important factor in determining the willfulness of infringement, its importance does not depend upon its legal correctness.  The question is whether the opinion was competent.  The competency requirement applies to both the qualifications of the person giving the opinion and to the content of the opinion itself.**

Keep in mind that a determination by you that GameLogic has infringed the patent does not automatically mean that the infringement was willful.  As I have explained, the infringement is not willful if GameLogic had a good faith belief that it did not infringe or that the patent was invalid, and if its belief was reasonable under all the circumstances.

Sources:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Knorr-Bremse Systeme Fuer Nutxfahrzeuge GmbZH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir. 2004) (*en banc*); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1571-72 (Fed. Cir. 1992); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1357 (Fed. Cir. 2001).

6.    **INEQUITABLE CONDUCT**

**[Ingenio contends that instructions regarding inequitable conduct are prejudicial and should not be included. If the Court decides to include these instructions, Ingenio proposes the following revisions, indicated in bold and italics, whereas GameLogic's proposed language where the parties differ is indicated in bold and underline:]**

Every applicant for a patent has a duty of candor and good faith in its dealing with the Patent Office and the examiner handling the application. **[GameLogic proposes the following language, indicated in bold and underline, to which Ingenio objects:]** **This duty of candor is important because the examiner has only limited information available to determine the state of the art. The time available to the examiner is also limited. Therefore, to prevent an applicant from obtaining a patent he or she does not deserve,** the Patent Office requires full disclosure to the Patent Office of all information which is material to examination of the application. The duty to disclose material references continues throughout the period between payment of the issue fee and the issuance of the patent.

This means that the applicant and his or her attorneys must not intentionally withhold or misrepresent material information concerning the claimed invention *with an intent to deceive the Patent Office*. A breach of this duty is called inequitable conduct and **renders** *may render* the patent unenforceable.

To prove inequitable conduct, GameLogic must show, by clear and convincing evidence, that the applicants or their attorneys, with intent to mislead or deceive the Patent Office, withheld information that was **significant and** material to the examiner's evaluation of the patent application.

Sources:

 Federal Circuit Bar Model Patent Jury Instruction 11; 37 C.F.R. § 1.56 (2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc,* 225 F.3d 1315, 1318 (Fed. Cir. 2000); *Critikon, Inc. v Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253,1256-57 (Fed. Cir. 1997); *N. Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 938-39 (Fed. Cir. 1990); *Kingsdown Med Consultants, Ltd v. Hollister, Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc); *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1576-77 (Fed. Cir. 1985); *Kimberly-Clark Corp. v. Proctor & Gamble Distributing Co.,* 973 F.2d 911, 917-18 (Fed. Cir. 1992); *D.O.C.C. Inc. v. Spintech Inc.,* 36 U.S.P.Q.2d 1145, 1153 (S.D.N.Y. 1994).

### 6.1    MATERIALITY

**[Ingenio contends that instructions regarding inequitable conduct are prejudicial and should not be included. If the Court decides to include these instructions, Ingenio proposes the following revisions, indicated in bold and italics, whereas GameLogic's proposed language where the parties differ is indicated in bold and underline:]**

In evaluating an allegation that applicants were guilty of inequitable conduct before the Patent and Trademark Office, you must first determine whether there was any withholding or misrepresentation of information at all and, if so, whether the information withheld or misrepresented was indeed material. Information is not material if it is cumulative or adds little information to what the examiner already knew. In order for the information withheld or misrepresented to be material, there must be a substantial likelihood that a reasonable examiner would have considered it important in deciding whether to issue the patent in suit. **International search reports may contain information material to patentability if they contain closer prior art than that which was before the United States examiner.** *Although international search reports may contain information material to patentability, if they contain closer prior art that than which was before the United States examiner, it is the reference itself, not the information generated in prosecuting foreign counterparts, that is material to the prosecution in the United States.* Information is not immaterial simply because the claims are eventually deemed by an examiner to be patentable thereover.

**[Ingenio proposes removing the instruction regarding International Search Reports because it includes an incorrect statement of the law. If the Court**

**disagrees, Ingenio proposes adding the subsequent sentence appearing in bold and italics immediately after GameLogic's proposed sentence as indicated above.]**

If you determine that there was a withholding or misrepresentation of information and that the information was material, **then you must consider the element of intent.** *then you must consider two things. First, you must consider whether the applicant knew of the prior art and knew that the prior art was material. Second you must consider whether the applicant is intended to deceive the patent office.* If, on the other hand, you find that GameLogic has failed to prove by clear and convincing evidence that applicants or their attorneys withheld or misrepresented any *known* material information *with an intent to deceive the Patent Office*, then you must find that there was no inequitable conduct.

Sources:

Federal Circuit Bar Model Patent Jury Instruction 1L1;37 C.F.R. § 1.56 (2000); *Li Second Family Ltd P'ship* v. *Toshiba Corp,* 231 F.3d 1373,1379-80 (Fed. Cir. 2000); *PerSeptive Biosystems, Inc.* v. *Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1321-22 (Fed. Cir. 2000); *Life Tech, Inc.* v *ClontechLabs,* Inc., 224 F.3d 1320, 1324-26 (Fed. Cir. 2000); *Union Oil Co. ofCal.* v *Atl Richfield Co.,* 208 F.3d 989 (Fed. Cir. 2000); *Semiconductor Energy Lab. Co.* v. *Samsung Elecs. Co.,* 204 F.3d 1368, 1374 (Fed. Cir. 2000); *Elk Corp. of Dallas* v. *GAFBldg. Materials Corp.,* 168 F.3d 28, 31 (Fed. Cir. 1999); *Baxter Int'l, Inc.* v *McGaw, Inc.,* 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.,* 120 F3d 1253,1257-59 (Fed. Cir. 1997); *Litton Sys,, Inc.* v. *Honeywell, Inc.,* 87 F.3d 1559,1570-71 (Fed, Cir. 1996); *Molins PLC* v. *Textron, Inc.,* 48 F.3d 1172,1178-79 (Fed. Cir. 1995); *Bristol-Myers Squibb Co.* v. *Rhone-Poulenc Rorer, Inc.,* 326 F.3d 1226, 1237 (Fed. Cir. 2003); *ATD Corp.* v. *Lydall, Inc.,* 159 F.3d 534, 547 (Fed. Cir. 1998).

## 6.2    INTENT

**[Ingenio contends that instructions regarding inequitable conduct are prejudicial and should not be included.  If the Court decides to include these instructions, Ingenio proposes the following revisions, indicated in bold and italics, whereas GameLogic's proposed language where the parties differ is indicated in bold and underline:]**

Evidence relevant to the question of intent to deceive or mislead the Patent and Trademark Office includes any direct evidence of intent, as well as evidence from which intent may be inferred.  The patent law recognizes that direct evidence of an actual intent to deceive or mislead is rarely available.  You may, however, infer intent from conduct.  That means you may conclude that a person intended the foreseeable results of his or her actions.  You should decide whether or not to infer an intent to deceive or mislead based on the totality of the circumstances, including the nature of the conduct and evidence of the absence or presence of good faith.  *However, intent to deceive may not be inferred from the mere failure to disclose known prior art.*

**<u>Failure to cite to the Patent and Trademark Office a material reference cited elsewhere in the world, such as the Cohen patent and Raha, justifies a strong inference that the withholding was intentional.  In deciding whether or not information should be provided to the Patent Office, close cases should be resolved by disclosure, not unilaterally by the applicant</u>**

<u>Sources:</u>

Federal Circuit Bar Model Patent Jury Instruction 11.2;37 C.F.R. § 1.56 (2000); *Li Second Family Ltd. P'shipv. Toshiba Corp.*, 231 F.3d 1373, 1379-80 (Fed. Cir. 2000); *PerSeptive Biosystems, Inc.* v. *Pharmacia Biotech, Inc.*, 225 F3d 1315,1321- 22 (Fed. Cir. 2000); *Semiconductor Energy Lab Co. v. Samsung*

*Elecs Co.,* 204 F.3d 1368,1374 (Fed.. Cir. 2000); *Critikon, Inc v, Becton Dickinson Vascular Access, Inc.,* 120 FJd 1253,1257-59 (Fed. Cir. 1997); *Refac Int'lLtd* v. *Lotus Dev. Corp.,* 81 FJd 1576 (Fed. Cir.. 1996); *Molins PLC* v *Textron, Inc.,* 48 F.3d 1172, 1178-79 (Fed. Cir. 1995); *Kingsdown Med. Consultants, Ltd.* v. *Hollister, Inc.,* 863 F.2d 867, 876 (Fed. Cir. 1988) *(en banc), Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1181 (Fed. Cir. 1995); *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n,* 958 F.2d 1066, 1076 (Fed. Cir. 1992); *Halliburton Co. v. Schlumberger Tech. Corp.,* 925 F.2d 1435, 1443 (Fed. Cir. 1991); *Boehringer Ingelheim Vetmedica, Inc. v. Schering Plough Corp.,* 106 F. Supp. 667, 680 (D. N.J. 2000) .

### 6.3    BALANCING

**[Ingenio proposes deleting this instruction.]**

You must determine whether the withheld information or misrepresentation satisfies a threshold level of materiality. You must also determine whether the conduct of applicants or their attorneys satisfies a threshold showing of intent to mislead. Assuming satisfaction of the thresholds, materiality and intent must be balanced.

The more material the withheld or misrepresented information is, the less stringent is the requirement to prove intent by clear and convincing evidence. In other words, withholding or misrepresentation of a highly material piece of information requires a lower level of proven intent, thereby allowing you to infer intent. You must be the judge of this balance.

If you find that GameLogic has proven by clear and convincing evidence that there was a material withholding or a material misrepresentation of information and that applicants or their attorneys acted with intent to deceive the examiner, then you must balance these two factors to determine whether or not, in your view, there was inequitable conduct.

Sources:

Federal Circuit Bar Model Patent Jury Instruction 11.3; *Li Second Family Ltd P 'ship* v. *Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000); *Baxter Int 7, Inc.* v.. *McGaw, Inc.*, 149 F.3d 1321,1327 (Fed. Cir. 1998); *Critikon, Inc.* v. *Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253,1256 (Fed. Cir. 1997); *MolinsPLCv. Textron, Inc.*, 48 FJd 1172, 1178 (Fed. Cir. 1995); *FMC Corp.* v. *Manitowoc Co*, 835 F.2d 1411, 1416 (Fed. Cir. 1987); *Am. Hoist & Derrick Co* v. *Sowa & Sons, Inc.*, 725 F.2d 1350, 1363-64 (Fed. Cir. 1984).

### 6.4    INEQUITABLE CONDUCT CAN TAINT SUBSEQUENT PATENTS

**[Ingenio contends that instructions regarding inequitable conduct are prejudicial and should not be included. If the Court decides to include these instructions, Ingenio proposes the following revisions, indicated in bold and italics, whereas GameLogic's proposed language where the parties differ is indicated in bold and underline:]**

Inequitable conduct pertaining to one patent can taint another patent. For example, inequitable conduct found in the prosecution of a parent patent can render a continuing patent unenforceable. The relevant inquiry is whether the inequitable conduct in prosecuting the parent patent had immediate and necessary relation to the enforcement of the child patent(s). *A later patent is not tainted where allegedly material prior art not cited in an earlier patent is cited in the later patent. Additionally, you must find at least one patent unenforceable before considering whether to hold an entire group of related patents unenforceable.*

Simply disclosing a withheld relevant prior art reference is not enough to cure inequitable conduct that has occurred because settled authority makes clear that the duty of candor requires more to cure inequitable conduct. To cure earlier inequitable conduct where the alleged inequitable conduct is withholding of a material prior art reference, a court may find that the applicant must: (1) expressly advise the PTO of the existence of the misrepresentation, stating specifically where it resides; and/or (2) if the misrepresentation is of one or more facts, advise the PTO what the actual facts are, making it clear that further examination in light thereof may be required; and/or (3) on the basis of the new and factually-accurate record, establish patentability of the claimed subject matter.

Sources:

*Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 246-47 (1933); *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379-80 (Fed. Cir. 2006); *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990); *eSpeed, Inc. v. Brokertec USA, LLC*, 417 F. Supp.2d 580,

596 (D. Del. 2006); *Semiconductor Energy Lab, Inc. v. Samsung Elecs. Co.*, 24 F. Supp.2d 537, 544 (E.D. Va. 1998)); *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1572 (Fed. Cir. 1983)); *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1326 (Fed. Cir. 2000); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1259 (Fed. Cir. 2000).

**7.     DELIBERATIONS AND VERDICT**

## 7.1     INTRODUCTION

My instructions on the law are now finished.  I will end by explaining how you will conduct your deliberation in the jury room and about your possible verdicts.

When you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case.  If you have any questions or messages, you must write them on a piece of paper, sign them and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  Your votes should stay secret until you are finished.

Sources:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

## 7.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after an impartial consideration of the evidence with your fellow jurors. Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong. But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. In the end, your vote must be exactly that – your own vote. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

Sources:

*Tristrata Technology, Inc. v ICN Pharma, Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

### 7.3    DUTY TO DELIBERATE

You are now free to talk about the case in the jury room. In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

Sources:

*Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

### 7.4     COURT HAS NO OPINION

Let me finish by repeating something that I said to you earlier.  Nothing that I have said or done during this trial, nothing about my instructions, and nothing about the form of the verdict  was meant to convey what I think your verdict should be or to influence your decision in any way.  You must decide the case yourselves based solely on the evidence presented.

Sources:

1993 District of Delaware Instructions 7.4, with added caution about Instructions and form of verdict from 1993 District of Delaware Instructions 7.2; modified version of *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).